1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
2    Including Professional Corporations
   ROBERT S. BEALL, Cal. Bar No. 132016
3  rbeall@sheppardmullin.com
   JONATHAN P. HERSEY, Cal. Bar No. 189240
4  jhersey@sheppardmullin.com
   ISAIAH Z. WEEDN, Cal. Bar No. 229111
5  iweedn@sheppardmullin.com
   650 Town Center Drive, 4th Floor
6  Costa Mesa, California 92626-1993
   Telephone: 714-513-5100
7  Facsimile: 714-513-5130

8  Attorneys for Defendant HOME LOAN
   CENTER, INC. d/b/a LENDINGTREE
9  LOANS

10              UNITED STATES DISTRICT COURT

11      CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

12                                      **SACV09- 914 CJC (ANx)**

13  CLARENCE E. BOSCHMA,           Case No.
    SHIRLEY C. BOSCHMA, and
14  SHARON ROBISON, on behalf of   **DEFENDANT HOME LOAN**
    themselves and others similarly **CENTER, INC.'S NOTICE OF**
15  situated,                       **REMOVAL TO FEDERAL COURT**

16              Plaintiffs,

17        v.

18  HOME LOAN CENTER, INC. d/b/a   [Complaint Filed: June 19, 2009]
    LENDINGTREE LOANS, a California
19  corporation; and DOES 1 through 200,
    inclusive,
20
                Defendants.
21

22

23

24

25

26

27

28

1    **TO THE HONORABLE JUDGES OF THE UNITED STATES**

2    **DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,**

3    **SOUTHERN DIVISION, AND TO ALL PARTIES AND THEIR**

4    **ATTORNEYS OF RECORD:**

5    Defendant Home Loan Center, Inc. d/b/a LendingTree Loans

6    ("Defendant"), provides notice that pursuant to 28 U.S.C. §§ 1441 and 1446

7    Defendant hereby removes to this Court the state court action styled *Clarence E.*

8    *Boschma, et al. v. Home Loan Center, Inc. d/b/a LendingTree Loans*, Orange

9    County Superior Court Case Number 30-2009-00277721.

10   The following is a short and plain statement of the grounds for removal,

11   a description of the prior related federal court litigation, and a list of the pleadings to

12   date.

13   **I.**

14   **DESCRIPTION OF THE CURRENT STATE COURT COMPLAINT AND**

15   **PRIOR FEDERAL COURT LITIGATION**

16   1.    On June 19, 2009, Plaintiffs Clarence E. Boschma, Shirley C.

17   Boschma, and Sharon Robison (collectively "Plaintiffs") filed a complaint against

18   Defendant and Does 1 - 200 in the Superior Court of the State of California for the

19   County of Orange (Case Number 30-2009-00277721).  The lawsuit is a putative

20   statewide class action challenging so-called "payment option" loans — loans where

21   the borrower has the option in the early years of the loan of making less than a fully-

22   amortizing monthly payment.  According to Plaintiffs, this legitimate and popular

23   loan product was marketed deceptively and disclosed improperly.  Copies of all

24   documents served on Defendant in the Superior Court action are attached hereto as

25   **Exhibit A**.

26   2.    Defendant was served with a copy of the complaint and

27   summons on July 8, 2009.  Copies of the summons and complaint are included in

28   Exhibit A.

-2-

3.      This is not the first lawsuit Plaintiffs have filed against Defendant challenging its payment option loans.  To the contrary, on May 25, 2007, Plaintiffs Clarence E. Boschma and Shirley C. Boschma filed a putative class action against Defendant in the Central District of California (the "Previous Federal Court Action") challenging payment option loans based on the same facts, predicated upon the same theories, and raising nearly the same claims.[1]  Plaintiff Sharon Robison was added as a plaintiff in the Third Amended Complaint.  All told, the Previous Federal Court Action was dismissed three times, twice by the Honorable Chief Judge Alicemarie H. Stotler pursuant to Defendant's Motions to Dismiss the First and Third Amended Complaints.[2]  The third and final dismissal was filed by Plaintiffs voluntarily on May 28, 2009, ten days after Defendant filed its Motion to Dismiss the Fourth Amended Complaint.

4.      The obvious purpose of Plaintiffs' voluntary dismissal was to escape final dismissal of their claims by Judge Stotler, so that they could re-file them in state court, in a naked attempt at forum shopping.

## II.

## THIS COURT HAS FEDERAL QUESTION JURISDICTION

5.      This Court has original jurisdiction over this case because federal question jurisdiction exists under 28 U.S.C. § 1331, in that Plaintiffs have asserted a claim "arising under the . . . laws . . . of the United States."

6.      Plaintiffs' fraudulent omission and UCL claims are predicated upon purported non-disclosures relating to Plaintiffs' loans.  These alleged non-disclosures are identical to those alleged in the Previous Federal Court Action that purportedly constituted direct violations of the Truth in Lending Act, 15 U.S.C.

---

[1]  A true and correct copy of the Civil Docket Report for the Previous Federal Court Action is attached hereto as **Exhibit B**.

[2]  Plaintiffs amended their original complaint and second amended complaint before Defendants were required to file a responsive pleading.

NOTICE OF REMOVAL

1  § 1601, et seq. ("TILA").  The evident purpose behind Plaintiffs' abandonment of

2  their previously-dismissed TILA claims is now to use just their common law

3  fraudulent omissions and UCL claims to attempt to pursue TILA claims and

4  remedies not available under TILA itself.

5          7.      Through their fraudulent omission and UCL claims, Plaintiffs

6  seek to use the common law to (a) artificially lengthen the statute of limitations for

7  their TILA claims, thereby expanding the scope of potential liability, and (b) impose

8  additional loan disclosure requirements on Defendant.  Both of these goals are

9  improper, but they provide sufficient basis for federal jurisdiction.

10          8.      Any state law or other requirement that is inconsistent with TILA

11  is preempted.  See 15 U.S.C. § 1610(a)(1); Silvas v. E*Trade Mortg. Corp., 514

12  F.3d 1001, 1007 n. 3 (9th Cir. 2008).  Plaintiffs' state law claims are clearly

13  preempted as inconsistent with TILA since they would increase the limitations

14  period (from one year for TILA violations to three years for fraud under California

15  law (Cal. Code Civ. Proc. § 338(d) and four years for UCL claims (Cal. Bus. &

16  Prof. Code § 17208)) and increase the available types of relief (e.g., from actual and

17  statutory damages, the latter capped at $500,000 in a class action (15 U.S.C. §

18  1640), to an uncapped amount of restitution and injunctive relief under California

19  law).

20          9.      Moreover, TILA contains a host of specific disclosure

21  requirements, setting forth what disclosures are required in what documents and

22  what disclosures are not.  Any attempt to use state law, either statutory or common,

23  to require a lender to provide additional disclosures inconsistent with TILA's

24  closely-written disclosure scheme is improper.  See Ford Motor Credit Co. v.

25  Milhollin, 444 U.S. 555, 568 (1980); Nava v. VirtualBank, No. 08-CV-00069-FCD-

26  KJM, 2008 WL 2873406, at *8 (E.D. Cal. Jul. 16, 2008) (dismissing a fraudulent

27  omissions claim as preempted by TILA); see also Hauk v. JP Morgan Chase Bank

28  USA, 552 F.3d 1114 (9th Cir. 2009) (rejecting an attempt to use state law to require

-4-

a lender to provide disclosures inconsistent with TILA's closely-written scheme as improper). Plaintiffs' attempt to use state laws to require disclosures in addition to or different from those required under TILA thus implicates federal question jurisdiction as to preemption.

10. In addition, federal question jurisdiction is available in actions involving only state-law claims where those claims necessarily involve the resolution of underlying questions of federal law. See, e.g., Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 208 (2005) (affirming federal question jurisdiction over state quiet-title action based on need to resolve predicate issue under federal Internal Revenue Code); California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 841. (9th Cir. 2004) (federal question removal jurisdiction is proper where state lawsuit turns upon defendant's compliance with a federal regulation).

11. In this case, Plaintiffs' fraudulent omissions and UCL claims necessitate the resolution of substantial, disputed questions of federal law, including but not limited to, the meaning and application of TILA. This is because Plaintiffs' claims challenge the terms of Defendant's payment option loans and the content of Plaintiffs' loan disclosures — the form and content of which are governed by the federal TILA statute and its implementing regulations.

12. For Plaintiffs to prove an entitlement to relief on their theory that Defendant made improper, inaccurate or misleading loan disclosures in the federally-regulated Truth In Lending Disclosure Statements ("TILDS"), Plaintiffs will have to prove that Defendant violated TILA. "The declared purpose of TILA is 'to assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.'" Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998) (quoting 15 U.S.C. § 1601(a)). "Accordingly, [TILA] requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with

1  things like finance charges, annual percent rates of interest, and the borrower's

2  rights." Id. (citing 15 U.S.C. § 1631, 1632, 1635, 1638).

3          13.    Among the matters governed by TILA that are of particular

4  relevance to this case are the disclosures required (and, in many cases, not required)

5  in the TILDS relating to interest rate, annual percentage rate, negative amortization

6  and the monthly payment schedule. See Complaint, ¶¶ 14-28.  Plaintiffs allege that

7  Defendant originated residential mortgage loans in an unfair or deceptive manner by

8  failing to disclose these terms or doing so in a misleading manner.  Id.  These

9  allegations form the predicate for Plaintiffs' fraudulent omissions and UCL claims,

10  which allege that Defendant's lending practices were fraudulent, unfair and

11  deceptive within the meaning of the UCL.  Plaintiffs' bid to recover for conduct

12  alleged in the Complaint will necessarily turn on substantial, disputed questions of

13  federal law, including TILA and its implementing regulations.

14          14.    Further, a determination of whether Plaintiffs are seeking to

15  assert their fraudulent omissions and UCL claims to pursue TILA claims and

16  remedies not available to them under the statute itself necessarily involves

17  substantial, disputed questions of federal law.

18          15.    The UCL claim challenging and predicated upon conduct

19  governed by TILA necessarily depends on the application or construction of federal

20  law.  Indeed, Plaintiffs expressly predicate their UCL claim on violations of federal

21  laws and/or regulations.  Complaint, ¶ 67.  For Plaintiffs to state a claim under the

22  UCL, the conduct they challenge must fall within its reach, and that conduct must

23  therefore not be regulated or permitted under TILA.  And, in determining whether

24  the conduct Plaintiffs challenge falls within TILA, the Court must necessarily

25  resolve issues concerning TILA's scope that arise entirely under federal law.

26  Plaintiffs' state law UCL claim, therefore, will necessarily require a determination

27  of federal law.  Grable, 545 U.S. at 315.

28

1    16.    Plaintiffs' contract claims also raise a federal issue.  In the

2    Complaint, Plaintiffs allege that the "Note and TILDS expressly and impliedly

3    required Defendants to apply Plaintiffs' and Class Members' monthly payments to

4    principal and interest on a fully-amortized basis."  Complaint, ¶¶ 81, 88.

5    Accordingly, Plaintiffs' contract claims "necessarily require resolution of a federal

6    issue" and the court has a "serious interest in examining the scope of liability that

7    might arise as a result" of Defendant's provision of the TILDS as required by

8    federal law.  Rose v. SLM Financial Corp., 11 No. 3:05CV445, 2007 WL 674319, at

9    *3-4 (W.D.N.C. Feb. 28, 2007).

10    17.    Inasmuch as Plaintiffs' state law claims necessarily involve the

11    resolution of underlying substantial, disputed questions of federal law, including

12    whether the TILDS was proper and adequate, the Court has federal question

13    jurisdiction.

14    18.    Moreover, there is a significant federal interest in the

15    adjudication of such disputes in a federal forum.  Grable, 545 U.S. at 314.

16    Furthermore, the exercise of federal question jurisdiction here will not "disturb[] any

17    congressionally approved balance of federal and state judicial responsibilities."  Id.

18    To the contrary, TILA authorizes a federal private right of action in certain

19    circumstances.  See 15 U.S.C. §§ 1635, 1640.  This demonstrates that there is a

20    significant federal interest in adjudicating this type of lawsuit in federal court.

21    Grable, 545 U.S. at 317-18 (existence of federal private right of action weighs in

22    favor of federal question jurisdiction, while the absence weighs against).

### III.

### SUPPLEMENTAL JURISDICTION EXISTS AND SHOULD BE
### EXERCISED OVER ANY NON-FEDERAL CLAIMS.

26    19.    To the extent not otherwise provided for above, supplemental

27    jurisdiction exists as to all other claims pled in the Complaint, pursuant to 28 U.S.C.

28    § 1367.

NOTICE OF REMOVAL

20.    A court may exercise supplemental jurisdiction "over all other claims that are so related to claims within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). This standard is satisfied here, because Plaintiffs' claims are so related to claims as to which there is federal question jurisdiction that they form part of the same case or controversy about the marketing and disclosure of payment option loans.

21.    For example, to the extent federal jurisdiction may not lie directly, supplemental jurisdiction exists over Plaintiffs' breach of contract and breach of the implied covenant claims. These claims challenge the terms of Plaintiffs' loans, including those specific terms set forth in the TILDS, and thus are so related to the other claims that they form part of the same cause or controversy. 28 U.S.C. § 1367. In addition, the contract claims do not raise novel or complex issues of state law and do not substantially predominate over the federal claims. See 28 U.S.C. § 1367(c).

22.    There is a significant interest in having these and other federal issues adjudicated in a federal forum, and removal of this action will not disrupt any balance between federal and state judicial responsibilities over related disputes. This is especially true because these same claims were being adjudicated in the United States District Court for the Central District of California until Plaintiffs voluntarily dismissed them to re-file their lawsuit in State Court.

23.    Accordingly, to the extent necessary, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## IV.

## **THE NOTICE OF REMOVAL IS PROCEDURALLY PROPER**

24.    Pursuant to 28 U.S.C. § 1446(a), Defendant filed this Notice of Removal in the U.S. District Court for the Central District of California, Southern Division, located in Santa Ana. Because the state court action is pending in the Orange County Superior Court, this is the proper district for removal.

-8-

25.    Pursuant to 28 U.S.C. § 1446(b) and Federal Rules of Civil Procedure 6 and 81(c), Defendant filed this Notice of Removal within the time permitted for removal of complaints.

26.    Defendant is informed and believes that it is the only defendant who has been named and served in the lawsuit.

27.    In the event that Plaintiffs file a request to remand, or the Court considers remand *sua sponte*, Defendant respectfully requests the opportunity to submit additional argument or evidence in support of removal.

## V.

## CONCLUSION

For these reasons, Defendant respectfully requests that this Court proceed with this matter as if the Complaint had been originally filed in the U.S. District Court for the Central District of California, Southern Division.

Dated:  August 7, 2009

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
JONATHAN P. HERSEY
Attorneys for Defendant
HOME LOAN CENTER, INC. d/b/a
LENDINGTREE LOANS

NOTICE OF REMOVAL

**EXHIBIT  A**

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
HOME LOAN CENTER, INC. d/b/a LENDINGTREE LOANS, a
California Corporation; and DOES 1 through 200
inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CLARENCE E. BOSCHMA, SHIRLEY C. BOSCHMA, and SHARON
ROBISON, on behalf of themselves and others similarly
situated

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CIVIL COMPLEX CENTER

**Jun 19 2009**

ALAN CARLSON, Clerk of the Court
by C. PEDRAZA

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted puede usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Orange County Superior Court
751 West Santa Ana Blvd.

Santa Ana, 92701
Civil Complex Center

| CASE NUMBER *(Número del Caso)*: | 30-2009-00277721 |
|---|---|

JUDGE GAIL A. ANDLER
DEPT. CX102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
J. Mark Moore (SBN 180473)                          310.235.2468     310.235.2456
SPIRO MOSS LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064

DATE:
*(Fecha)* **Jun 19 2009**     **ALAN CARLSON**     Clerk, by     C Pedraza     , Deputy
                                                 *(Secretario)*                    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*: HOME LOAN CENTER, INC D/B/A LENDINGTREE LOANS A CALIFORNIA CORPORATION

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

[SEAL]

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
Plus



Code of Civil Procedure §§ 412.20, 465

$350.00
$550.00
cp

**ELECTRONICALLY FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CIVIL COMPLEX CENTER

**Jun  19 2009**

ALAN CARLSON, Clerk of the Court
by C. PEDRAZA

1  **SPIRO MOSS LLP**
   J. Mark Moore (SBN 180473)
2  mark@spiromoss.com
   Ira Spiro (SBN 67641)
3  ira@spiromoss.com
   11377 W. Olympic Boulevard, Fifth Floor
4  Los Angeles, CA 90064-1683
   Phone: (310) 235-2468
5  Fax:    (310) 235-2456

6

7  **ARBOGAST & BERNS LLP**
   David M. Arbogast (SBN 167571)
   darbogast@law111.com
8  Jeffrey K. Berns (SBN 131351)
   jberns@law111.com
9  19510 Ventura Boulevard, Suite 200
   Tarzana, California 91356
10 Phone: (818) 961-2000
   Fax:    (818) 654-5988

11

Attorneys for Plaintiffs and all others similarly situated.

12

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF ORANGE**

13
14
15

JUDGE GAIL A. ANDLER
DEPT. CX102

16 CLARENCE E. BOSCHMA, SHIRLEY C.
   BOSCHMA, and SHARON ROBISON, on
17 behalf of themselves and others similarly
   situated,
18
19              Plaintiffs,
20
        v.
21
22 HOME LOAN CENTER, INC. d/b/a
   LENDINGTREE LOANS, a California
23 Corporation; and DOES 1 through 200
   inclusive,
24
25              Defendants.
26

CASE NO.  **30-2009-00277721**

**CLASS ACTION COMPLAINT FOR:**

**(1)  Fraudulent Omissions;**

**(2)  Violation of Bus. & Prof. Code §17200, *et seq.* – "Unlawful," "Unfair" and "Fraudulent" Business Practices;**

**(3)  Breach of Contract; and**

**(4)  Tortious Breach of the Covenant of Good Faith and Fair Dealing.**

**JURY TRIAL DEMANDED**

27
28

THIS CASE IS SUBJECT TO MANDATORY ELECTRONIC FILING PURSUANT TO RULE 308 OF THE LOCAL RULES OF THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

1    Plaintiffs, CLARENCE E. BOSCHMA, SHIRLEY C. BOSCHMA, and SHARON ROBINSON

2   ("Plaintiffs"), individually, and on behalf of all others similarly situated, allege as follows:

3                                                I.

4                                        **INTRODUCTION**

5         1.      This is an action pursuant to California's Unfair Competition Law (the "UCL"), Bus. &

6   Prof. Code §§ 17200, *et seq.,* and other California statutory and common law.  Plaintiffs, individually,

7   and on behalf of all others similarly situated, bring this action against HOME LOAN CENTER, INC.

8   dba LENDINGTREE LOANS: and DOES 1 through 200 ("HOME LOAN CENTER" or "Defendants"),

9   based upon Defendants' non-disclosure and fraudulent concealment of material information relating to

10  Defendants' Option Adjustable Rate Mortgage ("Option ARM") loan documents, and in the

11  accompanying required disclosure statements, including: (i) the actual interest rate on the note(s); (ii)

12  that the initial interest rate disclosed in the Note would last only one month, was discounted, and was

13  substantially lower than the actual interest that Plaintiffs and Class members would be charged on the

14  Notes; (iii) that the amount of monthly payments provided for in the Note and for the first 2-5 years in

15  the Truth in Lending Disclosure Statement ("TILDS") was based entirely on the "teaser" rate; and (iv)

16  that, after one month the scheduled monthly payment would not be sufficient to even pay the interest

17  being charged, let alone amortize the loan, so that each month the principal balance would increase even

18  if the payments were made as scheduled.  (Hereinafter, (i) through (iv) shall be referred to as "The

19  Material Omissions").

20

21                                               II.

22                                      **THE PARTIES**

23        2.      Plaintiffs CLARENCE E. BOSCHMA and SHIRLEY C. BOSCHMA, are, and at all

24  times relevant to this Complaint were, individuals residing in Whittier, California.  On or about February

25  1, 2006, the Boschma's refinanced their existing home loan and entered into an Option ARM loan

26  agreement with Defendant HOME LOAN CENTER which was secured by Mr. and Mrs. Boschma's

27  residence.  Attached hereto as Exhibit 1 is a true and correct copy of the Note, Truth and Lending

28  Disclosure Statement ("TILDS") and Program Disclosure (collectively the "Loan Documents"),

1    pertinent to this action.

2        3.    Plaintiff SHARON ROBINSON is, and at all times relevant to this Complaint was, an

3    individual residing in Visalia, California.  On or about November 22, 2005, Ms. Robinson entered into

4    an Option ARM loan agreement with HOME LOAN CENTER which was secured by Ms. Robinson's

5    residence.  Attached hereto as <u>Exhibit 2</u> is a true and correct copy of the Loan Documents, pertinent to

6    this action.

7        4.    Defendant HOME LOAN CENTER, INC. dba LENDINGTREE LOANS ("HOME

8    LOAN CENTER") is, and at all relevant times was a California corporation, qualified to do business in

9    California, doing business in this judicial district.  At all relevant times hereto Defendant was engaged in

10   the business of originating and selling the Option ARM loans that are the subject of this Complaint.

11   Defendant transacts business in Orange County, California and at all relevant times originated and sold

12   Option ARM loans throughout the State of California, including Orange County, California.  Defendant

13   has significant contacts with Orange County, California, and the activities complained of herein

14   occurred, in whole or in part, in Orange County, California.

15       5.    From its headquarters in Irvine, California, Defendant HOME LOAN CENTER created,

16   approved and sold the Option ARM loans that are the subject of this complaint.  Defendant sold a

17   significant number of the subject Option ARM loans to California residents.  Plaintiffs are informed and

18   believe and thereon allege that Defendant's employees and/or agents responsible for the creation,

19   approval and sale of the subject Option ARM loans are located in California and/or the decisions

20   concerning approval of the loan forms and/or approval of the Plaintiffs and the Class members' loans

21   where authorized and/or approved by Defendant's corporate officers, executives and employees located

22   in California.

23       6.    At all times mentioned herein, Defendants were engaged in the business of originating,

24   selling, servicing, and/or owning, and/or are or were the assignees of the Option ARM loans that are the

25   subject of this Complaint, throughout the State of California, including in Orange County, California.

26       7.    Plaintiffs are informed, believe, and thereon allege, that each of the aforementioned

27   Defendants are responsible in some manner, either by act or omission, strict liability, fraud, deceit,

28   fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise, for the

1  occurrences herein alleged, and that Plaintiffs' injuries, as herein alleged, were proximately caused by

2  the conduct of Defendants.

3      8.    Plaintiffs are informed, believe, and thereon allege, that at all times material hereto and

4  mentioned herein, each of the Defendants sued herein was the agent, servant, employer, joint venturer,

5  partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining Defendants

6  and was at all times acting within the purpose and scope of such agency, servitude, joint venture,

7  division, ownership, subsidiary, alias, assignment, alter-ego, partnership or employment and with the

8  authority, consent, approval and ratification of each remaining Defendant.

9      9.    Plaintiffs are informed, believe, and thereon allege, that at all times herein mentioned,

10  each Defendant was acting in concert or participation with each other, or was a joint participant and

11  collaborator with the others in the acts complained of, and/or was the agent or employee of the others in

12  doing the acts complained of herein, each and all of them acting within the course and scope of said

13  agency and/or employment by the others, each and all of them acting in concert one with the other and

14  all together.  Each Defendant was the co-conspirator, agent, servant, employee, assignee and/or joint

15  venturer of each of the other Defendants and was acting within the course and scope of said conspiracy,

16  agency, employment, assignment and/or joint venture and with the permission and consent of each of the

17  other Defendants.

18      10.    Plaintiffs are informed, believe, and thereon allege, that DOES 1 through 200, inclusive,

19  are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO underwriters, CDO

20  trustees, hedge funds or other entities that acted as additional lenders, loan originators and/or are

21  assignees to the loans which are the subject of this action.  Plaintiffs will seek leave of Court to replace

22  the fictitious names of these entities with their true names when they are discovered.

23      11.    The true names and capacities, whether individual, corporate, associate or otherwise, of

24  Defendants DOES 1 through 200, inclusive, and each of them, are unknown to Plaintiffs at this time, and

25  Plaintiffs therefore sue said Defendants by such fictitious names.  Plaintiffs allege, on information and

26  belief, that each Doe defendant is responsible for the actions herein alleged.  Plaintiffs will seek leave of

27  Court to amend this Complaint when the names of said DOE defendants have been ascertained.

28

## III.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this matter pursuant to the California Constitution, Article XI, Section 10 and California Code of Civil Procedure ("CCP") §410.10 because Defendants transacted business and committed the acts complained of herein in California.  The allegations are sufficient to sustain the causes of action without resort to federal law.  More than two-thirds of the Class Members are from California, own property in California which is or was financed and/or secured by the Option ARM loans at issue, all Defendants are located in California, and HOME LOAN CENTER has its principal place of business in and is headquartered in California; thus, this case is not subject to removal under the Class Action Fairness Act of 2005 under both the "home state exception" and the "local controversy exception." 28 U.S.C. §1332(d)(4)(A) (home state exception); 28 U.S.C. §1332 (d)(4)(B) (local controversy exception).

13.     Venue is proper in Orange County, California pursuant to CCP §395 and because many of the acts complained about occurred in Orange County and Defendant HOME LOAN CENTER resides in, and is headquartered in Orange County.

## IV.

## FACTS COMMON TO ALL CAUSES OF ACTION

14.     The Option ARM loans that are the subject of this Complaint are the loans sold by Defendants with the following common characteristics: (i) the Monthly Payment Amount stated in the Note is based upon a low "teaser" interest rate which ranges from 1% to 3%; (ii) the payment schedule listed in the Truth-In-Lending Disclosure Statements ("TILDS"), for the first 2-5 years of the Note, is based upon a fully amortizing payment at the "teaser" interest rate; (iii) in fact, the interest rate "adjusts" after only one month to a much higher rate that is the sum of the "index" and the "margin"; and (iv) after the first 2-5 years, the amount of monthly payments balloons to a much greater amount.

15. At all times material hereto, the index plus margin was never low enough to be close to the "teaser" rate, so that, after only one month, the interest accruing on the Note more than doubled from an amount that was usually below 2% to an amount of at least 4%, and normally closer to 8%.

1    Indeed, the average interest rate on these loans was approximately 7.87%, fully 2 percentage points

2    higher than the prevailing rate on HOME LOAN CENTER's fixed rate loans.  Because of this dramatic

3    interest rate adjustment after only one month, the monthly payment, which was calculated based on a

4    fully amortizing payment at the low teaser rate, was no longer sufficient to even pay the interest that

5    accrued on the Note, and the balance owed increases even if the payments are made as scheduled on the

6    Note and the TILDS.  This process is known as negative amortization, and *Defendants knew, but did not*

7    *disclose* to Plaintiffs and Class members, that it was *certain to occur* because of the large spread

8    between the teaser rate and the combined index and margin.

9         16.    Because of the way HOME LOAN CENTER structured these Option ARM loans, it was

10    certain that, as payments were made each month for the first 2-5 years of the loan, each Class Member

11    would owe more money than he or she did at the start of the loan, and have less time to pay it back.  To

12    make matters worse, this "deferred interest" was added to the principal balance and, in turn, accrued

13    more interest – in effect using compound interest to increase the balance owed by each borrower.

14         17. These undisclosed facts were, at all times relevant, known to HOME LOAN CENTER

15    and unknown to Plaintiffs and the Class Members.

16         18. The fact that negative amortization is certain to occur on the subject loans was

17    information that Plaintiffs and Class Members would have found material when deciding whether to

18    purchase the subject HOME LOAN CENTER Option ARM loan.  Despite this, HOME LOAN

19    CENTER never disclosed to Plaintiffs and Class Members this material information.  Had Defendants

20    disclosed this material information, Plaintiffs and Class Members would not have purchased the loan

21    products.

22         19.    As reasonable consumers, Plaintiffs and Class members would find information regarding

23    the interest rate on the loan and the amount of the monthly payments material, including, without

24    limitation, the fact that negative amortization was certain to occur if the monthly payment schedule,

25    given to Plaintiffs and the Class Members prior to entering into the loans, was followed.  The subject

26    HOME LOAN CENTER Loan Documents failed to disclose this material information to borrowers

27    before they entered into the loans.  Moreover, the Loan Documents presented to borrowers at the time of

28    closing contained partially true statements but failed to provide all of the true facts, and thus, the HOME

1  LOAN CENTER Loan Documents were false and/or misleading. For instance, Defendants disclosed a

2  teaser interest rate, but they did not disclose that this rate would sharply increase after only one month.

3  Defendants disclosed a low monthly payment for the first 2-5 years of the loan, which was based on the

4  teaser rate, but this did not reflect the actual amount of interest being charged or the amount Plaintiffs

5  and Class Members actually owed each month to prevent negative amortization.

6        20.    Before they entered into the subject HOME LOAN CENTER Option ARM Loan,

7  Plaintiffs and Class Members were not informed of the sharp increase in the interest rate, and the fact

8  that their monthly payments were not enough to pay the interest accruing on the loan, until they had

9  made at least several payments following the closing of the loan, at which time they would receive a

10  statement showing that the principal balance had increased since Defendants had increased the interest

11  rate from the teaser rate, despite the fact that the borrower had made all payments as scheduled.

12        21.    By the time Plaintiffs and Class Members realized that the Option ARM loans at issue

13  were certain to cause negative amortization to occur for the first 2-5 years of the loan, they were

14  "locked" into the loans by a draconian prepayment penalty consisting of a prepayment charge equal to

15  the interest that would accrue during a six-month period of the amount prepaid (if the prepayment

16  amount was greater than 20% of the original principal amount stated in the Note), which was calculated

17  at the rate of interest in effect under the terms of the Note at the time of the prepayment for a prepayment

18  occurring during the first two to three years of the loan. *See* "Prepayment Penalty Addendum", Exhibits

19  1-2, attached hereto. This draconian provision was designed by HOME LOAN CENTER to deter

20  anyone from refinancing the loan during the applicable time period.

21        22.    Before Plaintiffs and Class Members entered into the subject HOME LOAN CENTER

22  Option ARM loan, Defendants failed to disclose and concealed the amount by which the borrowers' loan

23  balances would increase over the first two to three years of the loan, even though Defendants had

24  actually performed this calculation internally and thus knew the truth. This increase in the loan balance

25  was material information to any consumer entering into these loans, because it effectively strips them of

26  the equity in their homes, while also greatly impairing their ability to refinance these loans once they

27  recast to substantially higher monthly payments.

28        23.    The loans were structured by Defendants so that once Plaintiffs and Class Members were

1    able to discover that their loans were negatively amortizing, they could get out of the loans only by

2    incurring a substantial prepayment penalty, or waiting two to three years, in which case they would have

3    to refinance a substantially larger principal amount.

4        24.    Each subject Option ARM loan has so-called payment caps, which provide that, even

5    after the monthly payment increases, it will not increase by more than 7.5% per year. *See* Exhibits 1-2, ¶

6    3(D). These payment caps are, however, subject to an overall cap on principal of 110% of the original

7    loan amount. *See* Exhibits 1-2, ¶ 3(F). Once the loan principal reaches this 110% cap, the 7.5%

8    limitation on payment increases no longer applies. and the payment generally will increase by far more

9    than this amount. The existence of this built-in "payment shock" was material information that Plaintiffs

10   and Class Members would have found to be material in deciding whether to purchase the loans, and how

11   much to finance, as this "payment shock" is more than many Class Members could afford to pay.

12       25.    However, the most that Defendants' loan documents said about negative amortization

13   was that it "may" occur (and, thus, that it also may *not* occur). This was misleading and deceptive,

14   because it implies that negative amortization was subject to some future contingency, such as an increase

15   in the index on which the adjustable rate was purportedly based, when, in fact, it was *guaranteed* to

16   occur after only one month, even if the index stayed the same or went down.

17       26.    The failure of Defendants to disclose this material information in the loan documents

18   violated California consumer protection statutes, and common law, as more fully set forth below.

19       27.    Defendants' sharp increase in the interest rate after only one month, which guaranteed

20   negative amortization, also violated the terms of Defendants' own contract with Plaintiffs and Class

21   Members. and also breached the covenant of good faith and fair dealing.

22       28.    The loan characteristics described above were true of the named Plaintiffs' loans. These

23   were also the common characteristics of the standardized Loan Documents used by Defendants during

24   the liability period. It is these Loan Documents that are the subject of this Complaint.

25   / / /

26   / / /

27   / / /

28   / / /

# V.

## CLASS ACTION ALLEGATIONS

29.    Plaintiffs bring this action on behalf of themselves, on behalf of all others similarly situated, and on behalf of the General Public.  The Class Plaintiffs seek to represent is defined as follows:

> All California residents who, from May 25, 2003 through the date that notice is mailed to the Class members, entered into a HOME LOAN CENTER Option ARM loan on their home located in the State of California.  Excluded from the California Class are Defendants' employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives.

Plaintiffs reserve the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time, or to propose or eliminate sub-Classes in response to facts learned through discovery or legal arguments advanced by Defendants or otherwise.

30.    This action has been brought and may be properly maintained as a class action pursuant to the provisions of California Code of Civil Procedure § 382 and other applicable law.

31.    **Numerosity**: - Code of Civ. Proc. § 382:  Members of the Class are so numerous that their individual joinder is impracticable.  While the exact number of class members is unknown at this time, Plaintiffs are informed and believe that the entire Class consists of approximately tens of thousands of individuals residing in California.   Also, while the precise number of Class members and their addresses are presently unknown to Plaintiffs, Plaintiffs are informed and believe that the number can be obtained from the Defendants' records.  Class members may be notified of the pendency of this action by electronic mail, the Internet, other mail, or published notice.

32.    **Commonality**: - Code of Civ. Proc. § 382:  Common questions of law or fact are shared by class members.  This action is suitable for class treatment, because these common questions of fact and law predominate over any individual issues.  Such common questions include, but are not limited to, the following questions including questions related to the subject HOME LOAN CENTER Option ARM loans:

(a) Whether Defendants engaged in unlawful, unfair and/or fraudulent business acts or practices likely to deceive Plaintiffs and Class Members before and during the loan application process;

(b) Whether Defendants concealed, omitted and/or otherwise failed to disclose information they were mandated to disclose under state consumer protection statutes, and/or California common law;

(c) Whether Defendants failed to disclose to Plaintiffs and Class Members, before they entered into the subject Option ARM loans, that negative amortization was certain to occur;

(d) Whether Defendants had a duty to disclose the undisclosed material facts regarding the subject Option ARM loans;

(e) Whether Defendants' failure to apply Plaintiffs' and Class Members' payments to principal as promised in the form Notes constitutes a breach of contract, including a tortious breach of the covenant of good faith and fair dealing;

(f) Whether Defendants' conduct in immediately raising the interest rate on the loans so that no payments were made to the principal balance breached the loan contract and/or constitutes a contractual or tortious breach of the covenant of good faith and fair dealing;

(g) Whether the terms and conditions of the Loan Documents are unconscionable;

(h) Whether the Loan Documents are non-negotiable instruments;

(i) Whether Plaintiffs and Class Members are entitled to damages;

(j) Whether Plaintiffs and Class Members are entitled to punitive damages; and

(k) Whether Defendants' affirmative defenses, if any, raise common issues of fact or law as to Plaintiff and Class Members as a whole.

33.    **Typicality**: Plaintiffs' claims are typical of the claims of absent Class Members. Plaintiffs and the other Class members were subjected to the same kind of unlawful conduct and the claims of Plaintiffs and the other Class Members are based on the same legal theories.

34.    **Adequacy**: Plaintiffs are adequate representatives of the Class because their interests do

not conflict with those of the other members of the Class Plaintiffs seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend on prosecuting this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

35. **Ascertainable Class**: The proposed classes are ascertainable in that the members can be identified and located using information contained in Defendants' mortgage lending records.

36. **Superiority and Substantial Benefit**: A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' and the Class members' claims. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. Further, it would be virtually impossible for the Class members to redress the wrongs done to them on an individual basis. Even if members of the Class themselves could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties and the court system, due to the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

37. In the alternative, the Class should be certified because:

(a) The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendants;

(b) The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to them, which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c) Defendants have acted or refused to act on grounds generally applicable to the Class, and/or the General Public, thereby making appropriate final and injunctive relief with respect to the Class as a whole.

/ / /

# VI.

## FIRST CAUSE OF ACTION

### Fraudulent Omissions

### (Against All Defendants)

38.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

39.    Under California common law, HOME LOAN CENTER had a duty to disclose to Plaintiffs, and each Class Member that: (i) the promised low teaser interest rate was only available for thirty days if at all: (ii) the payment amount for the first two to five years provided to Plaintiffs and Class Members on the TILDS was insufficient to pay both principal and interest; (iii) negative amortization was absolutely certain to occur if Plaintiffs and Class Members made payments according to the payment schedule provided by Defendants; and that (iv) loss of equity and/or loss of Plaintiffs' and Class Members' residence was certain to occur if Plaintiffs and Class Members made payments according to the payment schedule provided by Defendants. These facts constitute material information that Plaintiffs and Class Members would have found material when deciding whether to purchase the loan product. Had Defendants disclosed this information, Plaintiff and Class Members would not have entered into the subject HOME LOAN CENTER Option ARM Loan on these terms.

At all relevant times, Defendants actively concealed these material facts from Plaintiffs and Class Members. At all relevant times, Defendants had superior, if not exclusive, knowledge of the concealed facts. Where Defendants did make disclosures, they made partial representations while suppressing materials facts, as demonstrated herein.

40.    In each of the Loan Documents at issue, Defendants actively concealed and failed to disclose to the borrower that each payment in years 1-3 is insufficient to pay all of the interest, let alone, any of the principal. The Loan Documents state under "BORROWERS FAILURE TO PAY AS REQUIRED," that "[t]he amount of the charge will be 5.0000% [or other similar percentage] of *my overdue payment of Principal and Interest*" (emphasis added). *See* Exhibits 1-1, ¶ 7(A). These partial representations failed to disclose that the monthly payment amounts prescribed in the TILDS and also stated in the Note (at ¶ 3(B) of Exhibits 1-2 of the attached Plaintiffs' Loan Documents and similarly for each Class Member) were certain to result in negative amortization.

41.    The Loan Documents further state that, "[m]y monthly payment *could be less* than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal" (emphasis added) (*see* Exhibits 1-2, ¶ 3E). However, the Loan Documents fail to disclose the material fact that the payment schedules provided by Defendants in the TILDS could not possibly cover the amount of interest due under *any* conceivable index rate plus the margin after the first 30 days.

42.    The Notes list an interest rate and a payment amount based on the initial teaser interest rate. However, the TILDS Defendants gave to Plaintiffs and Class Members before they entered into the subject loans included a schedule of payments (including that initial payment amount) but disclose a different, much higher interest rate. By stating the low teaser rate and associated monthly payment in the Note, and stating the much higher interest rate in the TILDS accompanied by a payment schedule based on the low teaser rate, Defendants failed to disclose the actual interest costs that borrowers were going to accrue on their loans.

43.    Defendants purposefully and intentionally devised this Option ARM loan scheme of stating only partially true facts and omitting important material information in order to deceive consumers into believing that these loans would provide a low-interest rate for the first two to five years of the Note and that, if they made their payments according to the payment schedule provided by Defendants, this would be sufficient to pay both principal and interest.[1]

44.    Defendants also actively concealed and failed to disclose information regarding the payment caps associated with the loans, ***and concealed and failed to disclose that during the entire time the payment caps were in effect, negative amortization was certain to occur if the payment schedule provided prior to entering into the loans was followed***. Defendants knew or should have known that this loan product had a variable rate with payment caps and that the Loan Documents omitted the Material Omissions, including that negative amortization was a certainty. Defendants also knew or should have known that the loans were guaranteed to result in negative amortization, because Defendants and HOME LOAN CENTER accrued the negative amortization as income for accounting

---

[1]    Plaintiffs are not presently aware of the identities of all the specific executives and employees responsible for the fraudulent scheme at issue; however, Defendants know such facts, which can be determined in discovery.

and/or tax purposes. HOME LOAN CENTER was also aware the negative amortization was certain to occur, because, in computing the total finance charge payable over the full life of the loan for purposes of compiling the TILDS payment schedule, Defendants included the interest on "deferred interest," which would accrue because the scheduled payments were insufficient to pay all interest due on the loan. The loan documents did not disclose the fact that negative amortization was a certainty, or the amount of the total finance charge that resulted from this negative amortization.

45.     The only places in the Notes that even inferentially reference negative amortization suggest that negative amortization was merely a possibility, rather than an absolute certainty. For instance, Defendants stated in the Notes, at ¶ 3(E), that the borrower's "monthly payment *could be* less than the amount of the interest portion" necessary to cover all of the interest due on the Notes, which was a half-truth, and intended to conceal the whole truth, because it did not state that the payment schedule provided by Defendants would absolutely guarantee that negative amortization was going to occur on these loans.

46.     The Loan Documents of Defendants were deceptive and misleading, in that the payments for up to the first five years of the loans bear no relationship to the APR listed in the TILDS.

47.     At all times relevant during the liability period, the Loan Documents were misleading, omitted and concealed material information, and were unlawful, in that the Notes and TILDS did not disclose that the liability that Plaintiffs and Class Members were incurring was substantially greater than the amount of their scheduled payments.

48.     Defendants failed to disclose to Plaintiffs and Class Members that the initial interest rate was discounted, and that it was *absolutely certain to substantially increase after only one month*, even when the index did not rise. To the extent that Defendants did in any way provide a disclosure stating that the initial payment was not based on the index, they failed to do so in a manner that was clear and conspicuous, and that did not obscure its importance, or that was designed to be reasonably understood by the ordinary consumer. Rather than accurately disclose that the interest rate would increase after only one month, the Loan Documents misleadingly stated that the initial payment was based on a "yearly rate" of 1-3%.

/ / /

49.    Defendants also failed to disclose to Plaintiffs and Class Members before they entered into the subject Option ARM loans all of the ways by which the interest rate applicable to the subject loans could increase.

50.    At all times relevant during the liability period, Defendants provided Plaintiffs and Class Members with Notes that state:   "I will pay interest at a yearly rate of [1.000% - 3.000%]." *See* Exhibits 1-2, ¶ 2(A).   However, in the TILDS, the box entitled "ANNUAL PERCENTAGE RATE" describes the APR as "[t]he cost of your credit as a yearly rate" and then lists a much higher APR than the rate listed in the Notes.  For instance, in the case of Plaintiffs CLARENCE and SHIRLEY BOSCHMA, the TILDS lists an APR of "7.189." *See* Exhibit 1, TILDS.  And for Plaintiff SHARON ROBINSON, the TILDS lists an APR of "6.811." *See* Exhibit 2, TILDS.

51.    Thus, the listed APR in the Notes would actually conflict with the APR stated in the TILDS.  For instance, in the case of Plaintiffs CLARENCE and SHIRLEY BOSCHMA, the "1.250%" APR stated in the Note contradicts the "7.189" APR that Defendant stated in the TILDS.  Similarly, for Plaintiff SHARON ROBINSON, the "1.250%" contradicts the "6.811" APR that Defendant stated in the TILDS.

52.    At all times relevant during the liability period, Defendants failed to clearly and conspicuously explain in the Note or TILDS that the low rate (the same rate upon which Defendant based the written payment schedule provided to Plaintiffs) was offered *only for the first thirty (30) days of the loan.* Any reasonable borrower would find such omitted information material.

53.    Defendants also concealed and failed to disclose to Plaintiffs and Class Members that the APR listed in the TILDS was not the APR used to determine the first five years of payments listed in the very same TILDS, and that the listed payment amounts for the first five years of the loan were based on the artificially low interest rate stated in the Note, which Defendants knew would actually apply for no more than thirty days.

54.    The disclosures are required because they are material, and indeed, form the core basis for Plaintiffs and Class Members to make an informed decision by comparing the cost of credit to other proposals.  It therefore was incumbent upon Defendants to clearly and accurately disclose to Plaintiffs and the Class members, before they entered into the subject Option ARM loans, the composite interest

1  rate, and the amount of payments based thereon, so that these borrowers could understand exactly what

2  they would be paying for the loan.

3       55.    At all times relevant, HOME LOAN CENTER had a duty to disclose to Plaintiffs and the

4  Class Members, before they entered into the subject Option ARM loans: (i) that the payment schedule

5  for the first two to five years was not based upon the APR listed on the TILDS; (ii) that negative

6  amortization will occur and that the "principal balance will increase"; (iii) that the initial interest rate on

7  the Note was discounted; and (iv) the applicable annual percentage rate ("APR").

8       56.    As a direct and proximate result of Defendants' failures to disclose and omission of

9  material facts, as alleged herein, Plaintiffs and Class Members have suffered damages, which include,

10  but are not limited to, the loss of equity in their homes, which Plaintiffs and each Class Member had in

11  their homes prior to entering these loans.

12       57. The wrongful conduct of Defendants, as alleged herein, including Defendants' placing of

13  their corporate and/or individual profits over the rights of others, was willful, oppressive, immoral,

14  unethical, unscrupulous, substantially injurious, malicious and in conscious disregard for the well-being

15  of Plaintiffs and Class Members, and particularly vile, base, contemptible, and wretched.  Defendants'

16  scheme, though couched as part of a legitimate bank's legitimate lending operations, was in fact like any

17  other financial fraud scheme intended to deprive unwitting consumers of their money by concealing

18  material, truthful facts about the financial transactions at issue.  Defendants' acts and/or omissions were

19  performed by officers, directors, and/or managing agents of each corporate defendant and/or taken with

20  the advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified

21  said acts and/or omissions.  Defendants thereby acted with malice and complete indifference to and/or

22  conscious disregard for the rights and safety of others, including Plaintiffs and the general public.

23  Accordingly, Plaintiffs and Class Members are entitled to an award of punitive damages against

24  Defendants in an amount to deter them from similar conduct in the future.

25       58.    WHEREFORE, Plaintiffs and Class Members are entitled to all legal and equitable

26  remedies provided by law, including but not limited to actual damages, exemplary damages,

27  prejudgment interest and costs.

28  / / /

# VIII.

## SECOND CAUSE OF ACTION

### Violation of California's Unfair Competition Law,

### Bus. & Prof. Code §§ 17200 *et. seq.*

### "Unlawful," "Unfair" and "Fraudulent" Business Acts or Practices

### (Against All Defendants)

59. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

60. Plaintiffs bring this cause of action on behalf of themselves, on behalf of the Class Members, and in their capacity as private attorney generals against all Defendants for their unlawful, unfair, fraudulent and/or deceptive business acts and/or practices pursuant to California Business & Professions Code section 17200 *et seq.* ("UCL") which prohibits all unlawful, unfair and/or fraudulent business acts and/or practices.

61. Plaintiffs assert these claims as they are representatives of an aggrieved group and as private attorneys general on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the restitutionary remedy provided by California Business & Professions Code §§ 17200, *et seq.*

62. Plaintiffs and Class Members were consumers who applied for mortgage loans through Defendants. During the loan application process, in each case, Defendants uniformly failed to disclose and omitted material information that was known only to themselves and that could not reasonably have been discovered by Plaintiffs and Class Members as set forth in the preceding counts.

63. Based on the Material Omissions and Defendants' other partially true statements and failures to disclose as alleged herein, Plaintiffs and Class Members agreed to finance their homes through Defendants' Option ARM loans, and have been actually harmed.

64. As a direct and proximate result of the Loan Documents they designed, Defendants intended that Plaintiffs and Class Members would be misled into believing that, if they made payments based on the payment schedule provided to them by Defendants before they entered into the subject loans, the principal balance would not increase with each payment when in fact it actually increased with each payment.

65.     By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Business & Professions Code §§ 17200, *et seq.*

66.     Defendants' misconduct, as alleged herein, gave them an unfair competitive advantage over competitors that did not engage in the same unlawful and unfair lending practices.

67.     Unlawful: The unlawful acts and practices of Defendants alleged above constitutes unlawful business acts and/or practices within the meaning of California Business & Professions Code §§ 17200, *et seq.* Defendants' unlawful business acts and/or practice as alleged herein have violated numerous laws and/or regulations - federal and/or state, statutory and/or common law - and said predicate acts are therefore *per se* violations of §17200, *et seq.* These predicate unlawful business acts and/or practices include, but are not limited to, the following: California Civil Code §§ 1572 (Actual Fraud - Omissions), 1573 (Constructive Fraud by Omission), and 1710 (Deceit), and other statutory and common law in effect.

68.     Unfair: Defendants' omissions and misconduct as alleged in this action constitutes negligence and other tortious conduct and this misconduct gave Defendants an unfair competitive advantage over their competitors.

69.     Defendants' misconduct as alleged in the Material Omissions and otherwise herein caused Plaintiffs and Class Members substantial injury by causing a resulting loss of equity in their homes, because Defendants failed to disclose and/or omitted material information that the Option ARM loans: 1) were certain to result in negative amortization if the disclosed payment schedule was followed; 2) had absolutely no countervailing benefit to consumers or to competition that could possibly outweigh this substantial injury; and 3) caused injury that could not have been avoided or even discovered by the consumers, because it resulted from Defendants' failure to disclose and/or omission of material information that only the Defendants knew or could have known.

70.     Defendants' misconduct as alleged herein gave Defendants an unfair competitive advantage over competitors that did not engage in the same unlawful and unfair lending practices.

71.     The harm to Plaintiffs, members of the general public and Class Members outweighs the utility, if any, of Defendants' policies, acts and/or practices, and consequently Defendants' conduct herein constitutes an unfair business act or practice within the meaning of California Business &

1     Professions Code §§ 17200, *et seq.*

2          72.     Fraudulent: Using their omissions and/or acts, practices and non-disclosures as alleged

3     herein, Defendants designed the Loan Documents in order to deceive the public through the Material

4     Omissions leading to consumer confusion, including, but not limited to the fact that, for the first two to

5     five years, the loans were negatively amortizing loans. Such omissions, acts, practices and non-

6     disclosures as alleged herein therefore constitute fraudulent business acts and/or practices within the

7     meaning of California Business & Professions Code §§ 17200, *et seq.*

8          73.     Defendants' conduct, as fully described herein, was designed to deceive, and was

9     therefore likely to deceive, Plaintiffs and members of the consuming public, and at all times,

10    Defendants' failures to disclose and their omission of material facts have been and continue to be unfair,

11    fraudulent, untrue and/or deceptive.

12         74.     As a direct and proximate result of the aforementioned omissions, acts and practices,

13    Defendants received monies and continue to hold the monies expended by Plaintiffs and Class Members

14    similarly situated who purchased the Option ARM loans as described herein.

15         75.     The unfair, deceptive and/or fraudulent business practices of Defendants, as fully

16    described herein, present a continuing threat to members of the public to be mislead and/or deceived by

17    Defendants' Loan Documents at issue, as described herein. Plaintiffs and other members of the general

18    public have no other remedy of law that will prevent Defendants' misconduct as alleged herein from

19    occurring and/or reoccurring in the future.

20         76.     As a direct and proximate result of Defendants' unfair and/or fraudulent conduct alleged

21    herein, Plaintiffs and Class Members have lost hundreds of thousands if not millions of dollars of equity

22    in their homes. Plaintiffs and Class members are direct victims of the Defendants' unlawful conduct,

23    and each has suffered injury in fact, and has lost money or property as a result of Defendants' unfair

24    competition.

25         77.     WHEREFORE, Plaintiffs and Class Members are entitled to equitable relief, including

26    restitution, restitutionary disgorgement of all profits accruing to Defendants because of the unfair,

27    fraudulent, and deceptive acts and/or practices, attorney's fees and costs, declaratory relief, and a

28    permanent injunction enjoining Defendants from the unfair, fraudulent and deceitful activity alleged

CLASS ACTION COMPLAINT

1 | herein.

2 | **IX.**

3 | **THIRD CAUSE OF ACTION**

4 | **Breach of Contract**

5 | **(Against All Defendants)**

6 | 78.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

7 | 79.    Plaintiffs and Class Members entered into a written home loan agreement – the contract

8 | or Note – with Defendants which describe terms and respective obligations applicable to the parties

9 | herein.

10 | 80.    Defendants drafted the Notes and did not allow Plaintiffs or Class Members any

11 | opportunity to make changes to the Notes and, due to Defendants' superior bargaining position, the

12 | Notes were offered on a "take it or leave it" basis. As such, the Notes and the prepayment penalty riders

13 | to the Notes are contracts of adhesion.

14 | 81.    Each Note and TILDS expressly and impliedly required Defendants to apply Plaintiffs'

15 | and Class Members monthly payments to both principal and interest on a fully-amortized basis (*i.e.*, so

16 | that negative amortization would not occur) as long as those payments were in the amount reflected in

17 | the Note and the TILDS. The Notes and the TILDS identified the monthly payments Plaintiffs and the

18 | Class Members were required to make. Defendants were not permitted to impose or charge any different

19 | payment amount. As alleged herein, the Notes expressly state and/or imply that those payments would

20 | be applied to pay both principal and interest on the loan.

21 | 82.    Shortly after Plaintiffs and Class Members entered into these loans, Defendants switched

22 | the interest rate charged on the loans to a much higher rate than the one they promised to Plaintiffs and

23 | Class Members as a "yearly rate." Defendants also demanded payments in amounts that exceeded those

24 | permitted by the Notes.

25 | 83.    As a result of Defendants' breach of the agreement, Plaintiffs and Class Members have

26 | suffered harm. Plaintiffs and Class Members have incurred and will continue to incur additional interest

27 | charges on the principal loan balance and surplus interest added to Plaintiffs' and Class Members'

28 | principal loan balance. Furthermore, Defendants' breach has placed Plaintiffs and Class Members in

1  danger of losing their homes through foreclosure, as Defendants have caused Plaintiffs' and Class

2  Members' principal loan balances to increase and limited these consumers' ability to make their future

3  house payments or obtain alternative home loan financing.

4          84.    At all times relevant, there existed a gross inequality of bargaining power between the

5  parties to the Loan Documents. At all times relevant, Defendants unreasonably and unconscionably

6  exploited their superior bargaining position and knowledge and foisted upon Plaintiffs and Class

7  Members extremely harsh, one-sided provisions in the contract, which Plaintiffs and Class Members

8  were not made aware of and could not reasonably have comprehended  (*e.g.,* Defendants' fraud and

9  failures to disclose as alleged herein), and which attempt to severely limit Defendants' obligations under

10 the contracts at the expense of Plaintiffs and Class Members, as alleged herein.

11         85.    WHEREFORE, Plaintiffs and Class Members are entitled to declaratory relief,

12 compensatory damages proximately caused by Defendants' breach of contract as alleged herein, pre-

13 judgment interest, costs of suit and other relief as the Court deems just and proper.

14

15                                        **X.**

16                         **FOURTH CAUSE OF ACTION**

17     **Tortious Breach of Implied Covenant of Good Faith and Fair Dealing**

18                          **(Against All Defendants)**

19         86.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

20         87.    As a direct and proximate result of the omissions and failures to disclose as alleged

21 herein, Plaintiffs and Class members reasonably expected that their payments for the first two to five

22 years of Defendants' loans would lower the balance due under the loans, thereby building up Plaintiffs'

23 and the Class Members' equity in their homes.

24         88.    At all times relevant during the liability period, Defendants consciously and deliberately

25 failed to apply Plaintiffs' and Class Members' payments in accordance with the reasonable expectations

26 of Plaintiffs and the Class Members and uniformly misapplied the payments therein, which unfairly

27 frustrated the agreed common purposes and disappointed the reasonable expectations of Plaintiffs and

28 Class Members.

89.     Defendants uniformly and unfairly interfered with Plaintiffs' and Class Members' rights to receive the principal benefit of the contract, *i.e.*, ownership of their homes. Defendants' loans have stripped away a substantial portion of the equity Plaintiffs and Class Members had in their homes and, in some cases, have actually resulted in the complete loss of their homes through foreclosure.

90.     Upon information and belief and at all times relevant, Defendants possessed full knowledge and information concerning the above facts about the Option ARM loans at issue, and sold these Option ARM loans at issue throughout the State of California, including Alameda County.

91.     Defendants' placing of their corporate and/or individual profits over the rights of others is particularly vile, base, contemptible, and wretched and said acts and/or omissions were performed on the part of officers, directors, and/or managing agents of each corporate defendant and/or taken with the advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified said acts and/or omissions. Defendants thereby acted with malice and complete indifference to and/or conscious disregard for the rights and safety of others, including Plaintiffs and the general public.

92.     At all times relevant, Defendants' conduct, as alleged herein, was malicious, oppressive, and/or fraudulent.

93.     As a result of Defendants' conduct, Plaintiffs and Class Members have suffered harm. Plaintiffs and Class Members have incurred significantly increased debt that is secured by their homes. Plaintiffs and Class members also have incurred and will continue to incur additional interest charges on the principal loan balance and surplus interest that is added to their principal loan balances. Furthermore, Defendants' breach has caused and/or otherwise placed Plaintiffs and Class Members in danger of losing their homes through foreclosure and limited these consumers' ability to obtain alternative home loan financing.

94.     WHEREFORE, Plaintiffs and Class Members are entitled to declaratory relief, all damages proximately caused by Defendants' breach of the implied covenant of good faith and fair dealing as alleged herein, punitive damages, pre-judgment interest, costs of suit and other relief as the Court deems just and proper.

/ / /

/ / /

## XI.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and all Class Members pray for judgment against each Defendant, jointly and severally, as follows:

A.  An order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B.  For actual damages according to proof;

C.  For compensatory damages as permitted by law;

D.  For consequential damages as permitted by law;

E.  For punitive damages as permitted by law;

F.  For equitable relief, including restitution;

G.  For restitutionary disgorgement of all profits Defendant obtained as a result of their unfair competition;

H.  For interest as permitted by law;

I.  For Declaratory Relief;

J.  For reasonable attorneys' fees and costs; and

K.  For such other relief as is just and proper.

DATED: June 19, 2009

**SPIRO MOSS LLP**
**ARBOGAST & BERNS LLP**

By:

J. Mark Moore
Ira Spiro
of SPIRO MOSS LLP

David M. Arbogast
Jeffrey K. Berns
of ARBOGAST & BERNS LLP

Attorneys for Plaintiffs and all others Similarly Situated

22

CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury to the full extent permitted by law.

DATED: June 19, 2009

**SPIRO MOSS LLP**
**ARBOGAST & BERNS LLP**

By: _____

J. Mark Moore
Ira Spiro
of SPIRO MOSS LLP

David M. Arbogast
Jeffrey K. Berns
of ARBOGAST & BERNS LLP

Attorneys for Plaintiffs and all others Similarly
Situated

CLASS ACTION COMPLAINT

# EXHIBIT NO. 1

EXHIBIT 1

# ADJUSTABLE RATE NOTE
**(12 MAT Payment and Rate Caps)**

MIN: 1001968-0002107576-2

Loan # 2107576

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.**

FEBRUARY 1, 2006                    IRVINE                         ,CALIFORNIA
          [Date]                         [City]                            [State]

14757 GLENN DRIVE, WHITTIER, CALIFORNIA 90604
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 250,000.00          (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is HOME LOAN CENTER, INC., dba LENDINGTREE LOANS, A CALIFORNIA CORPORATION

I will make all payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

**(A) Interest Rate**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of          1.250 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the first day of APRIL 1          , 2006   , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

**(C) Interest Rate Limit**

My interest rate will never be greater than          9.950 %.

**(D) Index**

Beginning with the first Interest Rate Change Date, my interest Rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the monthly yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rate (H.15)" ("the Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE 12 MAT ADJUSTABLE RATE NOTE                                    Initials: _____  _____

8400185 (0308)
                              Page 1 of 5
                    VMP Mortgage Solutions, Inc. (800)521-7291                    Form 3003
                                                                                      8/05

Lt3003(1).mm

JUL-15-2009  13:41     LTL-HLC                                              P.03

**(E) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 500/1000                          percentage point(s) (          3.500 %) to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

**3.    PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on APRIL 1 2006 . I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on MARCH 1, 2036                    , I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 163 TECHNOLOGY DRIVE, IRVINE, CALIFORNIA 52618
                                                                                         or at a different place if
required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 833.13                  . This amount may change.

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the          1st          day of APRIL          , 2007 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) and 3(G) below require me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater or less than the amount of my last monthly payment due before the Payment Change Date.

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to principal will be the rate required by Section 2 above.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to one hundred ONE HUNDRED TEN AND 000/1000    percent (          110.000 %) of the principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

Form 3003
8/05

8480186 (0508)                              Page 2 of 8

LH109127 loan

**(G) Required Full Payment**
On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

**4.    NOTICE OF CHANGES**
The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.**
I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.
I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment before applying my prepayment to reduce the principal amount of this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to these changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**
    **(A) Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of my monthly payment by the end of    15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
            5.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    **(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    **(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    **(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    **(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
CLARENCE E. BOSCHMA          -Borrower     SHIRLEY C. BOSCHMA          -Borrower


_____ (Seal)          _____ (Seal)
                             -Borrower                                -Borrower

                                                          [Sign Original Only]

PAY TO THE ORDER OF:
  WITHOUT RECOURSE

HOME LOAN CENTER, INC., dba LENDINGTREE LOANS, A CALIFORNIA CORPORATION

BY: _____

ITS:

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
### IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND

Loan Number: 2107576                                            Date: FEBRUARY 1, 2006

Creditor: HOME LOAN CENTER, INC., dba LENDINGTREE LOANS
Address: 163 TECHNOLOGY DRIVE, IRVINE, CALIFORNIA 92618

Borrower(s): CLARENCE E. BOSCHMA, SHIRLEY C. BOSCHMA

Address 14757 GLENN DRIVE, WHITTIER, CALIFORNIA 90604

Items containing an "X" are applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid after you have made all payments as scheduled | ☐ Total Sale Price The total cost of your purchase on credit including your downpayment of $ |
|---|---|---|---|---|
| 7.109 % | $ 403,945.90 | $ 246,805.35 | $ 650,751.25 | $ |

## PAYMENTS Your payment schedule will be:

| Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning | | | Monthly Beginning | | | Monthly Beginning |
| 1 | 833.13 | 04/01/06 | | | | | | |
| 11 | 833.13 | 05/01/06 | | | | | | |
| 12 | 895.61 | 04/01/07 | | | | | | |
| 12 | 962.78 | 04/01/08 | | | | | | |
| 5 | 1,034.99 | 04/01/09 | | | | | | |
| 318 | 1,922.49 | 09/01/09 | | | | | | |
| 1 | 1,926.24 | 03/01/36 | | | | | | |

_____ DEMAND FEATURE: This obligation has a demand feature.

_X_ VARIABLE RATE FEATURE: Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:
_____ Credit life insurance and credit disability _X_ Property insurance _____ Flood insurance _____ Private Mortgage insurance
You may obtain property insurance from any person that is acceptable to the creditor
SECURITY: You are giving a security interest in _14757 GLENN DRIVE, WHITTIER, CALIFORNIA 90604_
_____ The goods or property being purchased _X_ Real property you already own

FILING FEES: $
LATE CHARGE: If payment is more than _15_ days late, you will be charged _____ $ OF $$.00 (whichever is greater)
PREPAYMENT: If you pay off early you
_X_ may _____ will not have to pay a penalty
_____ may _X_ will not be entitled to a refund of part of the finance charge
ASSUMPTION: Someone buying your property
_____ may _X_ may, subject to conditions _____ may not assume the remainder of your loan on the original terms
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
_X_ 'e' means an estimate _____ all dates and numerical disclosures except the late payment disclosures are estimates.

Each of the undersigned acknowledge receipt of a complete copy of this disclosure. This disclosure does not constitute a obligation to or a commitment to lend

| | | | |
|---|---|---|---|
| Applicant CLARENCE E. BOSCHMA | Date | Applicant SHIRLEY C. BOSCHMA | Date |
| Applicant | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

** NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

DocMagic CPS. www.docmagic.com

**ADDENDUM TO ADJUSTABLE RATE NOTE**          Loan #:2107576
(Prepayment)

THIS ADDENDUM is made this 1st day of FEBRUARY 2006 , and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

1.  My right to make a Prepayment under Section 5 is modified by this Addendum.  A Prepayment of the entire unpaid principal balance is known as a "Full Prepayment."  A Prepayment of only part of the unpaid principal balance is known as a "Partial Prepayment."

2.  Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any Prepayment charge.  If within the first THREE ( 3 ) year(s) I make a Full Prepayment or Partial Prepayment(s) of more than twenty percent (20%) of the original principal amount in any twelve (12) month period, I will pay a Prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid in excess of twenty percent (20%) of the original principal amount.

If I make a Partial Prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month.  If I make a Partial Prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

3.  All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

Dated: _____

_____ (Seal)        _____ (Seal)
CLARENCE E. BOSCHMA               -Borrower      SHIRLEY C. BOSCHMA               -Borrower

_____ (Seal)        _____ (Seal)
                                  -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                  -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                  -Borrower                                      -Borrower

SP/Hard Prepayment Addendum (1-3 yrs) - ARM
AZ, CA, CO, CT, DE, FL, HI, ID, IL, IN, MT, ND,
NE, NH, NV, OK, SD, TN, UT, WA, WY,
AR (loan amounts greater than $150,000)
NY (1 year only and if ARM, must have at least a 5-yr fixed rate period),
TX (interest rate cannot exceed 12%)

8480002 (0806)          VMP® Mortgage Solutions, Inc. (800)521-7291      SPD #002
                                                                        (06/06)

**ADJUSTABLE RATE MORTGAGE LOAN PROGRAM DISCLOSURE**
**12-MONTH AVERAGE OF MONTHLY 1-YR CONSTANT MATURITY INDEX**
**PAYMENT-CAPPED NON-CONVERTIBLE ARM**

Date: FEBRUARY 1, 2006                                 Loan #: 2107576

This disclosure describes the features of an Adjustable Rate Mortgage (ARM) program you are considering, which is called the "12 MAT Payment-Capped Non-Convertible ARM." The interest rate and payment of this loan may both change during the term of the loan.  THIS LOAN ALLOWS FOR NEGATIVE AMORTIZATION. Information on other ARM programs available from the lender will be provided upon request. This disclosure is not a commitment on the part of the lender to make a loan to you.

**HOW YOUR INTEREST RATE AND PAYMENT ARE DETERMINED**

* Your Interest Rate will be based on an Index Rate plus a Margin. Please ask us for our current Interest Rate and Margin.

* Your Initial Interest Rate will not be equal to an Index Rate plus a Margin. If the Initial Interest Rate is below the then-current Index plus Margin (the "fully-indexed rate"), then the Initial Interest Rate will be a "Discounted" Interest Rate. If the Initial Interest Rate is above the then-current fully-indexed Interest Rate, than the Initial Interest Rate will be a "Premium" Interest Rate. Please ask us about the current Discount or Premium.

* The Index Rate is based on the twelve-month average of monthly yields on actively traded United States Securities, adjusted to a constant maturity of one year. The Index is calculated by adding together the monthly yields on Treasury securities of one-year constant maturity, as published in the Federal Reserve Board Statistical Release H.15, for the preceding 12 months available and dividing the result by twelve. If the index is no longer available, the lender will choose a new index based on comparable information. Since movement of the Index is usually related to Market conditions that cannot be predicted, it is impossible to know in advance exactly how much interest you will have to pay over the life of the loan. The index rate used below was in effect on October 1, 2005.

* When your Interest Rate changes, your new Interest Rate will equal the Index Rate plus our Margin unless your Interest Rate Cap limits the amount of change in the interest Rate.

* Your Initial payment will be based on the existing interest rate on the loan, the loan amount and the term of the loan. When your payment changes, your new payment will be based on the lesser of two calculations; the payment based on the interest Rate (calculated by adding the index plus Margin), loan balance, and remaining loan term or the previous payment amount plus or minus 7.5% of the previous payment amount.

**HOW YOUR INTEREST RATE CAN CHANGE**

Your Interest Rate will adjust monthly after the first payment date and will be equal to the sum of the index value plus the Margin, subject to the following limits:

* Your Interest Rate may increase or decrease substantially over the life of the loan.

* If an Interest Rate change results in an increase in the Interest Rate, your monthly payment may not be sufficient to cover the interest Due and may not fully amortize your loan.

* Your Interest Rate over the life of the loan cannot exceed an Interest Rate between 8.00 and 12.95%. Please ask us about our current maximum rate. There is no life time interest rate floor.

* Approximately 15 days before each rate adjustment date, your new Interest Rate will be determined by adding the Margin to the then current Index.

**HOW YOUR PAYMENT CAN CHANGE**

* Your payment may increase or decrease substantially over the life of the loan.

* Your payment may change 12 months after your first payment date and annually thereafter.

* Your payment cannot be increased or decreased by more than 7.5% of the existing payment of principal and interest or an amount sufficient to pay the unpaid balance in full by the maturity date at the interest Rate effective for that month, whichever is less, except if your outstanding balance reaches 110% of the original loan amount or at every 5th scheduled payment adjustment. This is called the Minimum Monthly Payment. If you make only the Minimum Monthly Payment, your payment may increase substantially at the 5th scheduled payment or you may reach the 110% maximum balance at which time your payment will increase substantially

IndyMac 12 MAT ARM 1 Month Disclosure

8440189 5815                         Page 1 of 2                         Form F3007
                          VMP Mortgage Solutions  Fc: (800)521-7291         (10/2005)

- At every 5th scheduled payment adjustment, your payment calculation will only be based on the then current Interest Rate, remaining balance and remaining term of the loan. The 7.5% Payment Cap will not apply.

- The unpaid principal balance of your loan can never exceed 110% of the original amount borrowed. If that limit is reached, your monthly payment amount will be changed to an amount sufficient to pay off the unpaid principal balance over the remaining life of the loan at the Interest Rate then in effect.

**DEFERRED INTEREST**

Deferred Interest (also known as Negative Amortization) may occur in two ways:

- Because the Interest Rate has the potential to increase each Month but the payment changes are generally limited to once every twelve months, the monthly payment may be insufficient to pay the interest which is accruing; and/or

- When normal payment changes occur every twelve months, the payment is limited to an increase of 7.500% from the previous payment amount, which may be less than the interest that is accruing.

If the interest due on your loan for a month is more than the required monthly payment, the entire payment will be applied to interest and any unpaid interest will be added to the loan balance. The interest for the next month is then calculated on the new increased loan balance.

"Accelerated Amortization" may occur if the Interest Rate decreases in those months that the Interest Rate changes but the payment does not change or if the Interest Rate decreases more than the payment changes due to the 7.500% Payment Cap when the payment changes at each twelve-month interval. "Accelerated Amortization" means you may pay more per month than what is required to pay off the loan in the remaining term. Therefore, you may possibly pay the loan off earlier than the original maturity of the loan.

In addition to the Minimum Monthly Payment, you have two other options in making your payment. You may make a fully amortizing payment that is a payment that pays all the interest owed for the month plus principal or you may also choose to make a monthly "interest-only" payment. The fully amortizing payment and the interest-only payment is available only if the payment amount is greater than the Minimum Monthly Payment option. An interest-only payment amount will cover the full interest costs for that month; therefore, no additional (deferred) interest will be added to your loan balance. Your principal balance will not be increased or reduced. An interest-only payment is allowed until a fully amortizing payment is required as described above.

**FOR EXAMPLE,**

First Example: Lifetime cap of 8.00%, 30 year term

On a $10,000, 360-month loan with an initial Interest Rate of 1.000% in effect on October 1, 2005 the Interest Rate could rise to a maximum of 8.000%. The initial Interest Rate reflects a recent Discount of 4.663% and a Margin of 2.400% (your initial Interest Rate, Discount or Premium and Margin may be different). The following worse case example illustrates what would happen to your payments if the Interest Rate increased at the first adjustment to the maximum lifetime Interest Cap of 8.000% and remained there for the term of the loan. This example uses a $10,000 loan amount, an initial Interest Rate of 1.000%, a lifetime Interest Cap of 8.000%, a Discount of 4.663% and a Margin of 2.400%.

| Loan Term | Initial Payment | Maximum Payment | Month in which Maximum Payment is reached |
|-----------|-----------------|-----------------|-------------------------------------------|
| 30 years  | $32.16          | $51.28          | Payment 30                                |

To see what your payments (excluding impounds or escrow payments for taxes, insurance and other purposes relating to the security property) would have been during that period, divide your mortgage amount by $10,000; then multiply the loan payment by the amount. For example, the initial monthly payment for a $100,000 loan would be:  $100,000 ÷ $10,000 =10

10 x $32.16 =$321.60

Second Example: Lifetime cap of 8.00%, 40 year term

On a $10,000, 480-month loan with an initial Interest Rate of 1.280% in effect on October 1, 2005 the Interest Rate could rise to a maximum of 8.000%. The initial Interest Rate reflects a recent Discount of 4.863% and a Margin of 2.600% (your initial Interest Rate, Discount or Premium and Margin may be different). The following worse case example illustrates what would happen to your payments if the Interest Rate increased at the first adjustment to the maximum lifetime Interest Cap of 8.000% and remained there for the term of the loan. This example uses a $10,000 loan amount, an initial Interest Rate of 1.280%, a lifetime Interest Cap of 8.000%, a Discount of 4.863% and a Margin of 2.600%.

| Loan Term | Initial Payment | Maximum Payment | Month in which Maximum Payment is reached |
|-----------|-----------------|-----------------|-------------------------------------------|
| 40 years  | $25.49          | $77.04          | Payment 26                                |

To see what your payments (excluding impounds or escrow payments for taxes, insurance and other purposes relating to the security property) would have been during that period, divide your mortgage amount by $10,000; then multiply the loan payment by the amount. For example, the initial monthly payment for a $100,000 loan would be:  $100,000 ÷ $10,000 =10

10 x $25.49 =$254.90

IndMtes 12 MAT ARM 1 Month Disclosure

8420156 mm                          Page 2 of 3                          Prime #3007
                                                                        (10/2006)

**Third Example: Lifetime cap of 12.95%, 30 year term**

On a $10,000, 360-month loan with an initial Interest Rate of 1.000% in effect on October 1, 2005, the Interest Rate could rise to a maximum of 12.950%. The initial Interest Rate reflects a recent Discount of 4.463% and a Margin of 2.300% (your initial Interest Rate, Discount or Premium and Margin may be different). The following worst case example illustrates what would happen to your payments if the Interest Rate increased at the first adjustment to the maximum lifetime Interest Cap of 12.950% and remained there for the term of the loan. The example uses a $10,000 loan amount, an initial Interest Rate of 1.000%, a lifetime Interest Cap of 12.950%, a Discount of 4.463% and a Margin of 2.300%.

| Loan Term | Initial Payment | Maximum Payment | Month in which Maximum Payment is reached |
|-----------|-----------------|-----------------|-------------------------------------------|
| 30 years  | $32.18          | $120.03         | Payment 14                                |

To see what your payments (excluding impounds or escrow payments for taxes, insurance and other purposes relating to the security property) would have been during that period, divide your mortgage amount by $10,000; then multiply the loan payment by the amount. For example, the initial monthly payment for a $100,000 loan would be, $100,000 ÷ $10,000 = 10
10 x $32.18 = $321.80

**Fourth Example: Lifetime cap of 12.95%, 40 year term**

On a $10,000, 480-month loan with an initial Interest Rate of 1.250% in effect on October 1, 2005, the Interest Rate could rise to a maximum of 12.950%. The initial Interest Rate reflects a recent Discount of 4.263% and a Margin of 2.350% (your initial Interest Rate, Discount or Premium and Margin may be different). The following worst case example illustrates what would happen to your payments if the Interest Rate increased at the first adjustment to the maximum lifetime Interest Cap of 12.950% and remained there for the term of the loan. The example uses a $10,000 loan amount, an initial Interest Rate of 1.250%, a lifetime Interest Cap of 12.950%, a Discount of 4.263% and a Margin of 2.350%.

| Loan Term | Initial Payment | Maximum Payment | Month in which Maximum Payment is reached |
|-----------|-----------------|-----------------|-------------------------------------------|
| 40 years  | $26.49          | $118.71         | Payment 13                                |

To see what your payments (excluding impounds or escrow payments for taxes, insurance and other purposes relating to the security property) would have been during that period, divide your mortgage amount by $10,000; then multiply the loan payment by the amount. For example, the initial monthly payment for a $100,000 loan would be: $100,000 ÷ $10,000 = 10
10 x $26.49 = $264.90

**NOTICE OF CHANGE**

You will be notified in writing at least 25, but no more than 120, days before the due date of the first payment that will be at the new level. This notice will contain information about the current and prior index values on which your current and prior interest rates are based, your current and prior interest rates, new payment amount and loan balance.

**ASSUMPTION OF LOAN**

Although the loan contains a due-on-sale clause, the Lender will consent to a transfer of the property, provided the transferee meets Lender's current loan underwriting criteria. The transferee will be required to execute a written assumption agreement and pay Lender an assumption fee in an amount not to exceed the amount Lender requires for other similar transactions. All original terms will remain the same.

**PREPAYMENT FEE**

Depending upon the interest rate and terms of your loan, your loan may have a prepayment fee. A prepayment fee is a charge that may be incurred for paying off your loan during the first five years or less of your loan term. Please ask us if your loan has a prepayment fee.

I/We acknowledge receipt and have read the Adjustable Rate Mortgage Program Disclosure and the Consumer Handbook on Adjustable Rate Mortgages.

Borrower  CLARENCE E. BOSCHMA         Date        Borrower  SHIRLEY C. BOSCHMA         Date

Borrower                              Date        Borrower                            Date

Borrower                              Date        Borrower                            Date

IndyMac 12 MAT ARM 1 Month Disclosure

8498196 Karsh                                     Page 2 of 3                         Form #3007
(10/2005)

# EXHIBIT NO. 2

EXHIBIT 2

# ADJUSTABLE RATE NOTE
### ( 12 MONTH MTA )

Payment and Rate Caps)

MIN: 1001968-0002102158-4    Loan Number: 2102158

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.

NOVEMBER 22, 2005                  IRVINE                  CALIFORNIA
[Date]                              [City]                  [State]

1000 NORTH CHINOWTH ROAD, VISALIA, CALIFORNIA 93291
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 150,000.00 (this amount is "principal"), plus interest, to the order of the Lender. The Lender is HOME LOAN CENTER, INC., dba LENDINGTREE LOANS, A CALIFORNIA CORPORATION

I will make all payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

**(A) Interest Rate**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 1.250 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the first day of JANUARY , 2006 , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

**(C) Interest Rate Limit**

My interest rate will never be greater than 9.950 %.

**(D) Index**

Beginning with the first Interest Rate Change Date, my interest rate will be based on an index. The "Index" is the Twelve-Month Average, determined as set forth below, of the monthly yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rate (H.15)" (the Monthly Yields). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is call the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE NOTE                          Form 5903 4/2000

8450185 (0010)          Page 1 of 4          VMP MORTGAGE FORMS - (800)521-7291          Initials _____

XXXX.irm

(E) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 250/1000 percentage point(s) ( 3.250 %) to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on JANUARY 1 2006 . I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal If, on DECEMBER 1, 2035 , I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at 163 TECHNOLOGY DRIVE, IRVINE, CALIFORNIA 92618
or at a different place if required by the Note Holder

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 499.88 . This amount may change.

(C) Payment Change Dates

My monthly payment may change as required by Section 3(D) below beginning on the 1st day of JANUARY, 2007 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

(D) Calculation of Monthly Payment Changes

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater or less than the amount of my last monthly payment due before the Payment Change Date.

(E) Additions to My Unpaid Principal

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to principal will be the rate required by Section 2 above.

(F) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid principal can never exceed a maximum amount equal to one hundred ONE HUNDRED TEN AND 000/1000 percent ( 110.000 %) of the principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

8480188 (0010)                              Page 2 of 4                    Form 3003 4/2000
                                                                          Initials:

(G) Required Full Payment

On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

### 4. NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### 5. BORROWER'S RIGHT TO PREPAY        ** See attached Prepayment Note Addendum.

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment before applying my prepayment to reduce the principal amount of this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to these changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

### 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

### 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of my monthly payment by the end of  15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)        _____(Seal)
SHARON  ROBISON                  -Borrower                                      -Borrower

_____(Seal)        _____(Seal)
                                 -Borrower                                      -Borrower

[Sign Original Only]

Form 3003 8/2000

Page 6 of 6

## ADDENDUM TO ADJUSTABLE RATE NOTE
### (Prepayment)

Loan #: 2102158

THIS ADDENDUM is made this   22nd   day of  NOVEMBER 2005   , and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

1.    My right to make a Prepayment under Section 5 is modified by this Addendum.  A Prepayment of the entire unpaid principal balance is known as a "Full Prepayment."  A Prepayment of only part of the unpaid principal balance is known as a "Partial Prepayment."

2.    Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any Prepayment charge.  If within the first   THREE   ( 3 ) year(s) I make a Full Prepayment or Partial Prepayment(s) of more than twenty percent (20%) of the original principal amount in any twelve (12) month period, I will pay a Prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid in excess of twenty percent (20%) of the original principal amount.

If I make a Partial Prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month.  If I make a Partial Prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

3.    All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

Dated: _____

_SHARON ROBISON_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower

SP/Hard Prepayment Addendum (1-3 yra) - ARM
AZ, CA, CO, CT, DE, FL, HI, ID, IL, IN, MT, ND,
NE, NH, NV, OK, SD, TN, UT, WA, WY,
AR (loan amounts greater than $150,000)
NY (1 year only and if ARM, must have at least a 5-yr fixed rate period),
TX (interest rate cannot exceed 12%)

8480002 (0605)                     VMP Mortgage Solutions, Inc. (800)521-7291                     8P0 8002
                                                                                                 (06/05)

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THI    NEITHER A CONTRACT NOR A COMMITMEN   TO LEND)

Loan Number: 2102158                                      Date: NOVEMBER 22, 2005
Creditor: HOME LOAN CENTER, INC., dba LENDINGTREE LOANS
Address: 163 TECHNOLOGY DRIVE, IRVINE, CALIFORNIA 92618

Borrower(s):  SHARON ROBISON

Address    1000 NORTH CHINOWTH ROAD, VISALIA, CALIFORNIA 93291

Lines containing an "X" are applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid after you have made all payments as scheduled | ☐ Total Sale Price The total cost of your purchase on credit including your down payment of $ |
|---|---|---|---|---|
| 6.811 % | $ 225,980.88 | $ 145,284.38 | $ 371,265.26 | $ |

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payment ** | When Payments Are Due Monthly Beginning | Number of Payments | Amount of Payment ** | When Payments Are Due Monthly Beginning | Number of Payments | Amount of Payment ** | When Payments Are Due Monthly Beginning |
|---|---|---|---|---|---|---|---|---|
| 1 | 499.88 | 01/01/06 | | | | | | |
| 11 | 499.88 | 02/01/06 | | | | | | |
| 12 | 537.37 | 01/01/07 | | | | | | |
| 12 | 577.67 | 01/01/08 | | | | | | |
| 12 | 621.00 | 01/01/09 | | | | | | |
| 5 | 667.58 | 01/01/10 | | | | | | |
| 306 | 1,111.06 | 06/01/10 | | | | | | |
| 1 | 1,111.96 | 12/01/35 | | | | | | |

_____ DEMAND FEATURE:  This obligation has a demand feature.

__X__ VARIABLE RATE FEATURE:  Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:
_____ Credit life insurance and credit disability  __X__ Property Insurance  _____ Flood Insurance  _____ Private Mortgage Insurance
You may obtain property insurance from any insurer that is acceptable to the Lender.
_____ The goods or property being purchased  __X__ Real property you already own.
SECURITY: You are giving a security interest in   1000 NORTH CHINOWTH ROAD, VISALIA, CALIFORNIA 93291
FILING FEES $
LATE CHARGE: If payment is more than ____15____ days late, you will be charged ___5.000___ % of the payment. * or $5.00 (whichever is greater)
PREPAYMENT: If you pay off early, you
__X__ may  __X__ will not  have to pay a penalty.
_____ may  __X__ will not  be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
_____ may  __X__ may, subject to conditions  _____ may not  assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
__X__ "e" means an estimate       all dates and numerical disclosures except the late payment disclosures are estimates.
Each of the undersigned acknowledges receipt of a complete copy of this disclosure. The disclosure does not constitute a contract or a commitment to lend.

| Applicant SHARON ROBISON | Date | Applicant | Date |
|---|---|---|---|
| Applicant | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

** NOTE:  Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

## ADDENDUM TO ADJUSTABLE RATE NOTE
### (Prepayment)

Loan #: 2102158

THIS ADDENDUM is made this   22nd   day of   NOVEMBER 2005      , and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

1.    My right to make a Prepayment under Section 5 is modified by this Addendum. A Prepayment of the entire unpaid principal balance is known as a "Full Prepayment." A Prepayment of only part of the unpaid principal balance is known as a "Partial Prepayment."

2.    Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any Prepayment charge. If within the first   THREE      ( 3 ) year(s) I make a Full Prepayment or Partial Prepayment(s) of more than twenty percent (20%) of the original principal amount in any twelve (12) month period, I will pay a Prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid in excess of twenty percent (20%) of the original principal amount.

If I make a Partial Prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month. If I make a Partial Prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

3.    All other provisions of the Note are unchanged by this Addendum and remain in full force and effect

Dated: _____

_____ (Seal)
SHARON ROBISON                 -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

SP/Hard Prepayment Addendum (1-3 yrs) - ARM
AZ, CA, CO, CT, DE, FL, HI, ID, IL, IN, MT, ND,
NE, NH, NV, OK, SD, TN, UT, WA, WY,
AR (loan amounts greater than $150,000)
NY (1 year only and if ARM, must have at least a 5-yr fixed rate period),
TX (interest rate cannot exceed 12%)

8480002 (0505)                    VMP Mortgage Solutions, Inc. (800)521-7391

SPO #002
(05/05)

## ADJUSTABLE RATE MORTGAGE LOAN PROGRAM DISCLOSURE
## 12-MONTH AVERAGE OF MONTHLY 1-YR CONSTANT MATURITY INDEX
### PAYMENT-CAPPED NON-CONVERTIBLE ARM

Date: NOVEMBER 22, 2005                                    Loan #: 2102158

This disclosure describes the features of an Adjustable Rate Mortgage (ARM) program you are considering, which is called the "12 MAT Payment-Capped Non-Convertible ARM." The interest rate and payment of this loan may each change during the term of this loan. THIS LOAN ALLOWS FOR NEGATIVE AMORTIZATION. Information on other ARM programs available from the lender will be provided upon request. This disclosure is not a commitment on the part of the lender to make a loan to you.

### HOW YOUR INTEREST RATE AND PAYMENT ARE DETERMINED

- Your Interest Rate will be based on an Index Rate plus a Margin. Please ask us for our current Interest Rate and Margin.

- Your initial Interest Rate will not be equal to an Index Rate plus a Margin. If the Initial Interest Rate is below the then-current Index plus Margin (the "fully-indexed rate"), then the Initial Interest Rate will be a "Discounted" Interest Rate. If the initial Interest Rate is above the then-current fully-indexed Interest Rate, then the initial Interest Rate will be a "Premium" Interest Rate. Please ask us about the current Discount or Premium.

- The Index Rate is based on the twelve-month average of monthly yields on actively traded United States Securities, adjusted to a constant maturity of one year. The Index is calculated by adding together the monthly yields on Treasury securities of one-year constant maturity, as published in the Federal Reserve Board Statistical Release H.15, for the preceding 12 months available and dividing the result by twelve. If the Index is no longer available, the lender will choose a new Index based on comparable information. Since movement of the Index is usually related to market conditions that cannot be predicted, it is impossible to know in advance exactly how much interest you will have to pay over the life of the loan. The Index rate used below was in effect on December 1, 2004.

- When your Interest Rate changes, your new Interest Rate will equal the Index Rate plus our Margin unless your lifetime Interest Rate Cap limits the amount of change in the Interest Rate.

- Your initial payment will be based on the starting interest rate on the loan, the loan amount and the term of the loan. When your payment changes, your new payment will be based on the lesser of two calculations: the payment based on the Interest Rate (calculated by adding the Index plus Margin), loan balance, and remaining loan term or the previous payment amount plus or minus 7.5% of the previous payment amount.

### HOW YOUR INTEREST RATE CAN CHANGE

Your Interest Rate will adjust monthly after the first payment date and will be equal to the sum of the Index value plus the Margin, subject to the following limits:

- Your Interest Rate may increase or decrease substantially over the life of the loan.

- If an Interest Rate change results in an increase in the Interest Rate, your monthly payment may not be sufficient to cover the interest due and may not fully amortize your loan

- Your Interest Rate over the life of the loan cannot exceed an Interest Rate between 8.00 and 12.95%. Please ask us about our current maximum rate. There is no life time interest rate floor.

- Approximately 15 days before each rate adjustment date, your new Interest Rate will be determined by adding the Margin to the then current Index.

### HOW YOUR PAYMENT CAN CHANGE

- Your payment may increase or decrease substantially over the life of the loan.

- Your payment may change 12 months after your first payment date and annually thereafter.

- Your payment cannot be increased or decreased by more than 7.5% of the existing payment of principal and interest or an amount sufficient to pay the unpaid balance in full by the maturity date at the Interest Rate effective for that month, whichever is less, except if your outstanding balance reaches 110% of the original loan amount or at every 5th scheduled payment adjustment. This is called the Minimum Monthly Payment.

- If the monthly payment is not sufficient to cover the interest due, the difference will be added to your loan amount and will accrue additional interest. This is called "Negative Amortization."

IndyMac 12 MAT ARM 1 Month Disclosure

8480198 (0412)                          Page 1 of 3
                              VMP Mortgage Solutions, Inc. (800)521-7291

                                                              Ptcnc #3007
                                                              (1/2005)

C8071.plra

- At every 5th scheduled payment adjustment, your payment calculation will only be based on the then current Interest Rate, remaining balance and remaining term of the loan. The 7.5% Payment Cap will not apply.

- The unpaid principal balance of your loan can never exceed 110% of the original amount borrowed. If that limit is reached, your monthly payment amount will be changed to an amount sufficient to pay off the unpaid principal balance over the remaining life of the loan at the interest Rate then in effect.

**DEFERRED INTEREST**

Deferred Interest (also known as Negative Amortization) may occur in two ways:

- Because the interest Rate has the potential to increase each month but the payment changes are generally limited to once every twelve months, the monthly payment may be insufficient to pay the interest which is accruing; and/or

- When normal payment changes occur every twelve months, the payment is limited to an increase of 7.500% from the previous payment amount, which may be less than the interest that is accruing.

If the interest due on your loan for a month is more than the required monthly payment, the entire payment will be applied to interest and any unpaid interest will be added to the loan balance. The interest for the next month is then calculated on the new increased loan balance.

"Accelerated Amortization" may occur if the interest Rate decreases in those months that the interest Rate changes but the payment does not change or if the interest Rate decreases more than the payment changes due to the 7.500% Payment Cap when the payment changes at each twelve-month interval. "Accelerated Amortization" means you may pay more per month than what is required to pay off the loan in the remaining term. Therefore, you may possibly pay the loan off earlier than the original maturity of the loan.

In addition to the Minimum Monthly Payment, you have two other options in making your payment. You may make a fully amortizing payment that is a payment that pays all the interest owed for the month plus principal or you may also choose to make a monthly "interest-only" payment. The fully amortizing payment and the interest-only payment is available only if the payment amount is greater than the Minimum Monthly Payment option. An interest-only payment amount will cover the full interest costs for that month; therefore, no additional (deferred) interest will be added to your loan balance. Your principal balance will not be increased or reduced. An interest-only payment is allowed until a fully amortizing payment is required as described above.

**FOR EXAMPLE:**

First Example: Lifetime cap of 8.00%

On a $10,000, 360-month loan with an initial interest Rate of 1.000% in effect on December 1, 2004 the interest Rate could rise to a maximum of 8.000%. The initial Interest Rate reflects a recent Discount of 3.1733% and a Margin of 2.400% (your initial interest Rate, Discount or Premium and Margin may be different). The following worse case example illustrates what would happen to your payments if the interest Rate increased at the first adjustment to the maximum lifetime interest Cap of 8.000% and remained there for the term of the loan. The example uses a $10,000 loan amount, an initial Interest Rate of 1.000%, a lifetime Interest Cap of 8.000%, a Discount of 3.1733% and a Margin of 2.400%.

| Loan Term | Initial Payment | Maximum Payment | Month in which Maximum Payment is reached |
|-----------|-----------------|-----------------|-------------------------------------------|
| 30 years | $32.16 | $82.28 | Payment 30 |

To see what your payments (excluding impounds or escrow payments for taxes, insurance and other purposes relating to the security property) would have been during that period, divide your mortgage amount by $10,000; then multiply the loan payment by the amount. For example, the initial monthly payment for a $100,000 loan would be:   $100,000 ÷ $10,000 = 10

10 x $32.16 = $321.60

Second Example: Lifetime cap of 12.95%

On a $10,000, 360-month loan with an initial interest Rate of 1.000% in effect on December 1, 2004, the interest Rate could rise to a maximum of 12.950%. The initial interest Rate reflects a recent Discount of 2.7733% and a Margin of 2.000% (your initial interest Rate, Discount or Premium and Margin may be different). The following worse case example illustrates what would happen to your payments if the interest Rate increased at the first adjustment to the maximum lifetime interest Cap of 12.950% and remained there for the term of the loan. The example uses a $10,000 loan amount, an initial Interest Rate of 1.000%, a lifetime Interest Cap of 12.950%, a Discount of 2.7733% and a Margin of 2.000%.

| Loan Term | Initial Payment | Maximum Payment | Month in which Maximum Payment is reached |
|-----------|-----------------|-----------------|-------------------------------------------|
| 30 years | $32.16 | $120.95 | Payment 14 |

IndyMac 12 MAT ARM 1 Month Disclosure

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name & Address)*: | FOR COURT USE ONLY |
|---|---|
| Telephone No.:                    Fax No. (Optional):<br>E-Mail Address (Optional):<br>ATTORNEY FOR *(Name)*:                    Bar No: | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
Civil Complex Center - 751 W. Santa Ana Blvd., Bldg. 36, Santa Ana, CA 92701-4512

PLAINTIFF / PETITIONER:

DEFENDANT / RESPONDENT:

| **CLASS ACTION/B&P 17200 QUESTIONNAIRE**<br><br>*(To be filed by counsel for plaintiff/s within 30 days of filing initial complaint)* | CASE NUMBER:<br><br>DEPT:<br>JUDGE:<br>STATUS CONFERENCE DATE: |
|---|---|

In response to the conflict of interest issues raised in ***Apple Computer, Inc. v. The Superior Court of Los Angeles County*** (2005) 126 Cal. App. 4th 1253, counsel for each proposed class representative is to provide the following information under oath to the Court:

1.  Is any proposed class representative an attorney?                    Yes _____    No _____

2.  Is any proposed class representative a spouse, child or family member of plaintiff's counsel or of a partner or associate of the law firm of which plaintiff's counsel  is a member?                    Yes _____    No _____

    If yes, explain relationship: _____

3.   Within the last 5 years, has any proposed class representative filed prior class action lawsuits using the same plaintiff's counsel or firm as in the present case?                    Yes _____    No _____

    If yes, explain: _____

4.  Does any proposed class representative have a business relationship with plaintiff's counsel, including but not limited to, the relationship of law partner, associate,  employee, principal, agent, independent contractor, or professional corporation?                    Yes _____    No _____

    If yes, explain relationship: _____

5.  If there is co-counsel, have the attorneys been co-counsel in other class actions?                    Yes _____    No _____

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____                    _____
DATE                                                    SIGNATURE OF COUNSEL FOR PLAINTIFF(S)

**CLASS ACTION/B&P 17200 QUESTIONNAIRE**

Approved for Mandatory Use
L277 [New June 1, 2005]

Superior Court of the State of California, County of Orange
Civil Complex Center
751 W. Santa Ana Blvd.
Santa Ana, CA  92701

**COMPLEX CIVIL GUIDELINES**



# GUIDELINES

## ALL COMPLEX DEPARTMENTS

Welcome to the Complex Civil Litigation Program. Orange County Superior Court is one of six courts designated by the California Judicial Council as pilot project courts to handle solely complex litigation. These pilot courts have been established to test case management principles which may improve the effective administration of justice by reducing the time and expense normally associated with the litigation of complex civil cases. The principles make it easier to prepare these cases for trial by providing a more orderly framework for the pre-trial phase of the litigation.

The result is a greater opportunity for early case resolution through mediation and settlement, and improving the way complex cases are tried by encouraging the use of technology.

Counsel's familiarity with the applicable *California Rules of Court*, *Local Rules – Superior Court of California, County of Orange ("local rules")*, and the *Deskbook on the Management of Complex Civil Litigation ("Deskbook")* is expected. A copy of the *Deskbook* may be obtained by contacting LEXIS Publishing at (800) 833-9844.  These guidelines should answer most procedural questions and assist you in feeling comfortable in our courtrooms.  ***These Guidelines are Orders of the Court.***

✔ ***Plaintiff must serve a copy of these Guidelines with the Summons and Complaint.***

Superior Court of the State of California, County of Orange
Civil Complex Center
751 W. Santa Ana Blvd.
Santa Ana, CA 92701

## COMPLEX CIVIL GUIDELINES

I. **COURTROOM DEMEANOR, CONDUCT AND ETIQUETTE:**

1. The court expects civility and proper decorum at all times in the courtroom. Witnesses and parties, except for small children, are to be addressed and referred to by their surnames. Courtesy toward everyone in the courtroom is required. Advise all witnesses and parties to observe appropriate courtroom demeanor and punctuality. *The civil and courteous treatment of courtroom staff and opposing counsel is a paramount professional obligation of counsel.*

2. All electronic devices such as pagers and cell phones must be TURNED OFF while in the courtroom whether or not court is in session.

3. Trial attorneys should be in the courtroom 10 minutes prior to the start of court each morning. Punctuality is not only a courtesy to others, it is required. Counsel should expect that the court will take appropriate action if counsel is late for any appearance without good reason.

4. Objections, statements and arguments must be addressed to the court rather than opposing counsel. Counsel may speak from the lectern or the counsel table and may examine witnesses and object without standing or without asking permission.

5. Do not enter the well of the courtroom at any time.

6. Do not lean or sit on the jury rail.

7. Do not approach the clerk or reporter while court is in session for any reason.

8. At the end of each day, counsel must clear work areas including the area in the rear of the courtroom unless granted leave of the court otherwise.

9. Any use of the department's fax machine is permitted only by order of the court.

10. It is counsel's responsibility to record the date and time set for any future hearing. If counsel needs to confirm a hearing date, please call opposing counsel before calling the court. If the information is still not available, please call the Clerk's Office of the Civil Complex Center at (714) 568-4700. Please do not call courtroom staff unless these previously noted resources do not have the information you need.

11. Copy work is done by staff in the Clerk's Office. Courtroom staff will not make copies at counsel's request unless directed to do so by the judge. All copies are subject to a per-page copying fee.

(Rev. Feb 29, 2008)

Superior Court of the State of California, County of Orange
Civil Complex Center
751 W. Santa Ana Blvd.
Santa Ana, CA 92701

---

### COMPLEX CIVIL GUIDELINES

---

## II.  GENERAL MATTERS

1.   The court expects all counsel to maintain regular communication with each other regarding hearing dates, the progress of the case, and settlement possibilities.

2.   The court believes in liberal discovery but expects counsel to refrain from engaging in excessive and abusive discovery.

3.   The court will require written notice of all hearing dates and decisions.  Notice is not normally waived and waiver of notice must be stated on the record.

4.   Continuances of hearing or trial dates are discouraged but may be necessary from time to time.  Continuances of trial or hearing dates by stipulation are not permitted without approval by the court.  Even if counsel have stipulated to a continuance, the new date must be pre-approved by the courtroom clerk.  Please call the courtroom clerk for available dates before contacting other counsel. Stipulated continuances must be supported by declaration stating the reasons for the continuance and be accompanied by a proposed order for the court's signature. Faxed signatures on stipulations are permitted.  All applicable fees apply.

5.   Be advised that the Superior Court of California, County of Orange has established a system for filing in accordance with Civil Code of Procedure section §1010.6 and California Rule of Court 2.250 et seq.

     All papers filed in complex civil cases must be electronically filed unless a party has been specifically excused by the Court from the requirement, pursuant to the *Local Rules – Superior Court of California, County of Orange* ("local rules"), Rule 308.  To register for the program and to obtain additional information, go to: www.occourts.org/complexcivil/ .

6.   Please consult the local rules prior to seeking the assistance of courtroom staff in order to minimize telephone calls to the department.

7.   In the event a case settles prior to a court hearing or trial date, the plaintiff or cross-complainant must file in the assigned department either a full dismissal, a Stipulation for Entry of Judgment, or a Judgment on Stipulation that is in a form ready for the judge's signature.  If the applicable document is not ready for filing by the time of the next hearing date, counsel must appear at the time scheduled for the hearing and recite the settlement for the record.

8.   Cross-complainants must serve a copy of these guidelines and give notice of any scheduled hearings and depositions at the time the cross-complaint is served.

(Rev. Feb 29, 2008)

Superior Court of the State of California, County of Orange
Civil Complex Center
751 W. Santa Ana Blvd.
Santa Ana, CA 92701

---

**COMPLEX CIVIL GUIDELINES**

---

9.    Information about filing requirements or fees is available on the court's INTERNET home page at: http://www.occourts.org, or by telephone at (714) 568-4700. The local rules are available on the court's internet home page.

10.   Telephone appearances are conducted pursuant to the provisions of California Rules of Court, Rule 3.670 and the guidelines of **CourtCall**, available at (310) 342-0888 or (888) 88-COURT.

## III.  LAW AND MOTION:

1.    **Meet and Confer**: This court adopts the *Deskbook's* view that pre-filing conferences between counsel may be useful in avoiding useless or unnecessary motions (*Deskbook*, Pleading and Motion Practice, § 2.42.). Therefore, prior to the hearing of any motion, petition or application, except applications to appear *pro hac vice* and motions to withdraw as counsel of record, all counsel and parties appearing in *propria persona* shall confer in a good faith attempt to eliminate the necessity of the hearing or resolve as many disputes as possible.

Counsel for the moving party shall arrange the conference to meet and confer and, at least 10 calendar days before the hearing, file at the Clerk's Office of the Civil Complex Center (Room 213) a statement entitled "Meet and Confer," signed under penalty of perjury, summarizing the issues remaining in dispute and the respective positions taken. Failure to comply with the requirement to meet and confer may result in the matter being continued or taken off calendar.

If the court finds that there was no good reason for a failure to resolve the dispute, the court may order any person who unreasonably fails to settle any disputed issue to pay the amount of the opposing party's reasonable expenses, including reasonable attorneys' fees incurred in making or opposing the matter.

2.    **Off Calendars and Continuances**: In order to promote judicial economy and avoid wasting court resources, counsel for moving parties must notify the court as soon as possible if any matter will be taken off calendar or continued.

## IV.  EX PARTE APPLICATIONS:

1.    The filing fee for each *ex parte* application must be paid at the Clerk's Office of the Civil Complex Center (Room 213). The court's consideration of an *ex parte* application will not interfere with or delay any trial in progress. The moving party is expected to adhere to the provisions of California Rules of Court, Rule 3.1200 – 3.1207. All papers necessary to the determination of the application, including any proposed pleading, motion or order, must be submitted with the *ex parte* application.

2.    The application shall include a declaration of Notice of Ex Parte Hearing and a proposed order; and shall state in the notice the irreparable harm, immediate danger or

(Rev. Feb 29, 2008)

Superior Court of the State of California, County of Orange
Civil Complex Center
751 W. Santa Ana Blvd.
Santa Ana, CA  92701

**COMPLEX CIVIL GUIDELINES**

other basis for *ex parte* relief that will result if the requested relief is not granted until a
regularly noticed motion may be heard.

3.  The parties shall appear at the appointed time in the department in which the
application is to be heard. No late appearance will be heard without good cause. There
is no second-call on the *ex parte* calendar.

## V.  REFEREES

1.  In complex cases, the court has the authority to 1) appoint a referee to conduct
mediation or mandatory settlement conferences, or to hear and determine discovery
disputes; 2) order the parties to compensate the referee in a manner that is fair; and
3) compel attendance by the parties and their carriers at mediation and settlement
conferences. (Code of Civil Procedure §187, §639 and <u>Lu v. Superior Court</u> (1997) 55
CA.4th 1264, 1270 -72.)

2.  It is the court's expectation that all parties and their carriers will appreciate the
advantage of cooperating in early settlement or mediation efforts.

3.  It is the general order of the court that the provisions of the local rules, Rule 448 shall
apply to mandatory settlement conferences, and that the provisions of subdivisions D.,
E., H. and I. of Rule 448 shall apply to mediation as if the mediation was a mandatory
settlement conference for all parties which have agreed to mediate. However, the
referee is authorized to require the attendance of any person at any mediation agreed
upon as may be appropriate for the circumstances of the case and the position of each
party.  For example, "major players" may be required to have a claims representative
present, while "minor players" may be allowed to have a claims representative available
by telephone during the mediation. Similar appropriate accommodation may be made
by the referee for association boards, business entities, or multiple plaintiffs for
example.  All parties are expected to cooperate in making a sincere effort to resolve the
case without a trial.

4.  Any request for a waiver of the requirement to personally appear at a mandatory
settlement conference, whether conducted by the court or a referee, must be made by
written application to the court in accordance with the provisions of the local rules, Rule
448.I.3(5).

5.  No later than 20 days prior to the initial Case Management Conference, the plaintiff is
expected to have conferred with all other parties that have filed a responsive pleading
concerning whether referee services are appropriate for the case. If the parties agree
that the appointment of a referee would benefit the case, counsel shall then attempt to
agree on the selection of one or more referees for the purposes stated in this section.

Plaintiff is expected to propose to all other parties a list of 3 to 6 potential referee
candidates after having inquired of each candidate concerning his or her availability to

Superior Court of the State of California, County of Orange
Civil Complex Center
751 W. Santa Ana Blvd.
Santa Ana, CA  92701

---

**COMPLEX CIVIL GUIDELINES**

---

accept an appointment. If a party cannot agree to the appointment of any of the referees suggested by the plaintiff, that party must propose an alternative list of referee candidates. If the parties still cannot agree, a party may apply for the appointment of a referee under the provisions of Code of Civil Procedure §638 or §639, whichever is appropriate, supported by a declaration stating the reasons why the appointment of a referee would benefit the case, and identifying the issue upon which the parties are unable to agree, including whether there is partial agreement among some of the parties.  The names of all of the proposed referee candidates, if any, shall be stated in the declaration.

When all of the parties agree that the appointment of a referee would benefit the case, but cannot agree on the selection of a particular referee, the court may appoint the referee(s) with or without further notice at the Case Management Conference if the court believes the appointment of a referee would benefit the case.

6.     The appointed referee(s) may assist with the preparation of the Case Management Order, mediation, discovery schedule, and other pre-trial matters.

## VI.  MANDATORY SETTLEMENT CONFERENCES ("MSC"):

No case will be tried before a sincere effort is made to settle.  The court expects that the parties will first attempt to settle the case using the assigned mediator or referee, if any. When a mediator or settlement referee has been appointed in the case, a settlement conference through the court will be scheduled only after reasonable attempts to settle with the assistance  of the mediator or settlement referee have been exhausted. The court expects the parties will comply with the provisions of the local rules, Rule 448.

All of the judges at the Civil Complex Center are willing to help another judge in the settlement of a complex case depending upon the judge's available calendar. If the parties agree to have a mandatory settlement conference conducted by a judge other than the assigned judge, the parties should first determine the other judge's availability before asking the assigned judge to order the settlement conference. However, it is not presumed that the judge to whom a case is assigned should not conduct the mandatory settlement conferences in his or her cases. If a party objects to the trial judge's participation in the MSC, the party must advise the judge or the courtroom clerk of its objection prior to the setting of the MSC.  **Counsel are advised to check with the court to determine its preference in this regard.**

## VII.  CASE MANAGEMENT HEARINGS AND OTHER CONFERENCES:

Case Management Conferences and periodic Status Conferences (in addition to other required appearances) are likely to be scheduled throughout the pendency of the litigation on the court's own motion or at the request of one of the parties. The first Case Management Conference is generally scheduled approximately 90 days after the action is filed. Plaintiff is required to give notice of this conference date to all other parties. The

(Rev. Feb 29, 2008)

Superior Court of the State of California, County of Orange
Civil Complex Center
751 W. Santa Ana Blvd.
Santa Ana, CA 92701

---

**COMPLEX CIVIL GUIDELINES**

---

parties should expect the court to schedule review hearings about every 90 days to
monitor how the case is progressing.

A Trial Readiness Conference or Pre-trial Conference will likely be scheduled 30-90
days before trial for the purpose of determining the readiness of the parties and
resolving procedural issues concerning the trial. The goal of the Trial Readiness
Conference or Pre-trial Conference is to make the trial proceed as predictably and
smoothly as possible. **The Trial Readiness Conference or Pre-trial Conference is
not a substitute for the Issues Conference required by local rules, Rule 450.**

## VIII.  CASE MANAGEMENT:

1.      Case Management Orders are not required in all cases, but they may be helpful
in cases where the sequencing and timing of key events are necessary in the
management of the litigation and preparation of the case for trial. However, even if a
Case Management Order is not necessary in a particular case, *all complex cases must
be managed by counsel, or the court, or both.*

The goal of case management is to "bring about a just resolution as speedily and
economically as possible." (*Deskbook*, Case Management, §2.01.) To be effective, case
management "should be tailored to the needs of the particular litigation and to the
resources available; make-work activity should be avoided." (*Id.*) The parties or the
court should develop and monitor an "effective plan for the orderly conduct of pretrial
and trial proceedings." (*Deskbook*, Case Management, §2.04.) A case management
plan "should prescribe a series of procedural steps, with firm dates, giving direction and
order to the case as it progresses through pretrial proceedings to summary disposition
or trial." (*Id.*) The setting of interim time limits and deadlines is often a necessary part of
an effective case management plan.

2.      **Case Management Conference and Status Conference Statements:** The judges of
the Civil Complex Center have determined that Judicial Council form CM-110, *Civil
Case Management Statement* (required by California Rules of Court, Rule 3.725(c), is
*inadequate* to provide the judges the information they need when determining how a
particular complex case should be managed. *Form CM-110 shall not be used in any
action designated or provisionally designated as complex.* Instead, the parties shall
file with the court either a Case Management Conference Statement or a Status
Conference Statement as described below.

Counsel must file an updated Conference Statement for *each* Case Management or
Status Conference.  The Conference Statement is due no later than 5 court days prior
to the hearing.

A Case Management Conference Statement is a comprehensive report of the case
which should include a brief objective summary of the case, the potential dimensions of
the case, significant procedural and practical problems which may likely be encountered

7                                    (Rev. Feb 29, 2008)

Superior Court of the State of California, County of Orange
Civil Complex Center
751 W. Santa Ana Blvd.
Santa Ana, CA 92701

### COMPLEX CIVIL GUIDELINES

in the case, suggestions for efficient management of the case, including a proposed time-line of key events in the case or a proposed case management order, if appropriate, and any other special consideration the court should be made aware of to assist it in determining an effective case management plan.

A Status Conference Statement may be filed as an alternative to the Case Management Conference Statement when appropriate. A Status Conference Statement is generally less detailed than a Case Management Conference Statement and is to be used to advise the court of progress or developments in the case which have occurred since the last review hearing.

A joint statement of the parties is preferred by the court whenever possible.

3.  **Early resolution of threshold issue:** On occasion, the progress of a case can be helped by the early resolution of a pivotal or threshold issue upon which the rest of the case hinges. However, when the resolution of such an issue depends upon the determination of questions of fact, a definitive outcome may not be readily achievable through a motion, such as a motion for summary judgment. In such cases, if the parties are willing to enter necessary stipulations to allow for a separate trial of a limited issue, the court will order the trial solely on that issue as soon as the parties can be ready.

In such a trial, the preponderance of the evidence standard is presumed to be the burden of proof unless the law requires otherwise. (Evidence Code §115.) As with any trial, the outcome is binding on the parties even though the findings are interlocutory. Where the parties seek a jury trial of the issue, the court is likely to require a stipulation by the parties that the issue may be heard and determined by a jury different from that which will hear and determine the remaining issues in the case.

## IX. TRIALS:

1.  **Motions *in limine*:** Motions *in limine*, including pretrial hearings under Evidence Code §402, must be in writing and supported by a memorandum of points and authorities. Motions *in limine* shall be exchanged at the Issues Conference pursuant to the local rules, Rule 450. Motions and oppositions to the motions shall be filed on the Friday before the trial date in the department in which the trial is set.

Pre-trial motions to preclude evidence at trial shall specify the evidence the moving party seeks to exclude and shall be supported by a declaration stating (1) the specific ground of the objection; (2) the reasons why the moving party believes the evidence will likely be offered at trial; and (3) a sufficient offer of proof to permit the court the ability to determine the admissibility of the evidence on the objection specified. (See Evidence Code §353.)

Counsel should keep in mind it may be difficult for him or her to specify the evidence which is the subject of the motion, and the precise grounds on which it should be

(Rev. Feb 29, 2008)

Superior Court of the State of California, County of Orange
Civil Complex Center
751 W. Santa Ana Blvd.
Santa Ana, CA  92701

---

**COMPLEX CIVIL GUIDELINES**

---

precluded, until that evidence is offered. "Actual testimony sometimes defies pretrial predictions of what a witness will say on the stand. Events in the trial may change the context in which the evidence is offered to an extent that a renewed objection is necessary to satisfy the language and purpose of Evidence Code section 353." (Kelly v. New West Federal Savings (1996) 49 CA 4th 659, 671.) "'Until the evidence is actually offered, and the court is aware of its relevance in context, its probative value, and its potential for prejudice, matters related to the state of the evidence at the time an objection is made, the court cannot intelligently rule on admissibility.'" (Id.)

Counsel should attempt to resolve evidentiary disputes at the Issues Conference before resorting to a motion in limine. "It is frequently more productive of court time, and the client's money," for counsel to informally address at the Issues Conference the issues which could be raised in motions in limine and, instead of a motion, present a stipulation to the court on uncontested issues. Matters of day-to-day trial logistics and common professional courtesy should not be the subject of motions in limine. These are matters of common professional courtesy that should be accorded counsel in all trials.

2.    Jury Trial:

    A.    Procedural matters and issues relating to jury selection most often can be addressed orally and informally with the court, and later preserved on the record if necessary.

    B.    Parties shall use CACI instructions when applicable. Proposed jury instructions shall be filed in typed form on the Friday before the trial date. A modified version of a CACI instruction should be plainly marked as "Modified." Handwritten modification of a standard CACI instruction is acceptable with court approval. CACI instructions shall be submitted to the court using the "masthead" format, with spaces to indicate which party has submitted the instruction, and whether the instruction will be given, given as modified, withdrawn or refused. The court has the discretion whether to provide multiple sets of instructions to the jury for its deliberation.

    C.    At the Issues Conference, counsel should discuss stipulating to less than 12 jurors to try the case in the event the jury is reduced to less than 12 jurors prior to verdict.

    D.    All challenges for cause shall be made outside the hearing of the jury panel.

    E.    Objections during the course of the trial shall be in the form of a concise statement of the grounds. Speaking objections are not permitted. Argument on the objection without invitation by the court is not permitted.

    F.    Counsel shall neither make reference to nor display charts, models, photographs or other demonstrative evidence to the jury unless: 1) the evidence has been

Superior Court of the State of California, County of Orange
Civil Complex Center
751 W. Santa Ana Blvd.
Santa Ana, CA 92701

---

**COMPLEX CIVIL GUIDELINES**

---

received into evidence; 2) opposing counsel has been given the opportunity to review the evidence and has no objection to it; or 3) the proponent of the evidence has leave of court to refer to or display the evidence.

3.   In a court trial, trial briefs must be exchanged at the Issues Conference pursuant to the local rules, Rule 450, and filed with the court on the Friday before the date set for trial, unless the court has granted leave otherwise.

4.   On the first day of trial, counsel shall deposit with the courtroom clerk a blank check to cover the anticipated jury/reporter fees. Payment of the actual amount of jury/reporter fees is required at the end of each week of trial. Counsel may be required to deposit a new blank check at the beginning of each successive week of trial.

## X.   TRIAL EXHIBITS:

1.   INTRODUCTION:

A.   At the Trial Readiness Conference or Pre-trial Conference counsel should be prepared to state whether his or her client will be using the electronic presentation of evidence at the trial. Using electronic equipment to present evidence at trial requires preparation, organization and cooperation by the parties. The court expects that the parties will work together in devising a protocol for the pre-marking of exhibits by using prefixes or a super-numeration system to designate the proponent of the evidence. (For example, exhibits offered by Acme Air Conditioning may be marked using a prefix system starting at "AAC-0001." Zenith Concrete would mark its exhibits starting at "ZC-0001." Under a super-numeration system, plaintiff would reserve exhibit numbers 1 through 999; defendant would be assigned exhibit numbers 1000 through 1999, and cross-defendant would be assigned exhibit numbers 2000 through 2999 for example.)

B.   In a case where it is reasonable to presume voluminous documents will be produced during discovery, counsel are urged to agree upon a protocol for the pre-marking of exhibits at the earliest time possible, preferably before the initiation of discovery and delivery to a document depository. It is less expensive to mark and index voluminous documents as they are deposited than when it is done on the eve of trial.

C.   Counsel are required to cooperate throughout the trial so that one party's electronic exhibits are available to the other side to display during cross-examination.

D.   The electronic version of documents, photographs, charts or other demonstrative evidence may be substituted for the actual exhibit at trial upon the stipulation of

10                                    (Rev. Feb 29. 2008)

Superior Court of the State of California, County of Orange
Civil Complex Center
751 W. Santa Ana Blvd.
Santa Ana, CA 92701

---

### COMPLEX CIVIL GUIDELINES

---

the parties and order of the court. This guideline is not meant to alter the rules of discovery or the obligation of a party to make available the original of a document for inspection by another party through discovery or at the Issues Conference.

E.  Physical exhibits and documents are not required to be presented in a digitalized format. However, evidence which has not been presented in electronic form customarily will be ordered by the court returned at the end of the appeal period to the party which offered it. Before trial commences, counsel will be asked to sign a stipulation for the return and maintenance of the exhibits. Plaintiff will maintain joint exhibits unless the court orders otherwise.

F.  At the beginning of the trial, counsel shall provide the courtroom clerk a JOINT EXHIBIT LIST describing and numbering each exhibit. The exhibit list shall indicate the exhibits, which are to be admitted by stipulation of the parties.

Exhibits admitted pursuant to stipulation are deemed admitted at the commencement of the trial. It will greatly assist the courtroom clerk if counsel also pre-tag and mark for identification the exhibits which will likely be offered at the trial.

A sheet of exhibit tags can be found at the end of these guidelines for counsel to reproduce. They are also available from the courtroom clerk.

2.  USE OF ELECTRONIC EVIDENCE PRESENTATION SYSTEMS:

A.  Counsel are strongly encouraged to take advantage of the benefits of the electronic presentation of evidence when in trial at the Civil Complex Center to enhance the orderly and effective presentation of evidence, reduce concerns about the custody and security of exhibits, and reduce the work and expense associated with the tagging, storing and transporting of exhibits. In an appropriate case, the court may require the use of an electronic evidence presentation system. Electronic evidence presentation systems must be compatible with the court's infrastructure (video distribution amplifier, wiring, conduit, floor receptacles and connectors). Whenever evidence is presented electronically, the physical custody of exhibits by the clerk is replaced by the electronic record of the exhibits.

B.  Electronic Evidence Standard Format: Counsel must submit to the clerk 2 sets of electronic evidence in PDF file format and stored on CD-R. Evidence must be in sequential order with the exception of JPEG and MPEG files which shall be stored on separate discs. Counsel may also prepare electronic evidence using alternate non-proprietary formats subject to the approval of the court. The compact discs (CD's) must be labeled as follows:

(Rev. Feb 29, 2008)

Superior Court of the State of California, County of Orange
Civil Complex Center
751 W. Santa Ana Blvd.
Santa Ana, CA 92701

**COMPLEX CIVIL GUIDELINES**

Case #
Case Name
Exhibits ____ to ____
(Original or Backup copy)

C.    The courtroom clerk will maintain and provide counsel an updated exhibit list.
      The clerk must confer with counsel on an ongoing basis to maintain accuracy
      and completeness of the exhibits. The court may require counsel to periodically
      submit to the clerk an up-to-date CD containing exhibits received into evidence.

D.    It is counsels' responsibility to identify and track redactions, modifications, and
      substitution of exhibits. Counsel are expected to be prepared to submit an up-to-
      date evidence CD with all redactions, modifications, and substitutions, as well as
      impeachment documents used, upon the courtroom clerk's request.

E.    Impeachment exhibits are not pre-marked. However, counsel are responsible for
      having the document electronically recorded upon being offered into evidence
      (exhibit numbers may be reserved for this purpose). Counsel must consult with
      the clerk and submit the evidence CD containing the impeachment documents,
      along with a  separate exhibit list in a sealed envelope prior to the time the
      evidence is offered. The envelope shall be marked "impeachment documents"
      and identified with the name of the proffering party.

F.    Counsel must confer with the clerk, prior to submission of the evidence CD to the
      jury for use in deliberations, and submit the final joint exhibit list containing only
      those exhibits received into evidence. The CD used by the jurors must include
      the joint exhibit list and the electronically stored exhibits which have been
      entered into evidence. Submission of the joint evidence CD also serves as a
      stipulation that all exhibits presented in electronic form to the jury are complete
      and correct. Any disagreement must be brought to the attention of the court at
      the earliest reasonable time. Counsel must lodge two (2) evidence CDs of all
      exhibits received into evidence.

G.    The jury room will have a PC to view the exhibits on the monitor. The clerk may
      print copies from the evidence CD for the jurors to use, if requested by the jury.
      The clerk will collect and destroy copies of exhibits at the conclusion of trial.

3.    NON-ELECTRONICALLY PRESENTED EVIDENCE:

A.    Counsel must provide an original set plus a copy set of all documentary exhibits.
      Each set must be pre-marked and tagged using the court approved exhibit tags.
      Alternatively, counsel may provide one original set plus a copy set in electronic
      form. The second set is for the judge's use during trial. If counsel intends to use

Superior Court of the State of California, County of Orange
Civil Complex Center
751 W. Santa Ana Blvd.
Santa Ana, CA 92701

**COMPLEX CIVIL GUIDELINES**

A document for impeachment, two copies of the document must be delivered to the courtroom clerk at the same time in a sealed envelope marked "impeachment documents" and the name of the party.  Any alternative to these procedures for the submission of evidence must be presented to the court at the Trial Readiness Conference or Pre-trial Conference.

B.    Enlargements and transparencies customarily will not be admitted into evidence unless ordered by the court. Any large exhibit or transparency should be accompanied by an 8 ½" x 11" version of the exhibit similarly marked for identification.

C.    Counsel are expected to comply with the provisions of Evidence Code §768(b) by showing the exhibit to the opposing counsel before it is displayed to the trier of fact.

D.    Interrogatories and Requests for Admission that are expected to be used at trial must be extracted and lodged with the court, and a copy given to counsel, at the appropriate time.  In jury trials, questions and answers must be read into the record, subject to proper objections.  The extracts may be submitted as exhibits in bench trials.

**XI.    USE OF DEPOSITION TRANSCRIPTS**

Deposition transcripts which are expected to be used at trial must be lodged with the Court on the first day of trial.  Portions of a deposition transcript offered into evidence must be read into the record as if live testimony, subject to proper objections.

(Rev. Feb 29, 2008)

Superior Court of the State of California, County of Orange
Civil Complex Center
751 W. Santa Ana Blvd.
Santa Ana, CA  92701

**COMPLEX CIVIL GUIDELINES**

## JOINT EXHIBIT LIST

**Case Name:** _____

**Case No:** _____

**Dept :** _____    **Type of Hearing :** _____

| | | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

14                                    (Rev. Feb 29, 2008)

Superior Court of the State of California, County of Orange
Civil Complex Center
751 W. Santa Ana Blvd.
Santa Ana, CA  92701

## COMPLEX CIVIL GUIDELINES

**EXHIBIT NO.**

☐ ID only (Date)

☐ **IN EVIDENCE** (Date)

☐ Plaintiff/People    ☐ Defendant    ☐ Joint
☐ Petitioner          ☐ Respondent   ☐ Court
☐ (Other)

Atty/Party Introducing Sensitive Exhibit

Case No.

_____ Vs. _____

Alan Slater, Executive Officer and Clerk

Deputy

**NOTE: THIS ITEM IS A PERMANENT COURT RECORD.
DO NOT REMOVE FROM THE COURTROOM**

---

**EXHIBIT NO.**

☐ ID only (Date)

☐ **IN EVIDENCE** (Date)

☐ Plaintiff/People    ☐ Defendant    ☐ Joint
☐ Petitioner          ☐ Respondent   ☐ Court
☐ (Other)

Atty/Party Introducing Sensitive Exhibit

Case No.

_____ Vs. _____

Alan Slater, Executive Officer and Clerk

Deputy

**NOTE: THIS ITEM IS A PERMANENT COURT RECORD.
DO NOT REMOVE FROM THE COURTROOM**

15                                      (Rev. Feb 29, 2008)

County of Orange

## CIVIL COMPLEX CENTER
### 751 W. Santa Ana, Blvd. Santa Ana, CA 92701
### PO BOX 22028 92702-2028

| DEPT | CIVIL JUDGES | NOTICED MOTIONS HEARD | EX PARTES HEARD | TELEPHONIC NOTICE TO COURTROOM NO LATER THAN | EX PARTE APPLICATION PRESENTED IN COURTROOM NO LATER THAN |
|------|-------------|----------------------|-----------------|---------------------------------------------|----------------------------------------------------------|
| CX101 | Velasquez (714) 568-4802 | Thursdays 1:30 P.M. * | M - F, 1:30 P.M. | Noon, day before ex parte hearing | 10:00 a.m., day of ex parte hearing |
| CX102 | Andler (714) 568-4822 | Thursdays, 1:30 P.M. | M-Th, 9:00 A.M. | 10:00 am, day before ex parte hearing  Ex parte papers shall be lodged directly in dept. CX102 and not filed with the clerk's office unless otherwise ordered by the court. | 12:00 p.m., day before ex parte hearing;  opposition must be in writing |
| CX103 | Bauer (714) 568-4812 | Mondays, 10:30 A.M. | Tu, Th 1:30 P.M. | Noon, day before ex parte hearing | 10:00 a.m., day of ex parte hearing |
| CX104 | Colaw (714) 568-4818 | Fridays 10:00 A.M.* | M, T, W and F, 1:30 P.M. | 12:00 a.m., day before ex parte hearing | 10:00a.m., day of ex parte hearing |
| CX105 | Stock (714) 568-4807 | Fridays, 9:00 A.M. * | M - F, 1:30 P.M. | 10:00 a.m., day before ex parte hearing | 12:00 p.m., day before ex parte hearing;  opposition must be in writing |

*Law and Motion Tentative Rulings are issued and posted on the Internet.

1. The consideration of ex parte applications shall not interfere with or delay the trial in progress. Requirements pursuant to California Rules of Court (CRC) 3.1200-3.1207 shall apply. All paperwork, including proposed pleadings or motions and orders, must be submitted with ex parte application.

   Moving party shall submit on moving papers unless the Court invites oral argument. Moving papers must:

   • Include a declaration of Notice of Ex Parte Hearing and a proposed order.
   • State in first paragraph of the application the irreparable harm that will occur if the relief requested is not granted until after a formally noticed hearing.

2. For information regarding fees or the Orange County Superior Court Local Rules, go to: http://www.occourts.org.

3. Moving and responding parties shall be in the department at the appointed time. No check-ins will be received after the appointed time without good cause. There will be no second call.

4. Teleconference appearances are available through CourtCall, LLC at (310) 914-7884 or (888) 88-COURT. Teleconference appearance is voluntary and does not require consent of the other attorneys or parties in the case. The Court does, however, reserve the right to reject any request.

5. The Complex Litigation Panel requires the filing of a Meet and Confer statement at least 10 calendar days prior to the hearing of any motion, petition or application except discovery motions and Motions to Withdraw as Counsel of Record.

6. The direct Fax filing number is (714) 568-5180. Refer to Orange County Superior Court Local Rule 380. (Not applicable if for complex cases subject to the Electronic Filing Order.)

**PLAINTIFF SHALL SERVE A COPY OF THE COMPLEX GUIDELINES WITH THE SUMMONS AND COMPLAINT.**

Rev May 26, 2009

1  **SPIRO MOSS LLP**
   J. Mark Moore (SBN 180473)
2  mark@spiromoss.com
   Ira Spiro (SBN 67641)
3  ira@spiromoss.com
   11377 W. Olympic Boulevard, Fifth Floor
4  Los Angeles, CA 90064-1683
   Phone:  (310) 235-2468
5  Fax:     (310) 235-2456

6  **ARBOGAST & BERNS LLP**
   David M. Arbogast (SBN 167571)
7  darbogast@law111.com
   Jeffrey K. Berns (SBN 131351)
8  jberns@law111.com
   19510 Ventura Boulevard, Suite 200
9  Tarzana, California 91356
   Phone: (818) 961-2000
10 Fax:    (818) 654-5988

11 Attorneys for Plaintiffs and all others similarly situated.

12

13              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14                        **COUNTY OF ORANGE**

15

16 CLARENCE E. BOSCHMA, SHIRLEY C.          )  **CASE NO. 30-2009-00277721**
   BOSCHMA, and SHARON ROBISON, on          )
17 behalf of themselves and others similarly )  **CLASS ACTION**
   situated,                                 )
18                                           )  [Assigned to Hon. Gail A. Andler]
                    Plaintiffs,              )
19                                           )  **NOTICE OF STATUS CONFERENCE**
                                             )
20            v.                             )  Date:  August 18, 2009
                                             )  Time:  9:00 a.m.
21                                           )  Dept:  CX 102
   HOME LOAN CENTER, INC. d/b/a              )
22 LENDINGTREE LOANS, a California           )
   Corporation; and DOES 1 through 200       )
23 inclusive,                                )
                                             )
24                  Defendants.              )
                                             )
25 _____    )

26

27

28

                        NOTICE OF STATUS CONFERENCE

1          PLEASE TAKE NOTICE that the Court set a Status Conference for August 18, 2009 at 9:00

2   a.m. in Department CX 102. Please see the Court's Order of July 10, 2009 and Orange County Superior

3   Court's Local Rule 308, attached hereto.

4

5   DATED: July 14, 2009                            **SPIRO MOSS LLP**
                                                    **ARBOGAST & BERNS LLP**
6

7                                             By:

8                                                    J. Mark Moore
                                                     Ira Spiro
9                                                    of SPIRO MOSS LLP

10                                                   David M. Arbogast
                                                     Jeffrey K. Berns
11                                                   of ARBOGAST & BERNS LLP

12                                                   Attorneys for Plaintiffs and all others Similarly
                                                     Situated
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              1
                              NOTICE OF STATUS CONFERENCE

**PROOF OF SERVICE**
*BOSCHMA v. HOME LOAN CENTER*
*Orange County Superior Court Case No. 30-2009-00277721*

I am over the age of eighteen years and not a party to the within action. My business address is 11377 W. Olympic Blvd., 5th Floor, Los Angeles, CA 90064-1683. I am employed at that address at the firm of Spiro Moss LLP.

On the date set forth below I served the document(s) described as **NOTICE OF STATUS CONFERENCE** on all the interested parties in this action, by placing: [ ] the original [xx] true copies thereof enclosed in sealed envelopes, addressed as follows, which addresses are the addresses last given by the respective addressees on any document filed in the above case and served on Spiro Moss LLP:

Home Loan Center, Inc. d/b/a Lendingtree Loans
c/o Dena La Porta
2875 Michelle Dr. #100
Irvine, CA 92606

[X]    **BY MAIL (Pickup):** I am readily familiar with this firms's practice of collection and processing correspondence for mailing with the United States Postal Service. On the date set forth below, at the firm of Spiro Moss LLP at the above address, I placed the envelope(s) containing said document(s), sealed, for collection and mailing on that date with the United States Postal Service following ordinary business practices. Under the above-mentioned practice of Spiro Moss LLP, the above document(s) would be deposited with the United States Postal Service on that same day in the ordinary course of business, with postage thereon fully prepaid at Los Angeles, California.

[ ]    **BY PERSONAL SERVICE:** I personally caused said document(s) on the date set forth below, inside the envelope(s) clearly labeled to identify the attorney(s) to be served, at the offices of the attorney(s) listed above, at the address(es) listed above, with a receptionist or other person having charge of the office(s), between the hours of 9:00 a.m. and 5:00 p.m.

[X]    **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[ ]    **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed at Los Angeles County, California, on July 14, 2009.

_____
Cole Oliver

# SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF ORANGE
## CIVIL COMPLEX CENTER

## MINUTE ORDER

Date: 07/10/2009             Time: 02:42:09 PM       Dept: CX102

Judicial Officer Presiding: Judge Gail A. Andler
Clerk: Mary White

Bailiff/Court Attendant: None

Reporter: None

Case Init. Date: 06/19/2009

Case No: 30-2009-00277721-CU-FR-CXC    Case Title: Boschma vs. Home Loan Center Inc

Case Category: Civil - Unlimited         Case Type: Fraud

Event Type: Chambers Work

Causal Document & Date Filed:

Appearances:

There are no appearances by any party.

Each party who has not paid the Complex fee of $ 550.00 as required by Government Code section 26826.4 shall pay the fee to the Clerk of the Court within 10 calendar days from date of this minute order. Failure to pay required fees may result in the dismissal of complaint/cross-complaint or the striking of responsive pleadings and entry of default.

The Court finds that this case is exempt from the case disposition time goals imposed by California Rule of Court, rule 3.714 due to exceptional circumstances and estimates that the maximum time required to dispose of this case will exceed twenty-four months due to the following case evaluation factors of California Rules of Court, rules 3.715 & 3.400: Case is Complex.

The Status Conference is scheduled for 08/18/2009 at 09:00 AM in Department CX102.

Plaintiff shall, at least 5 court days before the hearing, file with the Court and serve on all parties of record or known to Plaintiff a brief, objective summary of the case, its procedural status, the contentions of the parties and any special considerations of which the Court should be aware. Other parties who think it necessary may also submit similar summaries three court days prior to the hearing. DO NOT use the Case Management Statement form used for non-complex cases (Judicial Council Form DM-110).

Plaintiff shall give notice of Status Conference and Superior Court, County of Orange Local Rule 308 (Electronic Filing Program) to all parties of record or known to plaintiff, and shall attach a copy of this minute order.

Clerk to give notice to Plaintiff and Plaintiff to give notice to all other parties.

CLERKS CERTIFICATE OF MAILING: I certify I am not a party to this cause, over age 18, and a copy of this documents was mailed first class postage, prepaid in a sealed envelope addressed as shown, on

Case Title: Boschma vs. Home Loan Center Inc          Case No: 30-2009-00277721-CU-FR-CXC

10 JUL 2009, at Santa Ana, California. Alan S Carlson/Executive Officer & Clerk of Superior Court, by:
M. White Deputy

SPIRO MOSS
J. MARK MOORE
11377 W. OLYMPIC BLVD, FIFTH FLOOR
LOS ANGLES, CA 90064-1683

ARBOGAST & BERNS
DAVID M ARBOGAST
JEFFREY K BERNS
19510 VENTURA BLVD, STE 200
TARZANA, CA 91356

## LOCAL RULES – SUPERIOR COURT of CALIFORNIA, COUNTY of ORANGE

**Rule 303.     All-Purpose Assignment to Judge**

Cases which are subject to civil case management will be randomly assigned to a judicial officer for all purposes, who will thereafter handle all proceedings in the case, including but not limited to, law and motion, pretrial (settlement) conferences, in limine motions and the trial. Nothing herein should be construed to interfere with the power of the presiding judge to assign or reassign cases.

(Rule 303 revised and renumbered effective July 1, 2009; revised as Rule 432 effective July 1, 1992, July 1, 1993, May 1, 1994, January 1, 2007, January 1, 2008)


**Rule 304.     (Vacated effective January 1, 2004)**

(Adopted effective March 1, 1985; renumbered effective July 1, 1998; revised effective September 1, 1998; vacated effective January 1, 2004)


**Rule 305.     Peremptory Challenges – *Repealed***

*Rule 433 renumbered and repealed effective July 1, 2009*

(Rule 433 revised effective July 1, 1992, May 1, 1994, January 1, 1995, July 1, 1998)


**Rule 306.     Vacated effective July 1, 2000**

(Adopted effective January 1, 1989; revised effective July 1, 1994, January 1, 1995, renumbered effective July 1, 1998; vacated effective July 1, 2000)


**Rule 307.     Renumbered effective July 1, 2009**

*Rule 307 renumbered as Rule 373*


**Rule 308.     Electronic Filing Program**

The Superior Court of California, County of Orange, has established a system for the electronic filing of documents in complex civil actions in accordance with Code of Civil Procedure section 1010.6 and California Rules of Court, rule 2.250, et seq. All papers in complex civil actions must be electronically filed with the court unless the party has been specifically excused from doing so by the Court. An application to be excused from the requirements of this rule must be in writing and may be made by ex parte motion. Payment of any mandatory fee must be made by using any court-approved credit card.

(issued 07/01/09)

**LOCAL RULES – SUPERIOR COURT of CALIFORNIA, COUNTY of ORANGE**

All electronically filed papers must be in Portable Document Format (PDF). All papers initially captured as a scanned image from a hard-copy format will be scanned at a resolution of between 200 and 400 dpi (dots per inch) and converted to PDF format. Documents must be clearly legible. A party seeking to electronically file papers in a format other than PDF will have its papers rejected for filing as defective.

Hard copies of oversized documents may be filed with the court provided a Notice of Filing Oversized Document is filed. An oversized document means a document which include at least one page that is too large to scan and be depicted on a single 8½ inch by 11 inch sheet, or a document that exceeds the maximum file size of 50 megabytes. Documents exceeding 50 megabytes may be broken down and transmitted over multiple electronic submissions.

(Adopted effective January 1, 1998;  renumbered effective July 1, 1998; revised effective January 1, 2004, January 1, 2007, January 1, 2008, July 1, 2009)

**Rule 309.      Improper Re-filing of Cases**

A party may not dismiss and thereafter re-file a case for the purpose of having such case assigned to a different judicial officer.

Whenever a case is dismissed and thereafter another case is filed involving the same, or essentially the same, parties, facts, or causes of action as the prior case, the plaintiff in any such subsequently filed case must disclose such facts on the face page of the new complaint. The subsequently filed case will be assigned to the same judicial officer for all purposes as the prior case.

(Rule 309 revised and renumbered effective July 1, 2009; revised as Rule 436 effective July 1, 1992, July 1, 1994)

**Rule 310.      Renumbered effective July 1, 2009**

*Rule 310 renumbered as Rule 384*

**Rule 311.      Special Master**

If it is determined the matter should be referred to a special master for an accounting or other designated proceedings, the court on its own motion or upon stipulation of the parties will make the referral. The work of the special master must be completed before the mandatory settlement conference (Rule 316).

(Rule 311 revised and renumbered effective July 1, 2009; revised as Rule 447 effective July 1, 1992)

(issued 07/01/09)

## *NATIONAL REGISTERED AGENTS, INC.*

### *SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM*

To:  ROBIN CHANDLER
LENDINGTREE, INC.
11115 RUSHMORE DRIVE
CHARLOTTE, NC 28277

SOP Transmittal # **CA69993**

(800) 767-1553 - Telephone
(609) 716-0820 - Fax

Entity Served: HOME LOAN CENTER, INC.

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc. or its Affiliate in the State of   CALIFORNIA   on this   16   day of    July    , 2009  . The following is a summary of the document(s) received:

1.   **Title of Action:** Clarence E. Boschma, et al. v. Home Loan Center, Inc., et al.

2.   **Document(s) served:**

    __ Summons/Citation/Third Party Summon    __ Subpoena     **x** Notice of
    __ Complaint/Petition/Third Party Complaint   __ Garnishment    Status Conference
    __ Motion for Default/Default Judgment    __ Mechanics Lien
    __ Injunction/Temporary Restraining Order   __ Demand for Jury Trial   __ Other:

3.   **Court of Jurisdiction/**    Orange County Superior Court
    **Case & Docket Number:** 30-2009-00277721

4.   **Amount Claimed, if any:** None Given

5.   **Method of Service** (select one):
    __ Personally served by:   __ Process Server    __ Deputy Sheriff    __ U. S Marshall
    **x** Delivered Via:    __ Certified Mail    **x** Regular Mail    __ Facsimile
                (Envelope enclosed)      (Envelope enclosed)
    __ Other (Explain):

6.   **Date and Time of Receipt:** 7/16/2009 1:18:31 PM EST (GMT -5)

7.   **Appearance/Answer Date:** August 18, 2009 @ 9:00 a.m.

8.   **Received From:**   J. Mark Moore
    (Name, Address & Telephone Number)   Spiro Moss LLP
                          11377 West Olympic Boulevard
                          Los Angeles, CA 90064
                          (310) 235-2468

9.   **Federal Express Airbill #** 790181357549

10.   **Call Made to:** VM - ROBIN CHANDLER

11.   **Special Comments:**

**NATIONAL REGISTERED AGENTS, INC.**       **Copies To:**

Transmitted by Dena LaPorta

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

**ORIGINAL**

**EXHIBIT B**

(RNBx), CLOSED, DISCOVERY

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
## CIVIL DOCKET FOR CASE #: 8:07-cv-00613-AHS-RNB

Clarence E Boschma et al v. Home Loan Center Inc et al
Assigned to: Judge Alicemarie H. Stotler
Referred to: Magistrate Judge Robert N. Block
Related Case: 8:08-cv-00667-AHS-RNB
Cause: 15:1601 Truth in Lending

Date Filed: 05/25/2007
Date Terminated: 05/28/2009
Jury Demand: Plaintiff
Nature of Suit: 371 Truth in Lending
Jurisdiction: Federal Question

**Plaintiff**

**Clarence E Boschma**

represented by **David Mills Arbogast**
Arbogast and Berns LLP
19510 Ventura Boulevard Suite 200
Tarzana , CA 91356
818-961-2000
Fax: 818-867-4820
Email: darbogast@law111.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey K Berns**
Arbogast and Berns LLP
19510 Ventura Boulevard Suite 200
Tarzana , CA 91356
818-961-2000
Fax: 818-867-4820
Email: jberns@law111.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark R Cuker**
Williams Cuker Berezofsky
1617 John F Kennedy Boulevard
Suite 800
Philadelphia , PA 19103
215-557-0099
Fax: 215-557-0673
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael C Eyerly**
Kiesel Boucher Larson

8648 Wilshire Boulevard
Beverly Hills , CA 90211
310-854-4444
Fax: 310-854-0812
Email: eyerly@kbla.com
*TERMINATED: 02/18/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J Quirk**
Williams Cuker & Berezofsky
1617 J.F.K. Boulevard, Suite 800
Philadelphia , PA 19103-1819
215-557-0099
Fax: 215-557-0673
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick A DeBlase**
Kiesel Boucher Larson LLP
8648 Wilshire Boulevard
Beverly Hills , CA 90211
310-854-4444
Fax: 310-854-0812
Email: deblase@kbla.com
*TERMINATED: 02/18/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul R Kiesel**
Kiesel Boucher Larson LLP
8648 Wilshire Blvd
Beverly Hills , CA 90211
310-854-4444
Fax: 310-854-0812
Email: kiesel@kbla.com
*TERMINATED: 02/18/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Shirley C Boschma**
*on behalf of themselves and others similarly
situated*

represented by **David Mills Arbogast**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey K Berns**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Mark R Cuker**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael C Eyerly**
(See above for address)
*TERMINATED: 02/25/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J Quirk**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick A DeBlase**
(See above for address)
*TERMINATED: 02/25/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul R Kiesel**
(See above for address)
*TERMINATED: 02/19/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sharon Robison**
*on behalf of themselves and others similarly situated*

represented by **David Mills Arbogast**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey K Berns**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark R Cuker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J Quirk**
(See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Home Loan Center Inc**                                    represented by    **Jonathan Peter Hersey**
*a California Corporation*                                                    Sheppard Mullin Richter and Hampton
*doing business as*                                                          650 Town Center Drive, 4th Floor
Lendingtree Loans                                                            Costa Mesa , CA 92626-1993
                                                                             714-513-5100
                                                                             Email: jhersey@sheppardmullin.com
                                                                             *LEAD ATTORNEY*
                                                                             *ATTORNEY TO BE NOTICED*

                                                                             **Michael Adam Wallin**
                                                                             Sheppard Mullin Richter and Hampton
                                                                             650 Town Center Drive, 4th Floor
                                                                             Costa Mesa , CA 92626
                                                                             714-513-5100
                                                                             Fax: 714-513-5130
                                                                             Email: mwallin@smrh.com
                                                                             *LEAD ATTORNEY*
                                                                             *ATTORNEY TO BE NOTICED*

                                                                             **Robert S Beall**
                                                                             Sheppard Mullin Richter & Hampton LLP
                                                                             650 Town Center Drive 4th Floor
                                                                             Costa Mesa , CA 92626-1925
                                                                             714-513-5100
                                                                             Fax: 714-513-5130
                                                                             Email: rbeall@sheppardmullin.com
                                                                             *LEAD ATTORNEY*
                                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**DOES**                                                   represented by    **Michael Adam Wallin**
*1 through 200, inclusive*                                                    Sheppard Mullin Richter and Hampton
                                                                             650 Town Center Drive, 4th Floor
                                                                             Costa Mesa , CA 92626
                                                                             714-513-5100
                                                                             Email: mwallin@smrh.com
                                                                             *LEAD ATTORNEY*
                                                                             *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/25/2007 | 1 | COMPLAINT against defendants Home Loan Center Inc, Does 1 through 100; (Filing fee $ |

| | | |
|---|---|---|
| | | 350 paid); filed by plaintiffs Clarence E Boschma, Shirley C Boschma.(esa) (Entered: 06/05/2007) |
| 05/25/2007 | | Twenty day summons issued re Complaint - (Discovery) 1 as to Home Loan Center Inc, Does 1 through 100. (esa) (Entered: 06/05/2007) |
| 05/25/2007 | 2 | Certification and Notice of Interested Parties filed by Plaintiffs Clarence E Boschma, Shirley C Boschma. (esa) (Entered: 06/05/2007) |
| 05/25/2007 | | FAX number for Attorneys Patrick A DeBlase, Michael C Eyerly, Paul R Kiesel is 818-854-0812. (esa) (Entered: 06/05/2007) |
| 05/25/2007 | | FAX number for Attorney Jeffrey K Berns is 818-867-4820. (esa) (Entered: 06/05/2007) |
| 06/13/2007 | 3 | NOTICE of Related Case(s) filed by plaintiff Sandra Gamelin; Reated Case(s): SACV 07-612 AHS (FMOx) (esa) (Entered: 07/05/2007) |
| 06/25/2007 | 5 | PROOF OF SERVICE Executed by plaintiffs Clarence E Boschma, Shirley C Boschma, upon Home Loan Center Inc served on 6/15/2007, answer due 7/5/2007. The Summons and Complaint were served by PERSONAL service, by FEDERAL statute, upon DINA LA PORTA, AGENT FOR SERVICE OF PROCESS. Due Dilligence declaration NOT ATTACHED. Original Summons NOT RETURNED. (esa) (Entered: 07/11/2007) |
| 06/26/2007 | 6 | NOTICE of Return and Return of Original Summons filed by plaintiffs Clarence E Boschma, Shirley C Boschma. (esa) (Entered: 07/12/2007) |
| 07/06/2007 | 4 | STIPULATION AND ORDER FOR AN EXTENSION OF TIME TO RESPOND TO COMPLAINT to August 6, 2007 by Judge Andrew J. Guilford (lb) (Entered: 07/06/2007) |
| 08/07/2007 | 8 | NOTICE of intention to file a First Amended Complaint filed by plaintiffs Clarence E Boschma, Shirley C Boschma. (esa) (Entered: 08/14/2007) |
| 08/09/2007 | 7 | STIPULATION AND ORDER FOR AN EXTENTSION OF TIME TO RESPOND TO COMPLAINT to 09/14/07 by Judge Andrew J. Guilford.(lb) (Entered: 08/10/2007) |
| 08/10/2007 | 9 | Certification and Notice of Interested Parties filed by Plaintiffs Clarence E Boschma, Shirley C Boschma. (esa) (Entered: 08/23/2007) |
| 08/10/2007 | 10 | FIRST AMENDED COMPLAINT against defendants Home Loan Center Inc, Does 1 through 100 amending Complaint - (Discovery) 1 ; JURY DEMAND; filed by plaintiffs Clarence E Boschma, Shirley C Boschma (esa) (Entered: 08/23/2007) |
| 08/10/2007 | | Twenty day summons issued re First Amended Complaint 10 as to Home Loan Center Inc, Does 1 through 100. (esa) (Entered: 08/23/2007) |
| 09/11/2007 | 11 | ORDER TO REASSIGN CASE due to self-recusal pursuant to Section 3.2 of General Order 07.02 by Judge Andrew J. Guilford. Case transferred to the calendar of Judge Alicemarie H. Stotler for all further proceedings. Case number now reads as SACV07-613AHS(JTLx).(csb) (Entered: 09/14/2007) |
| 09/11/2007 | 12 | NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT 10 filed by Defendants Home Loan Center, Inc. Motion set for hearing on 10/15/2007 at 10:00 AM before Judge Andrew J. Guilford. (te) (Entered: 09/18/2007) |
| 09/11/2007 | 13 | NOTICE OF MOTION AND MOTION TO DISMISS filed by Defendants Home Loan |

|  |  | Center, Inc., Does 1 through 100. Motion set for hearing on 10/15/2007 at 10:00 AM before Judge Andrew J. Guilford. (te) (Entered: 09/18/2007) |
|---|---|---|
| 09/20/2007 | 14 | MINUTES OF (IN CHAMBERS) ORDER by Judge Alicemarie H. Stotler: CONTINUING HEARING ON Defendant's MOTION to Dismiss 13 , and MOTION to Strike Portions of First Amended Complaint 12 : Defendant's Motion to Dismiss and Motion to Strike Portions of Plaintiffs' First Amended Complaint is ordered continued to 10/22/07, at 10:00 a.m. in Courtroom 10A. Counsel shall comply with this Court's Order to Parties Requiring Rule 26(f) Report to be Filed. Rule 26 Meeting Report due by 11/26/2007. The Clerk shall serve this minute order on all counsel of record in this action.(rla) (Entered: 09/21/2007) |
| 09/20/2007 | 15 | ORDER TO PARTIES REQUIRING RULE 26(f) REPORT TO BE FILED NO LATER THAN NOVEMBER 26,2007 by Judge Alicemarie H. Stotler: (See document for further details.) IT IS SO ORDERED.(rla) (Entered: 09/21/2007) |
| 10/05/2007 | 16 | STIPULATION AND ORDER by Judge Alicemarie H. Stotler: IT IS SO ORDERED that Defendants Motion to dismiss and Motion to strike currently scheduled for 10/22/07 shall be continued and shall be set for hearing on 11/5/2007 at 10:00 AM and Plaintiffs shall have up to and including 10/19/07 to file their opposition to defendants Motion to dismiss and Motion to strike.(klg) (Entered: 10/09/2007) |
| 10/05/2007 | 17 | NOTICE OF PLAINTIFFS' intention to file oppositions to Defendant's Motion to Strike and Motion to Dismiss portions of Plaintiffs' First Amended Complaint; filed by Plaintiffs Clarence E. Boschma, Shirley C. Boschma. (te) (Entered: 10/10/2007) |
| 10/19/2007 | 18 | PLAINTIFFS' OPPOSITION to Defendant's Motion to Strike portions of Plaintiffs' First Amended Complaint 10 12 ; Memorandum of Points and Authorities in support thereof; filed by Plaintiffs Clarence E. Boschma, Shirley C. Boschma. (te) (Entered: 10/23/2007) |
| 10/19/2007 | 19 | PLAINTIFFS' MEMORANDUM of Points and Authorities in opposition to Defendant's Motion to Dismiss portions of Plaintiffs' First Amended Complaint 13 ; filed by Plaintiffs Clarence E. Boschma, Shirley C. Boschma. (te) (Entered: 10/23/2007) |
| 10/29/2007 | 21 | REPLY in further support of Defendant's Motion to Dismiss 13 ; filed by Defendant Home Loan Center, Inc. (te) (Entered: 11/01/2007) |
| 10/29/2007 | 22 | REPLY in further support of Defendant's Motion to Strike portions of Plaintiffs' First Amended Complaint 10 12 ; filed by Defendant Home Loan Center, Inc. (te) (Entered: 11/01/2007) |
| 10/31/2007 | 20 | MINUTES OF IN CHAMBERS ORDER before Judge Alicemarie H. Stotler re: Stipulation and Order, Set Deadlines/Hearings 16 , MOTION to Dismiss 13 , MOTION to Strike Amended Complaint 10 12 : on the Courts own motion, the hearing on the above-entitled matter is ordered continued from November 5, 2007 at 10:00 a.m. to November 19, 2007, at 10:00 a.m.(em) (Entered: 10/31/2007) |
| 11/15/2007 | 23 | MINUTES OF (IN CHAMBERS) ORDER by Judge Alicemarie H. Stotler: ORDER TAKING UNDER SUBMISSION DEFENDANTS (1) MOTION TO DISMISS 13 AND (2) MOTION TO STRIKE 12 : The Court finds these matters appropriate for submission on the papers without oral argument. See Local Rule 7-15 (the Court may dispense with oral argument on any matter unless otherwise required); Fed. R. Civ. P. 78. These matters are, therefore, removed from the Courts November 19, 2007 calendar. The Clerk shall serve this minute order on counsel for all parties in this action. (rla) (Entered: 11/15/2007) |

| 11/26/2007 | 24 | JOINT RULE 26(f) REPORT: Estimated length of trial was not indicated; filed by Defendant Home Loan Center, Inc., Plaintiffs Clarence E. Boschma, Shirley C. Boschma. (te) (Entered: 12/06/2007) |
|---|---|---|
| 04/24/2008 | 25 | NOTICE OF FIRM CHANGE filed by PLAINTIFF Clarence E Boschma. (Berns, Jeffrey) (Entered: 04/24/2008) |
| 04/24/2008 | 26 | NOTICE of Appearance filed by attorney Jeffrey K Berns on behalf of Plaintiff Clarence E Boschma (Berns, Jeffrey) (Entered: 04/24/2008) |
| 04/25/2008 | 27 | NOTICE OF FIRM CHANGE filed by PLAINTIFF Clarence E Boschma. (Berns, Jeffrey) (Entered: 04/25/2008) |
| 04/25/2008 | 28 | NOTICE of Appearance filed by attorney Jeffrey K Berns on behalf of Plaintiff Clarence E Boschma (Berns, Jeffrey) (Entered: 04/25/2008) |
| 04/28/2008 | 29 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents. The following error(s) was found: Incorrect event selected, correct event is Change of Attorney Information RE: Notice (Other) 25 . In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. (rrp) (Entered: 04/28/2008) |
| 04/30/2008 | 30 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents. The following error(s) was found: Incorrect event selected, correct event is Change of Attorney Information RE: Notice (Other) 27 . In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. (rrp) (Entered: 04/30/2008) |
| 05/27/2008 | 31 | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS 13 ; DENYING DEFENDANTS' MOTION TO STRIKE AS MOOT 12 ; and GRANTING PLAINTIFFS LEAVE TO FILE A SECOND AMENDED COMPLAINT by Judge Alicemarie H. Stotler. Plaintiffs' second amended complaint, if any, shall be filed and served no later than June 16, 2008. Failure to timely file a second amended complaint shall result in dismissal of the action. (em) (Entered: 05/27/2008) |
| 06/02/2008 | 32 | ORDER RETURNING CASE FOR REASSIGNMENT UPON RECUSAL by Magistrate Judge Jennifer T. Lum. ORDER case returned to the Clerk for random reassignment Discovery pursuant to General Order 05-07 and General Order 07-02. Case randomly reassigned from Magistrate Judge Jennifer T. Lum to Magistrate Judge Robert N. Block for all further proceedings. The case number will now reflect the initials of the transferee Judge SACV07-0613 AHS (RNBx). (at) (Entered: 06/02/2008) |
| 06/10/2008 | 33 | ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 07-02 (Related Case) filed. Transfer of case declined by Judge George P. Schiavelli, for the reasons set forth on this order. Related Case No. CV07-3137 GPS (SHx) (at) (Entered: 06/10/2008) |
| 06/12/2008 | 34 | NOTICE of Change of Attorney Information for attorney David Mills Arbogast counsel for Plaintiff Clarence E Boschma. Adding DAVID M. ARBOGAST as attorney as counsel of record for CLARENCE E. BOSCHMA and SHIRLEY C. BOSCHMA for the reason indicated in the G-06 Notice. Filed by PLAINTIFF CLARENCE E. BOSCHMA (Arbogast, David) (Entered: 06/12/2008) |
| 06/16/2008 | 35 | SECOND AMENDED COMPLAINT against DEFENDANTS all defendants amending Amended Complaint 10 *SECOND AMENDED CLASS ACTION COMPLAINT,*filed by |

| | | Plaintiffs Clarence E Boschma (Kiesel, Paul) (Entered: 06/16/2008) |
|---|---|---|
| 06/17/2008 | 37 | SECOND AMENDED COMPLAINT amended FIRST AMENDED Complaint 10 . Filed by Plaintiff Clarence E Boschma, Shirley C Boschma (smi) (Additional attachment(s) added on 6/20/2008: # 1 Summons Issued) (rla). (Entered: 06/18/2008) |
| 06/18/2008 | 36 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents. The following error(s) was found: Civil Case Initiating Documents. Complaints (such as third-party complaints, amended complaints, complaints in intervention, counterclaims and cross-claims) and other civil case initiating documents shall be filed, in duplicate, fees paid, and summons issued and served in the traditional manner rather than electronically pursuant to General Order 08-02 RE: Amended Complaint 35 . In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. (rrp) (Entered: 06/18/2008) |
| 06/18/2008 | | 20 DAY Summons Issued re Second Amended Complaint 37 as to defendant Home Loan Center Inc. (rla) (Entered: 06/20/2008) |
| 06/18/2008 | 38 | CERTIFICATION AND NOTICE of Interested Parties filed by plaintiffs Clarence E Boschma, Shirley C Boschma, (rla) (Entered: 06/20/2008) |
| 06/18/2008 | 39 | ORIGINAL SUMMONS filed by plaintiffs Clarence E Boschma, Shirley C Boschma. (rla) (Entered: 06/20/2008) |
| 07/07/2008 | 40 | STIPULATION for Extension of Time to File Answer to July 21, 2008 re Amended Complaint 37 filed by Defendant Home Loan Center Inc. (Attachments: # 1 Proposed Order Stipulation to Extend Time To Respond to Second Amended Complaint)(Hersey, Jonathan) (Entered: 07/07/2008) |
| 07/09/2008 | 41 | ORDER granting Stipulation to Extend Time to Answer Second Amended Complaint 40 by Judge Alicemarie H. Stotler. Defendants time to answer or otherwise respond to the Second Amended Complaint shall be filed and served no later than July 21, 2008. (db) (Entered: 07/10/2008) |
| 07/21/2008 | 42 | STIPULATION for Leave to STIPULATION TO ALLOW PLAINTIFFS LEAVE TO FILE THIRD AMENDED CLASS ACTION COMPLAINT filed by Plaintiffs Clarence E Boschma. (Attachments: # 1 Proposed Order [PROPOSED] ORDER GRANTING PLAINTIFFS LEAVE TO FILE THIRD AMENDED CLASS ACTION COMPLAINT)(Eyerly, Michael) (Entered: 07/21/2008) |
| 07/23/2008 | 43 | ORDER by Chief Judge Alicemarie H. Stotler GRANTING Stipulation for Leave to File Third Amended Class Action Complaint 42 . Plaintiffs are granted leave to file their proposed Third Amended Class Action Complaint (TAC). The TAC should be filed with the Court forthwith. Defendant need not answer or otherwise respond to Plaintiffs Second Amended Class Action Complaint. Defendant shall have twenty (20) days from the filing of Plaintiffs TAC to file a responsive pleading. (smi) (Entered: 07/24/2008) |
| 07/24/2008 | 44 | THIRD AMENDED COMPLAINT against defendants Home Loan Center Inc amending Amended Complaint 37 . Filed by plaintiffs Clarence E Boschma, Shirley C Boschma (ade) (Entered: 07/30/2008) |
| 08/13/2008 | 45 | NOTICE OF MOTION AND MOTION to Dismiss Case *Third Amended Complaint* filed by Defendant Home Loan Center Inc. Motion set for hearing on 9/15/2008 at 10:00 AM before Judge Alicemarie H. Stotler. (Hersey, Jonathan) (Entered: 08/13/2008) |

| 08/13/2008 | 46 | NOTICE OF MOTION AND MOTION to Strike Third Amended Complaint Amended Complaint 44 filed by Defendant Home Loan Center Inc. Motion set for hearing on 9/15/2008 at 10:00 AM before Judge Alicemarie H. Stotler. (Hersey, Jonathan) (Entered: 08/13/2008) |
| --- | --- | --- |
| 08/29/2008 | 47 | MEMORANDUM in Opposition to MOTION to Strike Third Amended Complaint Amended Complaint 44 46 filed by Plaintiff Clarence E Boschma. (Eyerly, Michael) (Entered: 08/29/2008) |
| 08/29/2008 | 48 | MEMORANDUM in Opposition to MOTION to Dismiss Case *Third Amended Complaint* 45 filed by Plaintiff Clarence E Boschma. (Eyerly, Michael) (Entered: 08/29/2008) |
| 08/29/2008 | 49 | DECLARATION of MICHAEL C. EYERLY IN OPPOSITION TO MOTION to Dismiss Case *Third Amended Complaint* 45 filed by Plaintiff Clarence E Boschma. (Eyerly, Michael) (Entered: 08/29/2008) |
| 09/08/2008 | 50 | MINUTES OF IN CHAMBERS ORDER held before Judge Alicemarie H. Stotler taking Under Submission Motion to Dismiss the Third Amended Complaint 45 and Motion to Strike Portions of the Third Amended Complaint 46 . These matters are removed from the Court's 09/15/08 calendar. (See minute order for details) (db) (Entered: 09/08/2008) |
| 09/08/2008 | 51 | REPLY In Support MOTION to Dismiss Case *Third Amended Complaint* 45 filed by Defendant Home Loan Center Inc. (Hersey, Jonathan) (Entered: 09/08/2008) |
| 09/08/2008 | 52 | REPLY In Support MOTION to Strike Third Amended Complaint Amended Complaint 44 46 filed by Defendant Home Loan Center Inc. (Hersey, Jonathan) (Entered: 09/08/2008) |
| 09/26/2008 | 53 | MEMORANDUM in Support of MOTION to Strike Third Amended Complaint Amended Complaint 44 46 *Defendant's Notice of New Authority Supporting Its Motion* filed by Defendant Home Loan Center Inc. (Hersey, Jonathan) (Entered: 09/26/2008) |
| 02/03/2009 | 54 | MINUTES OF IN CHAMBERS ORDER by Judge Alicemarie H. Stotler: (1) VACATING ORDER OF SUBMISSION ON DEFENDANTS' (A) MOTION TO DISMISS THE THIRD AMENDED COMPLAINT AND (B) MOTION TO STRIKE PORTIONS OF THE THIRD AMENDED COMPLAINT; (2) SETTING SUPPLEMENTAL BRIEFING SCHEDULE; AND (3) SETTING ORAL ARGUMENT ON DEFENDANTS MOTIONS MARCH 23, 2009, AT 10:00 A.M re: MOTION to Strike Third Amended Complaint 46 , and MOTION to Dismiss Case 45 . The Clerk shall serve this minute order on counsel for all parties in this action. ( Motions set for hearing on 3/23/2009 at 10:00 AM before Judge Alicemarie H. Stotler.) (rla) (Entered: 02/05/2009) |
| 02/14/2009 | 55 | REQUEST to Substitute attorney David M. Arbogast in place of attorney Paul Kiesel filed by Plaintiff Clarence E Boschma. (Attachments: # 1 Proposed Order on Request for Approval of Substitution of Attorney)(Berns, Jeffrey) (Entered: 02/14/2009) |
| 02/14/2009 | 56 | REQUEST to Substitute attorney David M. Arbogast in place of attorney Paul Kiesel filed by Plaintiff Shirley C Boschma. (Attachments: # 1 Proposed Order on Request for Approval of Substitution of Attorney)(Berns, Jeffrey) (Entered: 02/14/2009) |
| 02/14/2009 | 57 | REQUEST to Substitute attorney Jeffrey K. Berns in place of attorney Michael Eyerly filed by Plaintiff Clarence E Boschma. (Attachments: # 1 Proposed Order on Request for Approval of Substitution of Attorney)(Berns, Jeffrey) (Entered: 02/14/2009) |
| 02/14/2009 | 58 | REQUEST to Substitute attorney Jeffrey K. Berns in place of attorney Michael Eyerly filed by Plaintiff Shirley C Boschma. (Attachments: # 1 Proposed Order on Request for Approval of |

| | | Substitution of Attorney)(Berns, Jeffrey) (Entered: 02/14/2009) |
|---|---|---|
| 02/14/2009 | 59 | REQUEST to Substitute attorney Jeffrey K. Berns in place of attorney Patrick DeBlase filed by Plaintiff Clarence E Boschma. (Attachments: # 1 Proposed Order on Request for Approval of Substitution of Attorney)(Berns, Jeffrey) (Entered: 02/14/2009) |
| 02/14/2009 | 60 | REQUEST to Substitute attorney Jeffrey K. Berns in place of attorney Patrick DeBlase filed by Plaintiff Shirley C Boschma. (Attachments: # 1 Proposed Order on Request for Approval of Substitution of Attorney)(Berns, Jeffrey) (Entered: 02/14/2009) |
| 02/17/2009 | 61 | SUPPLEMENT to MOTION to Strike Third Amended Complaint Amended Complaint 44 46 , MOTION to Dismiss Case *Third Amended Complaint* 45 filed by Defendant Home Loan Center Inc. (Hersey, Jonathan) (Entered: 02/17/2009) |
| 02/18/2009 | 62 | ORDER by Judge Alicemarie H. Stotler Granting REQUEST to Substitute attorney David M. Arbogast in place of attorney Paul Kiesel 55 . Substituting attorney David Mills Arbogast for Clarence E Boschma in place and stead of attorney Paul R Kiesel. (db) (Entered: 02/20/2009) |
| 02/18/2009 | 63 | ORDER by Judge Alicemarie H. Stotler Granting REQUEST to Substitute attorney Jeffrey K. Berns in place of attorney Patrick DeBlase 59 . Substituting attorney Jeffrey K Berns for Clarence E Boschma in place and stead of attorney Patrick A DeBlase. (db) (Entered: 02/20/2009) |
| 02/18/2009 | 64 | ORDER by Judge Alicemarie H. Stotler Granting REQUEST to Substitute attorney Jeffrey K. Berns in place of attorney Michael Eyerly 57 . Substituting attorney Jeffrey K Berns for Clarence E Boschma in place and stead of attorney Michael C Eyerly. (db) (Entered: 02/20/2009) |
| 02/19/2009 | 65 | ORDER by Judge Alicemarie H. Stotler Granting REQUEST to Substitute attorney David M. Arbogast in place of attorney Paul Kiesel 56 . Substituting attorney David Mills Arbogast for Shirley C Boschma in place and stead of attorney Paul R Kiesel. (db) (Entered: 02/20/2009) |
| 02/25/2009 | 66 | ORDER by Judge Alicemarie H. Stotler Granting REQUEST to Substitute attorney Jeffrey K. Berns in place of attorney Michael Eyerly 58 . Substituting attorney Jeffrey K Berns for Shirley C Boschma in place and stead of Michael Eyerly. (db) (Entered: 02/27/2009) |
| 02/25/2009 | 67 | ORDER by Judge Alicemarie H. Stotler Granting REQUEST to Substitute attorney Jeffrey K. Berns in place of attorney Patrick DeBlase 60 . Substituting attorney Jeffrey K Berns for Shirley C Boschma in place and stead of attorney Patrick A DeBlase. (db) (Entered: 02/27/2009) |
| 03/02/2009 | 68 | NOTICE of Appearance filed by attorney David Mills Arbogast on behalf of Plaintiffs Clarence E Boschma, Shirley C Boschma (Arbogast, David) (Entered: 03/02/2009) |
| 03/02/2009 | 69 | OPPOSITION *PLAINTIFFS RESPONSE TO DEFENDANTS SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT* filed by Plaintiffs Clarence E Boschma, Shirley C Boschma. (Arbogast, David) (Entered: 03/02/2009) |
| 03/02/2009 | 70 | PLAINTIFFS INDEX OF SUPPLEMENTAL AND UNPUBLISHED AUTHORITIES re MOTION to Strike Third Amended Complaint Amended Complaint 44 46 , MOTION to Dismiss Case *Third Amended Complaint* 45 filed by Plaintiffs Clarence E Boschma, Shirley C Boschma. (Attachments: # 1 Exhibit Nos 1-4, # 2 Exhibit Nos 5-8, # 3 Exhibit Nos 9-11) (Arbogast, David) (Entered: 03/02/2009) |
| | | |

| 03/03/2009 | 71 | APPLICATION for attorney Mark R Cuker to Appear Pro Hac Vice (PHV FEE PAID) filed by Plaintiffs Clarence E Boschma, Shirley C Boschma. Lodged proposed order. (db) (Entered: 03/04/2009) |
|---|---|---|
| 03/03/2009 | 72 | APPLICATION for attorney Michael J. Quirk to Appear Pro Hac Vice re: Dean Carroll, Gregory Cochrane, Erin Cochrane. (PHV FEE PAID.) Lodged Order. (ade) (Entered: 03/05/2009) |
| 03/05/2009 | 73 | ORDER TO STRIKE ELECTRONICALLY FILED DOCUMENTS by Judge Alicemarie H. Stotler. The following document(s) be STRICKEN for failure to comply with the Local Rules, General Order and/or the Courts Case Management Order: APPLICATION for attorney Mark R Cuker to Appear Pro Hac Vice. (PHV FEE PAID.) 71 , APPLICATION for attorney Michael J. Quirk to Appear Pro Hac Vice. (PHV FEE PAID.) 72 for the following reasons: Doc #71: A Certificate of Good Standing from the state for which the applicant is a member of the bar and which has been issued within 30 days shall be attached to the G-64 application. Doc #72: See Re 71 #71 above, and party/plaintiffs in document don't match case caption. (db) (Entered: 03/05/2009) |
| 03/17/2009 | 74 | MINUTES OF IN CHAMBERS ORDER TAKING UNDER SUBMISSION DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT 45 and MOTION TO STRIKE PORTIONS OF THE THIRD AMENDED COMPLAINT [46} FROM THE COURT'S 03/23/09 Calendar. The ruling on defendants' Motion to Dismiss the Third Amended Compalint and Motion to Strike Portions of the Third Amended Complaint will follow oral arguments and adjudication in the three cases set for hearing on 03/23/09 that share related issues with these matters. (db) (Entered: 03/18/2009) |
| 03/26/2009 | 75 | MINUTES OF IN CHAMBERS ORDER held before Judge Alicemarie H. Stotler: (1) GRANTING DEFENDANTS (A) MOTION TO DISMISS THE THIRD AMENDED COMPLAINT (DOCKET ENTRY NO. 45) AND (B) MOTION TO STRIKE PORTIONS OF THE THIRD AMENDED COMPLAINT (DOCKET ENTRY NO. 46); AND (2) GRANTING PLAINTIFFS LEAVE TO FILE A FOURTH AMENDED COMPLAINT NO LATER THAN APRIL 20, 2009. 46 45 (ade) (Entered: 03/26/2009) |
| 04/09/2009 | 76 | NOTICE of Change of Attorney Information for attorney Robert S Beall counsel for Defendant Home Loan Center Inc. Adding Robert S. Beall as attorney as counsel of record for HomeLoanCenter, Inc., d/b/a LendingTree Loans, a California Corporation for the reason indicated in the G-06 Notice. Filed by Defendant HOME LOAN CENTER, INC., d/b/a LENDINGTREE LOANS, a California Corporation (Beall, Robert) (Entered: 04/09/2009) |
| 04/13/2009 | 77 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents. The following error(s) was found: incorrect Magistrate Judge's intiails appear on document in this filing RE: Notice of Change of Attorney Information (G-06) 76 . In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. (vh) (Entered: 04/13/2009) |
| 04/20/2009 | 78 | FOURTH AMENDED COMPLAINT against defendants Home Loan Center Inc, DOES amending Amended Complaint 44 ,filed by plaintiffs Sharon Robison, Clarence E Boschma, Shirley C Boschma (dmjr) (Entered: 04/21/2009) |
| 04/20/2009 | 79 | PROOF OF SERVICE of Plaintiffs' Fourth Amended Complaint served via US Mail on 4/20/2009. (smi) (Entered: 04/21/2009) |
| 05/04/2009 | 80 | STIPULATION for Extension of Time to File Motion to Dismiss filed by Defendant Home |

| | | Loan Center Inc. (Attachments: # 1 Proposed Order)(Hersey, Jonathan) (Entered: 05/04/2009) |
|---|---|---|
| 05/04/2009 | 81 | PROOF OF SERVICE filed by Defendant Home Loan Center Inc, re Stipulation for Extension of Time to File 80 and *[Proposed] Order* served on May 4, 2009. (Hersey, Jonathan) (Entered: 05/04/2009) |
| 05/07/2009 | 82 | ORDER SETTING BRIEFING SCHEUDLE ON DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT AND NOTICING HEAIRNG FOR 06/22/2009 at 10:00 a.m. by Judge Alicemarie H. Stotler, re Stipulation for Extension of Time to File 80 . Defendant will file its motion to dismiss or otherwise respond to the Fourth Amended Compalint on or by 05/18/2009; Plaintiffs will file their opposition on or by 06/01/2009; Defendant will file its reply on or by 06/15/2009, etc. (See Order for further details) (db) (Entered: 05/07/2009) |
| 05/15/2009 | 83 | MINUTES OF IN CHAMBERS ORDER held before Judge Alicemarie H. Stotler: ORDER TO SHOW CAUSE WHY THE ACTION SHOULD NOT BE DISMISSED WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION RETURNABLE MAY 29, 2009 (ade) (Entered: 05/18/2009) |
| 05/18/2009 | 84 | NOTICE OF MOTION AND MOTION to Dismiss Fourth Amended Complaint filed by Defendant Home Loan Center Inc. Motion set for hearing on 6/22/2009 at 10:00 AM before Judge Alicemarie H. Stotler. (Attachments: # 1 Request For Judicial Notice In Support of Motion to Dismiss Fourth Amended Complaint)(Hersey, Jonathan) (Entered: 05/18/2009) |
| 05/19/2009 | 85 | PROOF OF SERVICE filed by Defendant Home Loan Center Inc, re MOTION to Dismiss Fourth Amended Complaint 84 served on May 19, 2009. (Hersey, Jonathan) (Entered: 05/19/2009) |
| 05/28/2009 | 86 | NOTICE of Voluntary Dismissal filed by plaintiffs Clarence E Boschma, Shirley C Boschma. Dismissal is without prejudice. (Arbogast, David) (Entered: 05/28/2009) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/28/2009 14:30:53 | | |
| **PACER Login:** | sm0175 | **Client Code:** | 05GP-132163/2394/ |
| **Description:** | Docket Report | **Search Criteria:** | 8:07-cv-00613-AHS-RNB End date: 7/28/2009 |
| **Billable Pages:** | 10 | **Cost:** | 0.80 |

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange; I am over the age of eighteen years and not a party to the within entitled action; my business address is 650 Town Center Drive, 4th Floor, Costa Mesa, California 92626-1993.

On **August 7, 2009**, I served the following document(s) described as **DEFENDANT HOME LOAN CENTER, INC.'S NOTICE OF REMOVAL TO FEDERAL COURT** on the interested party(ies) in this action by placing true copies thereof enclosed in sealed envelopes and/or packages addressed as follows:

| | |
|---|---|
| J. Mark Moore<br>Ira Spiro<br>SPIRO MOSS LLP<br>11377 W. Olympic Blvd., 5th Floor<br>Los Angeles, CA 90064-1683 | Attorney for Plaintiffs<br><br>Tel:(310)235-2468   Fax: (310)235-2456<br>Email: mark@spiromoss.com<br>ira@spiromoss.com |
| David M. Arbogast<br>Jeffrey K. Berns<br>ARBOGAST & BERNS LLP<br>19510 Ventura Blvd., Suite 200<br>Tarzana, CA 91356 | Attorney for Plaintiffs<br><br>Tel: (818)961-2000  Fax:  (818)654-8988<br>Email:  darbogast@law111.com<br>jberns@law111.com |

☐  **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Costa Mesa, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒  **BY OVERNIGHT DELIVERY:** I served such envelope or package to be delivered on the same day to an authorized courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier.

☐  **STATE:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒  **FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **August 7, 2009**, at Costa Mesa, California.

_____
Jeanette D. Francis

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Cormac J. Carney  and the assigned discovery Magistrate Judge is Arthur Nakazato.

The case number on all documents filed with the Court should read as follows:

## SACV09- 914 CJC (ANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

======================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Clarence E. Boschma, Shirley C. Boschma; and Sharon Robison | Home Loan Center, Inc. d/b/a LendingTree Loans and DOES 1 through 200, inclusive |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| SPIRO MOSS LLP<br>J. Mark Moore (180473)<br>11377 W. Olympic Blvd., 5th Floor<br>Los Angeles, CA 90064-1683<br>310-235-2468 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP<br>Robert S. Beall (132016); Jonathan P. Hersey (189240); Isaiah Z. Weedn (229111)<br>650 Town Center Drive, 4th Floor<br>Costa Mesa, California 92626-1993<br>714-513-5100 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding    ☒ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes ☐ No    ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Removed from State Court pursuant to 28 U.S.C. §§ 1441 and 1446. Claims raise issues under Truth-in-Lending Act 15 U.S.C. § 1601, et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL INJURY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 22 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/ PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☒ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | | ☐ 445 American with Disabilities – Employment | ☐ 640 R.R.& Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | IMMIGRATION | ☐ 446 American with Disabilities – Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

| FOR OFFICE USE ONLY: | Case Number: | **SACV09- 914 CJC (ANx)** |
|---|---|---|

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

American LegalNet, Inc.<br>www.FormsWorkflow.com

**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☐ No ☒ Yes

If yes, list case number(s): 8:07-cv-00613-AHS-RNB

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☒ Yes

If yes, list case number(s): 8:08-cv-00667-AHS-RNB

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☒ A. Arise from the same or closely related transactions, happenings, or events; or

☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Clarence Boschma - Los Angeles County; Shirley Boschma - Los Angeles County | Sharon Robison - Tulare County |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Home Loan Center, Inc. - Orange County | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _[signature]_                         Date  August 7, 2009

Jonathan P. Hersey, Attorney for Defendant Home Loan Center, Inc. d/b/a LendingTree Loans

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

**CIVIL COVER SHEET**

American LegalNet, Inc.
www.FormsWorkflow.com

<u>PROOF OF SERVICE</u>

<u>STATE OF CALIFORNIA, COUNTY OF ORANGE</u>

I am employed in the County of Orange; I am over the age of eighteen years and not a party to the within entitled action; my business address is 650 Town Center Drive, 4th Floor, Costa Mesa, California 92626-1993.

On **August 7, 2009**, I served the following document(s) described as **CIVIL COVER SHEET** on the interested party(ies) in this action by placing true copies thereof enclosed in sealed envelopes and/or packages addressed as follows:

| | |
|---|---|
| J. Mark Moore<br>Ira Spiro<br>SPIRO MOSS LLP<br>11377 W. Olympic Blvd., 5th Floor<br>Los Angeles, CA  90064-1683 | Attorney for Plaintiffs<br><br>Tel:(310)235-2468    Fax: (310)235-2456<br>Email: mark@spiromoss.com<br>ira@spiromoss.com |
| David M. Arbogast<br>Jeffrey K. Berns<br>ARBOGAST & BERNS LLP<br>19510 Ventura Blvd., Suite 200<br>Tarzana, CA  91356 | Attorney for Plaintiffs<br><br>Tel: (818)961-2000  Fax:  (818)654-8988<br>Email: darbogast@law111.com<br>jberns@law111.com |

☐ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Costa Mesa, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **BY OVERNIGHT DELIVERY:** I served such envelope or package to be delivered on the same day to an authorized courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier.

☐ **STATE:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ **FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **August 7, 2009**, at Costa Mesa, California.

_____
Jeanette D. Francis