SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
ROBERT S. BEALL, Cal. Bar No. 132016
rbeall@sheppardmullin.com
JONATHAN P. HERSEY, Cal. Bar No. 189240
jhersey@sheppardmullin.com
ISAIAH Z. WEEDN, Cal. Bar No. 229111
iweedn@sheppardmullin.com
MICHAEL A. WALLIN, Cal. Bar No. 240344
mwallin@sheppardmullin.com
650 Town Center Drive, 4th Floor
Costa Mesa, California  92626-1993
Telephone:  714-513-5100
Facsimile:   714-513-5130

Attorneys for Defendant
HOME LOAN CENTER, INC., d/b/a
LENDINGTREE LOANS, a California
Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA / SANTA ANA

| | |
|---|---|
| CLARENCE E. BOSCHMA, SHIRLEY C. BOSCHMA, and SHARON ROBISON on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HOME LOAN CENTER, INC., dba LENDINGTREE LOANS, a California Corporation; and DOES 1 through 100, inclusive,<br><br>Defendant. | Case No. SACV09-00914 AHS (RNBx)<br><br>**DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION TO REMAND TO STATE COURT**<br><br>Date:          September 28, 2009<br>Time:          10 a.m.<br>Judge:        Hon. Alicemarie H. Stotler<br>Courtroom:  10A |

**<u>REQUEST FOR JUDICIAL NOTICE</u>**

Pursuant to Rule 201 of the Federal Rules of Evidence, defendant Home Loan Center, Inc., d/b/a Lendingtree Loans ("HLC") respectfully requests that the Court take judicial notice of:

1.      Plaintiffs' Fourth Amended Complaint (Docket Entry 78) in the matter entitled <u>Boschma et al. v. Home Loan Center, Inc. dba LendingTree Loans</u>, bearing case number SACV07-00613 AHS (RNBx) (the "Previous Federal Action").  A true and correct copy of the Fourth Amended Complaint is attached hereto as Exhibit 1.

2.      The Reporter's Transcript of Proceedings for the Hearing on Motions on March 23, 2009 in the matter of <u>Carroll, et al. v. Homecomings Financial, LLC, et al.</u>, CV 07-3775-AHS (FMOx), a true and correct excerpt of which is attached hereto as Exhibit 2.

3.      This Court's Minute Order and the incorporated Tentative Ruling re Defendants' Motion to Dismiss Second Amended Complaint in the matter of <u>Carroll et al. v. Homecomings Financial, LLC et al.</u>, CV 07-3775-AHS (FMOx), dated March 23, 2007 (Docket Entry 93), a true and correct copy of which is attached hereto as Exhibit 3.

September 14, 2009                SHEPPARD MULLIN RICHTER & HAMPTON LLP


By      _____
                    */s/ Jonathan P. Hersey*
                  JONATHAN P. HERSEY
                  Attorneys for Defendant
              HOME LOAN CENTER, INC., d/b/a
                  LENDINGTREE LOANS

# EXHIBIT 1

**ARBOGAST & BERNS LLP**
David M. Arbogast (SBN 167571)
darbogast@law111.com
Jeffrey K. Berns, Esq. (SBN 131351)
jberns@law111.com
19510 Ventura Boulevard, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000
Fax:    (818) 654-5988

**WILLIAMS CUKER & BEREZOFSKY**
Mark R. Cuker (*Pro Hac Vice* App. Pending)
mcuker@wcblegal.com
Michael J. Quirk (*Pro Hac Vice* App. Pending)
Mquirk@wcblegal.com
1617 J.F.K. Boulevard, Suite 800
Philadelphia, PA 19103-1819
Phone: (215) 557-0099
Fax:    (215) 557-0673

Attorneys for Plaintiff and all others similarly situated.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| CLARENCE E. BOSCHMA, SHIRLEY C. BOSCHMA, and SHARON ROBISON, on behalf of themselves and others similarly situated,<br><br>         Plaintiffs,<br><br>      v.<br><br>HOME LOAN CENTER, INC. d/b/a LENDINGTREE LOANS, a California Corporation; and DOES 1 through 200 inclusive,<br><br>         Defendants. | **CASE NO. 8:07-cv-00613-AHS (RNBx)**<br><br>**FOURTH AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**(1)  Fraudulent Omissions;**<br><br>**(2)  Violation of Bus. & Prof. Code §17200,** *et seq.* **– "Unlawful," "Unfair" and "Fraudulent" Business Practices;**<br><br>**(3)  Breach of Contract; and**<br><br>**(4)  Tortious Breach of the Covenant of Good Faith and Fair Dealing.**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

1    Plaintiffs, CLARENCE E. BOSCHMA, SHIRLEY C. BOSCHMA, and SHARON

2    ROBINSON, individually, and on behalf of all others similarly situated, allege as

3    follows:

4

5    **I.**

6    **INTRODUCTION**

7    1.    This is an action pursuant to California's Unfair Competition Law (the

8    "UCL"), Bus. & Prof. Code §§ 17200, *et seq.,* and other California statutory and common

9    law.  Plaintiffs CLARENCE E. BOSCHMA, SHIRLEY C. BOSCHMA, and SHARON

10    ROBINSON ("Plaintiffs"), individually, and on behalf of all others similarly situated,

11    bring this action against HOME LOAN CENTER, INC. dba LENDINGTREE LOANS,

12    and DOES 1-200 ("Defendant"), based upon Defendant's failure to clearly,

13    unambiguously and conspicuously disclose to Plaintiffs and the Class Members, in

14    Defendant's Option Adjustable Rate Mortgage ("Option ARM") loan documents, and in

15    the accompanying required disclosure statements:   (i) the actual interest rate on the

16    note(s);  (ii) that the initial interest rate disclosed in the Note would last only one month,

17    was discounted, and was substantially lower than the actual interest that Plaintiffs and

18    Class members would be charged on the Notes; (iii) that the amount of monthly payments

19    provided for in the Note and for the first 3-5 years in the Truth in Lending Disclosure

20    Statement ("TILDS") was based  entirely on the "teaser" rate; and (iv) that, after one

21    month, would not be sufficient to even pay the interest being charged, let alone amortize

22    the loan, so that each month the principal balance would increase even if the payments

23    were made as scheduled.  (Hereinafter, (i) through (iv) shall be referred to as "The

24    Material Omissions").

25    / / /

26    / / /

27    / / /

28    / / /

---

1

Fourth Amended Class Action Complaint - 8:07-cv-00613-AHS (RNBx)

## II.

## THE PARTIES

2.      Plaintiffs CLARENCE E. BOSCHMA and SHIRLEY C. BOSCHMA, are, and at all times relevant to this Complaint were, individuals residing in Whittier, California.  On or about February 1, 2006, the Boschmas refinanced their existing home loan and entered into an Option ARM loan agreement with Defendant HOME LOAN CENTER which was secured by Mr. and Mrs. Boschma's residence.  Attached hereto as Exhibit 1 is a true and correct copy of the Note, Truth-in-Lending Disclosure Statement ("TILDS"), and Program Disclosure pertinent to this action.

3.      Plaintiff SHARON ROBINSON is, and at all times relevant to this Complaint was, an individual residing in Visalia, California.  On or about November 22, 2005, Ms. Robinson entered into an Option ARM loan agreement with HOME LOAN CENTER which was secured by Ms. Robinson's residence.  Attached hereto as Exhibit 2 is a true and correct copy of the Note and Truth and Lending Disclosure Statement ("TILDS") and Program Disclosure pertinent to this action.

4.      Defendant HOME LOAN CENTER, INC. dba LENDINGTREE LOANS ("HOME LOAN CENTER") is, and at all relevant times was a California corporation, qualified to do business in California, doing business in this judicial district.  At all relevant times hereto Defendant was engaged in the business of originating and selling the Option ARM loans that are the subject of this Complaint.  Defendant transacts business in Los Angeles County, California and at all relevant times originated and sold Option ARM loans throughout the State of California, including Los Angeles County, California.  Defendant has significant contacts with Los Angeles County, California, and the activities complained of herein occurred, in whole or in part, in Los Angeles County, California.

5.      From its headquarters in Irvine, California, Defendant HOME LOAN CENTER created, approved and sold the Option ARM loans that are the subject of this complaint.  Defendant sold a significant number of the subject Option ARM loans to

2

Fourth Amended Class Action Complaint - 8:07-cv-00613-AHS (RNBx)

California residents.  Plaintiffs are informed and believe and thereon allege that Defendant's employees and/or agents responsible for the creation, approval and sale of the subject Option ARM loans are located in California and/or the decisions concerning approval of the loan forms and/or approval of the Plaintiffs and the Class members loans where authorized and/or approved by Defendant's corporate officers, executives and employees located in California.

6.    At all times mentioned herein, Defendant was engaged in the business of originating, selling, servicing, and/or owning, and/or are or were the assignees of the Option ARM loans that are the subject of this Complaint, throughout the State of California, including in Los Angeles County, California.

7.    Plaintiffs are informed, believe, and thereon allege, that each of the aforementioned Defendant is responsible in some manner, either by act or omission, strict liability, fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise, for the occurrences herein alleged, and that Plaintiffs' injuries, as herein alleged, were proximately caused by the conduct of Defendant.

8.    Plaintiffs are informed, believe, and thereon allege, that at all times material hereto and mentioned herein, each of the Defendants sued herein was the agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining Defendants and was at all times acting within the purpose and scope of such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego, partnership or employment and with the authority, consent, approval and ratification of each remaining Defendant.

9.    Plaintiffs are informed, believe, and thereon allege, that at all times herein mentioned, each Defendant was acting in concert or participation with each other, or were joint participants and collaborators in the acts complained of, and was the agent or employee of the others in doing the acts complained of herein, each and all of them acting within the course and scope of said agency and/or employment by the others, each and all of them acting in concert one with the other and all together.  Each Defendant was the co-

Fourth Amended Class Action Complaint - 8:07-cv-00613-AHS (RNBx)

conspirator, agent, servant, employee, assignee and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the permission and consent of each of the other Defendants.

10.     Plaintiffs are informed, believe, and thereon allege, that DOES 1 through 200, inclusive, are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO underwriters, CDO trustees, hedge funds or other entities that acted as additional lenders, loan originators and/or are assignees to the loans which are the subject of this action.  Plaintiffs will seek leave of Court to replace the fictitious names of these entities with their true names when they are discovered.

11.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 200, inclusive, and each of them, are unknown to Plaintiffs at this time, and Plaintiffs therefore sue said Defendants by such fictitious names.  Plaintiffs allege, on information and belief, that each Doe defendant is responsible for the actions herein alleged.  Plaintiffs will seek leave of Court to amend this Complaint when the names of said DOE defendants have been ascertained.

## III.

## JURISDICTION AND VENUE

12.     Defendant resides in this District within California and is a corporation duly licensed to do business in California.  Defendant also transacted business and committed the acts complained of herein in California.

13.     Venue is proper in California because the acts complained about occurred in California and Plaintiffs and many of the Class Members reside in Los Angeles County, California.

/ / /

/ / /

/ / /

# IV.

## FACTS COMMON TO ALL CAUSES OF ACTION

14.    The Option ARM loans that are the subject of this Complaint are the loans sold by Defendant HOME LOAN CENTER with the following common characteristics: (i) the Monthly Payment Amount stated in the Note is based upon a low "teaser" interest rate which ranges from 1% to 3%; (ii) the payment schedule listed in the Truth-In-Lending Disclosure Statements ("TILDS"), for the first 3-5 years of the Note, is based upon a fully amortizing payment at the "teaser" interest rate; (iii) in fact, the interest rate "adjusts" after only one month to a much higher rate that is the sum of the "index" and the "margin"; and (iv) after the first 3-5 years, the amount of monthly payments increases.

15.    At all times material hereto, the index plus margin was never low enough to be close to the "teaser" rate,  so that, after only one month, the interest accruing on the note more than doubled from an amount that was usually below 2% to an amount of at least 4%, and in some cases up to 8%.  Because of this dramatic interest rate adjustment after only one month, the monthly payment, which was calculated based on a fully amortizing payment at the low teaser rate, was no longer sufficient to even pay the interest that accrued on the note, and the balance owed increases even if the payments are made as scheduled on the Note and the TILDS.  This process is known as negative amortization, and Defendant knew it was certain to occur because of the large spread between the teaser rate and the combined index and margin.

16.    Because of the way Defendant structured these Option ARM loans, it was certain that, as payments were made each month, each Class Member would owe more money than he or she did at the start of the loan, and have less time to pay it back.  To make matters worse, this "deferred interest" was added to the principal balance and, in turn accrued more interest – in effect using compound interest to increase the balance owed by each borrower.

/ / /

---

Fourth Amended Class Action Complaint - 8:07-cv-00613-AHS (RNBx)

17.    Although the Defendant knew that negative amortization was certain to occur, it never disclosed this to Class Members, who financed their homes and entered into these loans without ever receiving this material information.

18.    The two most important pieces of information in any mortgage loan are the interest rate and the amount of the monthly payments.  On the Defendant's Option ARM loans, the disclosures of both pieces of this information were misleading and omitted material facts.  Defendant disclosed a teaser interest rate, but they did not disclose that this rate would sharply increase after only one month.  Defendant disclosed a low monthly payment for the first 3-5 years of the loan, which was based on the teaser rate, but this did not reflect the actual amount of interest being charged or the amount Plaintiffs and Class Members actually owed each month.

19.    Plaintiffs and Class Members were not informed of the sharp increase in the interest rate, and the fact that their monthly payments were not enough to pay the interest accruing on the loan, until they had made at least several payments following the closing of the loan, at which time they would receive a statement showing that the principal balance had increased with each month that had passed since the loan closed, despite the fact that the borrower had made all payments as scheduled.

20.    By the time Plaintiffs and Class Members could figure out this material information by seeing how their loans really worked, they were "locked" into the loan by a draconian prepayment penalty consisting of a prepayment charge equal to the interest that would accrue during a six-month period of the amount prepaid (if the prepayment amount was greater than 20% of the original principal amount stated in the Note), which was calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment for a prepayment occurring during the first two to three years of the loan.  This draconian provision was designed by Defendant to deter anyone from refinancing the loan during the applicable time period.

21.    Before Plaintiffs and Class Members committed themselves to these Option ARM loans, Defendant never told them the amount by which their loan balances would

Fourth Amended Class Action Complaint - 8:07-cv-00613-AHS (RNBx)

increase over either the first two or three years of the loan, even though Defendant actually performed this calculation internally.  This increase in the loan balance is material information to any consumer entering into these loans, because it effectively strips them of the equity in their homes, while also greatly impairing their ability to refinance these loans once they recast to substantially higher monthly payments.

22.    Thus, the loans were structured so that once Plaintiffs and Class Members could figure out that their loans were negatively amortizing, they could only get out of the loans only by incurring a substantial prepayment penalty, or waiting two to three years, in which case they would have to refinance a substantially larger principal amount.

23.    Each subject Option ARM loan has so-called payment caps, which provide that, even after the monthly payment increases, it will not increase by more than 7.5% per year.  These payment caps are, however, subject to an overall cap on principal of 110% of the original loan amount.  Once the loan principal reaches this 110% cap, the 7.5% limitation on payment increases no longer applies, and the payment generally will increase by far more than this amount.  This built-in "payment shock" is more than many Class Members can afford and was designed to put them at  risk of losing their homes to foreclosure.

24.    However, the most that Defendant's loan documents said about negative amortization was that it "may" occur.  This was ambiguous, misleading and deceptive, because it implies that negative amortization was subject to some future contingency, such as an increase in the index on which the adjustable rate was purportedly based, when, in fact, it was *guaranteed* to occur after only one month, even if the index stayed the same or went down.

25.    The failure of Defendant to disclose this material information in the loan documents violated TILA, state consumer protection statutes, and common law, as more fully set forth below.

26.    Defendant's sharp increase in the interest rate after only one month, which guaranteed negative amortization, also violated the terms of Defendant's own contract

1   with Plaintiffs and Class Members, and also breached the covenant of good faith and fair

2   dealing.

3       27.    The loan characteristics described above were true of the named Plaintiffs'

4   loans.  These were also the common characteristics of the standardized loan forms used

5   by Defendant during the liability period.  It is these loan forms that are the subject of this

6   Complaint.

7

8   **V.**

9   **CLASS ACTION ALLEGATIONS**

10      28.    Plaintiffs bring this action on behalf of themselves, and on behalf of all

11  others similarly situated.  The Class Plaintiffs seek to represent is defined as follows:

12

13          All California residents who, within the four-year period

14          preceding the filing of Plaintiffs' original complaint through the

15          date that notice is mailed to potential Class members, obtained a

16          HOME LOAN CENTER, INC. dba LENDINGTREE LOANS

17          Option ARM loan on their home located in the State of

18          California.  Excluded from the California Class are Defendant's

19          employees, officers, directors, agents, representatives, and their

20          family members, as well as the Court and its officers,

21          employees, and relatives.

22

23      Plaintiffs reserve the right to amend or otherwise alter the class definitions

24  presented to the Court at the appropriate time, or to propose or eliminate sub-Classes in

25  response to facts learned through discovery or legal arguments advanced by Defendant or

26  otherwise.

27      29.    <u>Numerosity</u>:  The Class is so numerous that the individual joinder of all

28  members thereof is impracticable under the circumstances of this case.  While the exact

8

Fourth Amended Class Action Complaint - 8:07-cv-00613-AHS (RNBx)

number of class members is unknown at this time, Plaintiffs are informed and believe that the entire Class consist of approximately tens of thousands of individuals residing in California.

30.    <u>Commonality</u>:  Common questions of law or fact are shared by class members.  This action is suitable for class treatment, because these common questions of fact and law predominate over any individual issues.  Such common questions include, but are not limited to, the following questions including questions related to the subject HOMECOMINGS Option ARM loans:

(a)    Whether Defendant engaged in unlawful, unfair and/or fraudulent business acts or practices likely to deceive Plaintiffs and Class Members before and during the loan application process;

(b)    Whether Defendant concealed, omitted and/or otherwise failed to disclose information they were mandated to disclose under state consumer protection statutes, and/or California common law;

(c)    Whether Defendant failed to disclose to Plaintiffs and Class Members, before they entered into the subject Option ARM loans, that negative amortization was certain to occur;

(d)    Whether Defendant's failure to apply Plaintiffs' and Class Members' payments to principal as promised in the form Notes constitutes a breach of contract, including a tortious breach of the covenant of good faith and fair dealing;

(e)    Whether Defendant's conduct in immediately raising the interest rate on the loans so that no payments were made to the principal balance breached the loan contract and/or constitutes a contractual or tortious breach of the covenant of good faith and fair dealing;

(f)    Whether the terms and conditions of The Loan Documents are unconscionable;

///

(g)    Whether The Loan Documents are non-negotiable instruments;

(h)    Whether Defendant's failures to disclose material information, as alleged herein, are apparent on the face of The Loan Documents;

(i)    Whether Plaintiffs and Class Members are entitled to damages;

(j)    Whether Plaintiffs and Class Members are entitled to punitive damages; and

(k)    Whether Defendant's affirmative defenses, if any, raise common issues of fact or law as to Plaintiff and Class Members as a whole.

31.    Typicality:  Plaintiffs' claims are typical of the claims of absent Class Members.  Plaintiffs and the other Class members were subjected to the same kind of unlawful conduct and the claims of Plaintiffs and the other Class Members are based on the same legal theories.

32.    Adequacy:  Plaintiffs are adequate representatives of the Class because their interests do not conflict with those of the other members of the Class Plaintiffs seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend on prosecuting this action vigorously.   The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

33.    Ascertainable Class:  The proposed classes are ascertainable in that the members can be identified and located using information contained in Defendant's mortgage lending records.

34.    This case is brought and can be maintained as a class action because:

(a)    Injunctive and/or Declaratory Relief to the Class is Appropriate:  Defendant has acted or refused to act on grounds generally applicable to each class, thereby making final injunctive relief or corresponding declaratory relief with respect to each class as a whole appropriate; and

(b)    Predominant Questions of Law or Fact:  Questions of law or fact common to all Class Members, including those identified above, predominate over

Fourth Amended Class Action Complaint - 8:07-cv-00613-AHS (RNBx)

1   questions affecting only individual Class Members (if any), and a class
2   action is superior to other available methods for the fair and efficient
3   adjudication of the controversy.  Class action treatment will allow a large
4   number of similarly situated consumers to prosecute their common claims in
5   a single forum, simultaneously, efficiently, and without the unnecessary
6   duplication of effort and expense that numerous individual actions would
7   require.  Moreover, absent class treatment of this controversy, the amount of
8   individual Class Members' losses in comparison to the enormous cost of
9   litigation makes it almost certain that few Class Members would ever be able
10  to even seek, let alone obtain, redress for their injuries.

## VI.

## FIRST CAUSE OF ACTION

### Fraudulent Omissions

### (Against All Defendants)

16  35.    Plaintiffs incorporate all preceding paragraphs as though fully set forth
17  herein.

18  36.    Under Truth-in-Lending Act (TILA),, 15 U.S.C. §1601, et seq., Defendant
19  HOME LOAN CENTER had a duty to clearly and conspicuously disclose to Plaintiffs
20  and each Class member before they entered into the subject Option ARM loan: (i) that the
21  payment schedule for the first three to five years was not based upon the APR listed on
22  the Truth in lending Disclosure, (ii) that negative amortization would occur and that the
23  "principle balance *will* increase"; (iii) that the initial interest rate on the note was
24  discounted; and (iv) the applicable annual percentage rate ("APR"); and as follows:
25  / / /
26  / / /
27  / / /
28  / / /

---

11

**A.    Defendant's Duty to Disclose That Negative Amortization Was Certain to Occur.**

37.    12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential home loans, stating as follows:

> 226.19.  Certain residential mortgage and variable-rate transactions. . . .
> (b) Certain variable-rate transactions.  If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier. . . (vii) *Any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover.* (Emphasis added.)

38.    In 1995, and continuing each time new Official Staff Commentary was issued, the Federal Reserve Board ("FRB") made clear that when a loan was a variable rate loan with payment caps, such as those that are the subject of this lawsuit, the disclosure requires a definitive statement about negative amortization:

> 12 CFR Part 226
> [Regulation Z; Docket No. R-0863]
> Monday, April 3, 1995
> AGENCY: Board of Governors of the Federal Reserve System.
> ACTION: Final rule; official staff interpretation.
> For the program that gives the borrower an option to cap monthly payments, the creditor must fully disclose the rules relating to the payment cap option, including the effects of exercising it (such as **negative amortization occurs** and that the principal balance **will increase**)… (Found at 12 C.F.R. § 226.19)

39.    Defendant HOME LOAN CENTER was aware, or should have been aware, that this loan product had a variable rate with payment caps and that The Loan Documents omitted The Material Facts, including that negative amortization was a certainty.  On information and belief, Defendant was aware of the guaranteed negative amortization, because they accrued the negative amortization as income for accounting

Fourth Amended Class Action Complaint - 8:07-cv-00613-AHS (RNBx)

and/or tax purposes.  Defendant was also aware the negative amortization was certain to occur, because, in computing the total finance charge payable over the full life of the loan for purposes of compiling the TILDS, Defendant included the interest on "deferred interest," which would accrue because the scheduled payments were insufficient to pay all interest due on the loan.  The TILDS, however, did not disclose the fact that negative amortization was a certainty, or the amount of the total finance charge that resulted from this negative amortization.

40.     The only places in the Notes that even inferentially reference negative amortization suggest that this is merely a possibility, rather than an absolute certainty. For instance, HOME LOAN CENTER, INC. dba LENDINGTREE LOANS stated in the Notes, at ¶ 3(E), that the borrower's "monthly payment **could** be less than the amount of the interest portion of the monthly payment"(emphasis added), which was a half-truth, because it did not state that the payment schedule provided by HOMECOMINGS would absolutely guarantee that negative amortization was going to occur on these loans.

**B.     Defendant's Duty to Disclose the Interest Rate Underlying the Payment Schedule**.

41.     Additionally, 12 C.F.R. §§ 226.17 and 226.19 require the lender to make disclosures concerning the payments in a clear and conspicuous manner.  A misleading disclosure is as much a violation of TILA as a failure to disclose at all.

42.     The scheduled payment amounts and APR listed in the Note and TILDS for each of the subject loans are unclear because the payment amounts for the first three to five years are not based on the APR listed in the TILDS, but, instead, were based upon an APR listed in the Note that Defendant knew would apply for only thirty (30) days.  At all times relevant, Defendant failed to disclose that, even if Plaintiffs and Class Members made payments according to the payment schedule set forth in the TILDS, they were guaranteed to incur significant losses of equity through negative amortization.  Had Defendant clearly and conspicuously disclosed the payment amount sufficient to cover both principal and interest based upon the index and margin that would be used to

---

Fourth Amended Class Action Complaint - 8:07-cv-00613-AHS (RNBx)

1   calculate the payments after the first month, the payment amounts would have been
2   approximately double the payment amounts listed.

3        43.    Official Staff Commentary to 12 C.F.R. § 226.17(a)(1) states:  "This
4   standard requires that disclosures be in a reasonably understandable form.  For example,
5   while the regulation requires no mathematical progression or format, the disclosures must
6   be presented in a way that does not obscure the relationship of the terms to each other…"

7        44.    At all times relevant, The Loan Documents of Defendant violated 12 C.F.R.
8   § 226.17(a)(1) in that the payments for up to the first five years of the loans bear no
9   relationship to the APR listed in the TILDS.  Therefore, the form of disclosure used by
10  Defendant obscured the relationship between the APR listed in the Note(s) and the APR
11  listed in the TILDS and the monthly payments listed in the payment schedule.

12       **C.    Defendant's Duty to Disclose That the Initial Interest Rate Was**
13            **Discounted**.

14       45.    Next, 12 C.F.R. § 226.17(c)(1) requires that "[t]he disclosures shall reflect
15  the terms of the legal obligation between the parties."  Official binding staff commentary
16  on 12 C.F.R. § 226.17(c)(1) requires that "[t]he disclosures shall reflect the credit terms
17  to which the parties are legally bound as of the outset of the transaction.  In the case of
18  disclosures required under § 226.20(c), the disclosures shall reflect the credit terms to
19  which the parties are legally bound when the disclosures are provided."  The official
20  binding staff commentary further states, at 12 C.F.R. § 226.17(c)(1)(2), that "[t]he legal
21  obligation normally is presumed to be contained in the note or contract that evidences the
22  agreement."  Official staff commentary to 12 C.F.R. § 226.17(c)(1) states that, "[i]f a loan
23  contains a rate or payment cap that would prevent the initial rate or payment, at the time
24  of the first adjustment, from changing to the rate determined by the index or formula at
25  consummation, the effect of that rate or payment cap should be reflected in the
26  disclosures."

27       46.    At all times relevant during the liability period, The Loan Documents
28  violated 12 C.F.R. § 226.17(c) in that the Notes and TILDS did not disclose that the

liability that Plaintiffs and Class Members were incurring was substantially greater than the amount of their scheduled payments.  Further, Defendant failed to disclose to Plaintiffs and Class Members that the initial interest rate was discounted, and that it was absolutely certain to substantially increase after only one month, even when the index did not rise.  To the extent that Defendant did in any way provide a disclosure stating that the initial payment was not based on the index, they failed to do so in a manner that was clear and conspicuous, and that did not obscure its importance, or that was designed to be reasonably understood by the ordinary consumer.  Rather than disclose that the interest rate would increase after only one month, The Loan Documents stated that the initial payment was based on a "yearly rate" of 1-3%.  The Loan Documents did not clearly and unambiguously disclose that this initial rate was discounted, and would only last for one month.

### D.    Defendant's Duty to Disclose that the Payment Schedule Listed in the TILDS is Not Based on the Applicable Annual Percentage Rate.

47.    Defendant HOME LOAN CENTER also failed to disclose to Plaintiffs and Class Members before they entered into the subject Option ARM loans all of the ways by which the interest rate applicable to the subject loans could increase, in violation of TILA.

48.    These omissions violated 15 U.S.C. § 1638(a)(4), which requires lenders to disclose only one annual percentage rate ("APR"), and not an additional APR that is only applicable for the first 30 days of a loan.

49.    These omissions also violated Federal Reserve Board's ("FRB") Commentary to 12 C.F.R § 226.(17)(C)-6 requires that the APR must "reflect a composite annual percentage rate based on the initial rate for as long as it is charged and, for the remainder of the term, the rate that would have been applied using the index or formula at the time of consummation."

50.    These omissions also violated 15 U.S.C. § 1638(a)(8) and 12 C.F.R § 226.18(e), which requires lenders to provide a descriptive explanation of the APR, which

Fourth Amended Class Action Complaint - 8:07-cv-00613-AHS (RNBx)

is defined as the cost of credit expressed as a yearly rate.

51.     These omissions also violated 12 C.F.R. § 226.17 (and the commentary thereto) and 12 C.F.R. § 226.19, which, together, require lenders to make disclosures concerning the APR in a clear and conspicuous manner; and a misleading disclosure is as much a violation of TILA as a failure to disclose at all.

52.     At all times relevant during the liability period, Defendant provided Plaintiffs and Class Members with Notes that state:   "I will pay interest at a yearly rate of [1.000% - 3.000%]."  However, in the TILDS, the box entitled "ANNUAL PERCENTAGE  RATE" describes the APR as "[t]he cost of your credit as a yearly rate" and then lists a much higher APR than the APR listed in the Notes.  For instance, in the case of Plaintiffs CLARENCE and SHIRLEY BOSCHMA, the TILDS lists an APR of "7.189."   And for Plaintiff SHARON ROBINSON, the TILDS lists an APR of "6.811."

53.     Thus, the listed APR would actually conflict with the APR stated in the TILDS.  For instance, in the case of Plaintiffs CLARENCE and SHIRLEY BOSCHMA, the "1.250%" APR stated in the Note contradicts the "7.189" APR that Defendant stated in the TILDS.  Similarly, for Plaintiff SHARON ROBINSON, the "1.250%" contradicts the "6.811" APR that Defendant stated in the TILDS.

54.     At all times relevant during the liability period, Defendant failed to clearly and conspicuously explain in the Note or TILDS that the low APR (the same APR upon which Defendant based the written payment schedule provided to Plaintiffs) was offered only for the first thirty (30) days of the loan.

55.     Defendant also failed to disclose to Plaintiffs and Class Members that the APR listed in the TILDS was not the APR used to determine the first five years of payments listed in the very same TILDS, and that the listed payment amounts for the first five years of the loan were based on the interest rate stated in the Note, an interest rate which was correct for no more than thirty days.

56.     The FRB's commentary to 12 C.F.R § 226.17(C)-6 requires that the APR must "reflect a composite annual percentage rate based on the initial rate for as long as it

is charged and, for the remainder of the term, the rate that would have been applied using the index or formula at the time of consummation."  Additionally,

> in a variable-rate transaction with a...discounted or premium rate, disclosures should not be based solely on the initial terms. In those transactions, the disclosed annual percentage rate should be a composite rate based on the rate in effect during the initial period and the rate that is the basis of the variable-rate feature for the remainder of the term.

57.    The reason for this requirement is clear.  Consumers cannot make an informed decision when they cannot compare the cost of credit to other proposals.  It therefore was incumbent upon Defendant to disclose to Plaintiffs and the Class members before they entered into the subject Option ARM loans the composite interest rate, and the amount of payments based thereon, so that these borrowers could understand exactly what they would be paying for the loan.

58.    Additionally, under California common law, Defendant HOME LOAN CENTER further had a duty to disclose to Plaintiffs, and each Class Member that: (i) the promised low interest rate was only available for thirty days if at all; (ii) the payment rate for the first three to five years provided to Plaintiffs and Class Members on the TILDS was insufficient to pay both principal and interest; (iii) negative amortization was absolutely certain to occur if Plaintiffs and Class Members made payments according to the payment schedule provided by Defendant; and that (iv) loss of equity and/or loss of Plaintiffs' and Class Members' residence was certain to occur if Plaintiffs and Class Members made payments according to the payment schedule provided by Defendant.

59.    Each of The Loan Documents at issue states:  "I will pay *principal and interest* by making a payment every month" (emphasis added).  The Loan Documents then state under "BORROWERS FAILURE TO PAY AS REQUIRED," that "[t]he amount of the charge will be 5.0000% [or other similar percentage] of *my overdue payment of Principal and Interest*" (emphasis added).  These partial representations failed to disclose that the payment amounts prescribed in The Loan Documents , were certain to result in negative amortization.

---

17

60.     The Loan Documents further state that, at ¶3E "my monthly payment *could be less* than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal" (emphasis added).  However, The Loan Documents fail to disclose the material fact that the payment schedules provided by Defendant in the TILDS could not possibly cover the amount of interest due under *any* conceivable index rate plus the margin after the first 30 days.

61.     The Notes list an interest rate and a payment amount based on that initial interest rate.  However, the TILDS Defendant gave to Plaintiffs and Class Members before they entered into the subject loans included a schedule of payments (including that initial payment rate) but disclose a different, much higher interest rate.  By stating the low teaser rate and associated monthly payment in the Note, and stating the much higher interest rate in the TILDS accompanied by a payment schedule based on the low teaser rate, Defendant failed to disclose the actual interest costs that borrowers were going to accrue on their loans.

62.     Defendant purposefully and intentionally devised this Option ARM loan scheme of stating only partially true facts and omitting important material information in order to deceive consumers into believing that these loans would provide a low-interest rate for the first two (2) to five (5) years of the Note and that, if they made their payments according to the payment schedule provided by Defendant, this would be sufficient to pay both principal and interest.

63.     The omitted information, as alleged herein, was objectively material to both the interest rate and the amount of payments, which are the two most important features of any mortgage loan to borrowers.

64.     As a direct and proximate result of Defendant's failures to disclose and omission of material facts, as alleged herein, Plaintiffs and Class Members have suffered damages, which include, but are not limited to, the loss of equity Plaintiffs and each Class Member had in their homes prior to entering these loans.

/ / /

---

Fourth Amended Class Action Complaint - 8:07-cv-00613-AHS (RNBx)

65.     The wrongful conduct of Defendant, as alleged herein, was willful, oppressive, immoral, unethical, unscrupulous, substantially injurious, malicious and in conscious disregard for the well being of Plaintiffs and Class Members.  Accordingly, Plaintiffs and Class Members are entitled to an award of punitive damages against Defendant in an amount to deter them from similar conduct in the future.

66.     WHEREFORE, Plaintiffs and Class Members are entitled to all legal and equitable remedies provided by law, including but not limited to actual damages, exemplary damages, prejudgment interest and costs.

## VIII.

### **THIRD CAUSE OF ACTION**

**Violation of California's Unfair Competition Law,**

**Bus. & Prof. Code §§ 17200 *et. seq.***

**"Unlawful," "Unfair" and "Fraudulent" Business Acts or Practices**

**(Against All Defendants)**

67.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

68.     Plaintiffs bring this cause of action on behalf of themselves, on behalf of the Class Members, and in their capacity as private attorney generals against all Defendants for their unlawful, unfair, fraudulent and/or deceptive business acts and/or practices pursuant to California Business & Professions Code section 17200 *et seq.* ("UCL") which prohibits all unlawful, unfair and/or fraudulent business acts and/or practices.

69.     Plaintiffs assert these claims as they are representatives of an aggrieved group and as  private attorneys general on behalf of the general public and other persons who have expended funds that the Defendant should be required to pay or reimburse under the restitutionary remedy provided by California Business & Professions Code §§ 17200, *et seq.*

/ / /

70.    Plaintiffs and Class Members were consumers who applied for mortgage loans through Defendant.  During the loan application process, in each case, Defendant uniformly failed to disclose and omitted material information that was known only to themselves and that could not reasonably have been discovered by Plaintiffs and Class Members as set forth in the preceding counts.

71.    Based on The Material Omissions and Defendant's' other partially true statements and failures to disclose as alleged herein, Plaintiffs and Class Members agreed to finance their primary residence through Defendant's Option ARM loan, and have been actually harmed.

72.    As a direct and proximate result of The Loan Documents they designed, Defendant intended that Plaintiffs and Class Members would be misled into believing that, if they made payments based on the payment schedule provided to them by Defendant before they entered into the subject loan, the principal balance would be reduced with each payment when it actually increased with each payment.

73.    By engaging in the above-described acts and practices, Defendant has committed one or more acts of unfair competition within the meaning of Business & Professions Code §§ 17200, et seq.

74.    Defendant's misconduct, as alleged herein, gave them an unfair competitive advantage over their competitors.

75.    <u>Unlawful</u>:  The unlawful acts and practices of Defendant alleged above constitutes unlawful business acts and/or practices within the meaning of California Business & Professions Code §§ 17200, et seq.  Defendant's unlawful business acts and/or practice as alleged herein have violated numerous laws and/or regulations - federal and/or state, statutory and/or common law - and said predicate acts are therefore per se violations of §17200, et seq.  These predicate unlawful business acts and/or practices include, but are not limited to, the following:  Truth-in-Lending Act Laws ("TILA"), 15 U.S.C. §1601, et seq. as alleged in § VI above;  Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 41-58, California Civil Code §§ 1572 (Actual Fraud - Omissions),

Fourth Amended Class Action Complaint - 8:07-cv-00613-AHS (RNBx)

1  1573 (Constructive Fraud by Omission), and 1710 (Deceit).

2      76.   <u>Unfair</u>: Defendant's omissions and misconduct as alleged in this action

3  constitutes negligence and other tortious conduct and this misconduct gave Defendant an

4  unfair competitive advantage over their competitors.

5      77.   Defendant's misconduct as alleged in The Material Omissions and otherwise

6  herein caused Plaintiffs and Class Members substantial injury by a resulting loss of

7  equity in their homes, because Defendant failed to disclose and/or omitted material

8  information that the Option ARM loans were: 1) certain to result in negative amortization

9  if the disclosed payment schedule was followed; 2) there were absolutely no

10  countervailing benefit to consumers or to competition that could possibly outweigh this

11  substantial injury; and 3) this injury could not have been avoided or even discovered by

12  the consumers, because it resulted from Defendant's failure to disclose and/or omission

13  of material information that only the Defendant knew or could have known.

14      78.   Defendant's misconduct as alleged herein gave Defendant an unfair

15  competitive advantage over their competitors.

16      79.   <u>Fraudulent</u>: Through their omissions and/or acts, practices and non-

17  disclosures as alleged herein, Defendant designed The Loan Documents in order to

18  deceive the public through the Material Omissions leading to consumer confusion,

19  including, but not limited to the fact that, for the first two to five years, the loans were

20  negatively amortizing loans. Said omissions, acts, practices and non-disclosures as

21  alleged herein therefore constitute fraudulent business acts and/or practices within the

22  meaning of California Business & Professions Code §§ 17200, *et seq.*

23      80.   Defendant's conduct, as fully described above, was designed to and was

24  therefore likely to deceive members of the consuming public, and at all times,

25  Defendant's failures to disclose and their omission of material facts have been and

26  continue to be unfair, fraudulent, untrue and/or deceptive.

27      81.   The harm to Plaintiffs, members of the general public and Class Members

28  outweighs the utility of Defendant's policies, acts and/or practices, and consequently

Defendant's conduct herein constitutes an unlawful business act or practice within the meaning of California Business & Professions Code §§ 17200, *et seq.*

82.    As a direct and proximate result of the aforementioned omissions, acts and practices, Defendant received monies and continues to hold the monies expended by Plaintiffs and Class Members similarly situated who purchased the ARM loans as described herein.

83.    The unfair, deceptive and/or fraudulent business practices of Defendant, as fully described herein, present a continuing threat to members of the public to be mislead and/or deceived by Defendant's loan forms at issue, as described herein.  Plaintiffs and other members of the general public have no other remedy of law that will prevent Defendant's misconduct as alleged herein from occurring and/or reoccurring in the future.

84.    As a direct and proximate result of Defendant's unfair and/or fraudulent conduct alleged herein, Plaintiffs and Class Members have lost hundreds of thousands if not millions of dollars of equity in their homes.  Plaintiff and Class members are direct victims of the Defendant's unlawful conduct, and each has suffered injury in fact, and has lost money or property as a result of Defendant's unfair competition.

85.    WHEREFORE, Plaintiffs and Class Members are entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendant because of the unfair, fraudulent, and deceptive acts and/or practices, attorney's fees and costs, declaratory relief, and a permanent injunction enjoining Defendant from the unfair, fraudulent and deceitful activity alleged herein.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

22

Fourth Amended Class Action Complaint - 8:07-cv-00613-AHS (RNBx)

# IX.

## FOURTH CAUSE OF ACTION

### Breach of Contract

### (Against All Defendants)

86.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

87.    Plaintiffs and Class Members entered into a written home loan agreement – the contract or Note – with Defendant which describe terms and respective obligations applicable to the parties herein.

88.    Defendant drafted the Notes and did not allow Plaintiffs or Class Members any opportunity to make changes to the Notes and, due to Defendant's superior bargaining position, the Notes were offered on a "take it or leave it" basis.  As such, the Notes and the prepayment penalty riders to the Notes are contracts of adhesion.

89.    Each Note and TILDS expressly and impliedly required Defendant to apply Plaintiffs' and Class Members monthly payments to both principal and interest on a fully-amortized basis (*i.e.*, so that negative amortization would not occur) as long as those payments were in the amount reflecting in the Note and the TILDS.  The Notes and the TILDS identified the monthly payments Plaintiffs and the Class Members were required to make.  Defendant was not permitted to impose or charge any different payment amount.  As alleged herein, the Notes expressly state and/or imply that those payments would be applied to pay both principal and interest on the loan.

90.    Once Plaintiffs and Class Members entered into these loans, Defendant switched the interest rate charged on the loans to a much higher rate than the one they promised to Plaintiffs and Class Members as a "yearly rate."  They also demanded payments in amounts that exceeded those permitted by the Notes.

91.    As a result of Defendant's breach of the agreement, Plaintiffs and Class Members have suffered harm.  Plaintiffs and Class Members have incurred and will continue to incur additional interest charges on the principal loan balance and surplus

1    interest added to Plaintiffs' and Class Members' principal loan balance.  Furthermore,

2    Defendant's breach has placed Plaintiffs and Class Members in danger of losing their

3    homes through foreclosure, as Defendant has caused Plaintiffs' and Class Members'

4    principal loan balances to increase and limited these consumers' ability to make their

5    future house payments or obtain alternative home loan financing.

6         92.    At all times relevant, there existed a gross inequality of bargaining power

7    between the parties to The Loan Documents.  At all times relevant, Defendant

8    unreasonably and unconscionably exploited their superior bargaining position and foisted

9    upon Plaintiffs and Class Members extremely harsh, one-sided provisions in the contract,

10   which Plaintiffs and Class Members were not made aware of and could not reasonably

11   have comprehended  (*e.g*., Defendant's fraud and failures to disclose as alleged herein),

12   and which attempt to severely limit Defendant's obligations under the contracts at the

13   expense of Plaintiffs and Class Members, as alleged herein.

14        93.    WHEREFORE, Plaintiffs and Class Members are entitled to declaratory

15   relief, compensatory damages proximately caused by Defendant's breach of contract as

16   alleged herein, pre-judgment interest, costs of suit and other relief as the Court deems just

17   and proper.

18

19                                     **X.**

20                       **FIFTH CAUSE OF ACTION**

21    **Tortuous Breach of Implied Covenant of Good Faith and Fair Dealing**

22                        **(Against All Defendants)**

23        94.    Plaintiffs incorporate all preceding paragraphs as though fully set forth

24   herein.

25        95.    As a direct and proximate result of the omissions and failures to disclose as

26   alleged herein, Plaintiffs and Class members reasonably expected that their payments for

27   the first two (2) to five (5) years of Defendant's loans would lower the balance due under

28   the loans, thereby building up their equity in their homes.

---

Fourth Amended Class Action Complaint - 8:07-cv-00613-AHS (RNBx)

96.    At all times relevant during the liability period, Defendant consciously and deliberately failed to apply Plaintiffs' and Class Members' payments in accordance with the reasonable expectations of Plaintiffs and the Class Members and uniformly misapplied the payments therein, which unfairly frustrated the agreed common purposes and disappointed the reasonable expectations of Plaintiffs and Class Members.

97.    Defendant uniformly and unfairly interfered with Plaintiffs' and Class Members' rights to receive the principal benefit of the contract, *i.e.*, ownership of their homes.  Defendant's loans have stripped away a substantial portion of the equity Plaintiffs and Class Members had in their homes and, in some cases, have actually resulted in the complete loss of their homes through foreclosure.

98.    Upon information and belief and at all times relevant, Defendant possessed full knowledge and information concerning the above facts about the ARM loans, and otherwise sold these ARM loans throughout the State of California, including Los Angeles County.

99.    Defendant's placing of their corporate and/or individual profits over the rights of others is particularly vile, base, contemptible, and wretched and said acts and/or omissions were performed on the part of officers, directors, and/or managing agents of each corporate defendant and/or taken with the advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified said acts and/or omissions.  Defendant thereby acted with malice and complete indifference to and/or conscious disregard for the rights and safety of others, including Plaintiffs and the general public.

100.   At all times relevant, Defendant's conduct, as alleged herein, was malicious, oppressive, and/or fraudulent.

/ / /

/ / /

/ / /

/ / /

101.   As a result of Defendant's conduct, Plaintiffs and Class Members have suffered harm.  Plaintiffs and Class Members have incurred significantly increased debt that is secured by their homes.  Plaintiffs and Class members also have incurred and will continue to incur additional interest charges on the principal loan balance and surplus interest that is added to their principal loan balances.  Furthermore, Defendant's breach has caused and/or otherwise placed Plaintiffs and Class Members in danger of losing their homes through foreclosure and limited these consumers' ability to  obtain alternative home loan financing.

102.   WHEREFORE, Plaintiffs and Class Members are entitled to declaratory relief, all damages proximately caused by Defendant's breach of the implied covenant of good faith and fair dealing as alleged herein, punitive damages, pre-judgment interest, costs of suit and other relief as the Court deems just and proper.

# XI.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and all Class Members pray for judgment against each Defendant, jointly and severally, as follows:

A.   An order certifying this case as a class action and appointing Plaintiffs and their counsel to represent each Class and sub-class;

B.   For actual damages according to proof;

C.   For compensatory damages as permitted by law;

D.   For consequential damages as permitted by law;

E.   For punitive damages as permitted by law;

F.   For equitable relief, including restitution;

G.   For restitutionary disgorgement of all profits Defendant obtained as a result of their unfair competition;

H.   For interest as permitted by law;

I.   For Declaratory Relief;

Fourth Amended Class Action Complaint - 8:07-cv-00613-AHS (RNBx)

1    J.    For reasonable attorneys' fees and costs; and

2    K.    For such other relief as is just and proper.

3    DATED: April 20, 2009                    ARBOGAST & BERNS LLP

4

5                                             By: _____
                                              David M. Arbogast, Esq.
6                                             Jeffrey K. Berns, Esq.
                                              19510 Ventura Boulevard, Suite 200
7                                             Tarzana, California 91356
                                              Phone: (818) 961-2000; Fax: (818) 654-5988

8                                             Mark R. Cuker (*Pro Hac Vice* App. Pending)
                                              Michael J. Quirk (*Pro Hac Vice* App. Pending)
9                                             **WILLIAMS CUKER & BEREZOFSKY**
                                              1617 J.F.K. Boulevard, Suite 800
10                                            Philadelphia, PA 19103-1819
                                              Phone: (215) 557-0099; Fax: (215) 557-0673
11
                                              Attorneys for Plaintiffs and all others Similarly
12                                            Situated

13                          **DEMAND FOR JURY TRIAL**

14        Plaintiffs hereby demand a trial by jury to the full extent permitted by law.

15

16   DATED: April 20, 2009                    ARBOGAST & BERNS LLP

17                                            By: _____
18                                            David M. Arbogast, Esq.
                                              Jeffrey K. Berns, Esq.
19                                            19510 Ventura Boulevard, Suite 200
                                              Tarzana, California 91356
20                                            Phone: (818) 961-2000; Fax: (818) 654-5988

21                                            Mark R. Cuker (*Pro Hac Vice* App. Pending)
                                              Michael J. Quirk (*Pro Hac Vice* App. Pending)
22                                            **WILLIAMS CUKER & BEREZOFSKY**
                                              1617 J.F.K. Boulevard, Suite 800
23                                            Philadelphia, PA 19103-1819
                                              Phone: (215) 557-0099; Fax: (215) 557-0673
24
                                              Attorneys for Plaintiffs and all others Similarly
25                                            Situated.

26

27

28

                                        27
   Fourth Amended Class Action Complaint - 8:07-cv-00613-AHS (RNBx)

# EXHIBIT NO. 1

**EXHIBIT 1**

# ADJUSTABLE RATE NOTE
### (12 MAT Payment and Rate Caps)

MIN: 1001968-0002107576-2

Loan # 2107576

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.**

FEBRUARY 1, 2006                IRVINE                      ,CALIFORNIA
[Date]                            [City]                        [State]

14757 GLENN DRIVE, WHITTIER, CALIFORNIA 90604
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 250,000.00          (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is HOME LOAN CENTER, INC., dba LENDINGTREE LOANS, A CALIFORNIA CORPORATION
                                                                                          .
I will make all payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

### (A) Interest Rate
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of          1.250 %.  The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### (B) Interest Rate Change Dates
The interest rate I will pay may change on the first day of APRIL 1              , 2006    , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

### (C) Interest Rate Limit
My interest rate will never be greater than          9.950 %.

### (D) Index
Beginning with the first Interest Rate Change Date, my Interest Rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the monthly yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rate (H.15)" ("the Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(E) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 500/1000 percentage point(s) ( 3.500 %) to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

**3.    PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on APRIL 1 , 2006 . I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on MARCH 1, 2036 , I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 163 TECHNOLOGY DRIVE, IRVINE, CALIFORNIA 92618 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 833.13 . This amount may change.

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the 1st day of APRIL , 2007 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater or less than the amount of my last monthly payment due before the Payment Change Date.

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to principal will be the rate required by Section 2 above.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to one hundred ONE HUNDRED TEN AND 000/1000 percent ( 110.000 %) of the principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

34

**(G) Required Full Payment**

On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

**4.    NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY** ** See attached Prepayment Note Addendum.

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment before applying my prepayment to reduce the principal amount of this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to these changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of my monthly payment by the end of  15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

1b300333.inm

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ _____(Seal)            _____(Seal)
CLARENCE E. BOSCHMA                -Borrower    SHIRLEY C. BOSCHMA                  -Borrower


_____ _____(Seal)            _____(Seal)
                                  -Borrower                                       -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF:
 WITHOUT RECOURSE

HOME LOAN CENTER, INC., dba LENDINGTREE LOANS, A CALIFORNIA CORPORATION

BY: _____

ITS:

FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Loan Number: 2107576                                    Date: FEBRUARY 1, 2006
Creditor: HOME LOAN CENTER, INC., dba LENDINGTREE LOANS
Address: 163 TECHNOLOGY DRIVE, IRVINE, CALIFORNIA 92618

Borrower(s): CLARENCE E. BOSCHMA, SHIRLEY C. BOSCHMA

Address: 14757 GLENN DRIVE, WHITTIER, CALIFORNIA 90604

Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price The total cost of your purchase on credit including your down-payment of $ |
|---|---|---|---|---|
| 7.189 % | $403,945.90 | $246,805.35 | $650,751.25 | $ |

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning | | | Monthly Beginning | | | Monthly Beginning |
| 1 | 833.13 | 04/01/06 | | | | | | |
| 11 | 833.13 | 05/01/06 | | | | | | |
| 12 | 895.61 | 04/01/07 | | | | | | |
| 12 | 962.78 | 04/01/08 | | | | | | |
| 5 | 1,034.99 | 04/01/09 | | | | | | |
| 318 | 1,922.49 | 09/01/09 | | | | | | |
| 1 | 1,926.24 | 03/01/36 | | | | | | |

_____ **DEMAND FEATURE:** This obligation has a demand feature.

__X__ **VARIABLE RATE FEATURE:** Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

**INSURANCE:** The following insurance is required to obtain credit:
    _____ Credit life insurance and credit disability   __X__ Property Insurance   _____ Flood Insurance   _____ Private Mortgage Insurance
    You may obtain property insurance from any insurer that is acceptable to the Lender.
**SECURITY:** You are giving a security interest in: 14757 GLENN DRIVE, WHITTIER, CALIFORNIA 90604
    _____ The goods or property being purchased   __X__ Real property you already own.
**FILING FEES:**   $
**LATE CHARGE:** If payment is more than _____15_____ days late, you will be charged _____5.000_____ % of the payment.
**PREPAYMENT:** If you pay off early, you   * or $5.00 (whichever is greater)
__X__ may   _____ will not   have to pay a penalty.
_____ may   __X__ will not   be entitled to a refund of part of the finance charge.
**ASSUMPTION:** Someone buying your property
_____ may   __X__ may, subject to conditions   _____ may not   assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
__X__ "e" means an estimate   _____ all dates and numerical disclosures except the late payment disclosures are estimates.
    Each of the undersigned acknowledge receipt of a complete copy of this disclosure. The disclosure does not constitute a contract or a commitment to lend.

| Applicant CLARENCE E. BOSCHMA | Date | Applicant SHIRLEY C. BOSCHMA | Date |
|---|---|---|---|
| Applicant | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

** NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

DocMagic eForms 800-649-1362
www.docmagic.com

Regdtd-tsr 1 item

## ADDENDUM TO ADJUSTABLE RATE NOTE
**(Prepayment)**                    Loan #:2107576

THIS ADDENDUM is made this  1st   day of  FEBRUARY 2006    , and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

1.    My right to make a Prepayment under Section 5 is modified by this Addendum. A Prepayment of the entire unpaid principal balance is known as a "Full Prepayment." A Prepayment of only part of the unpaid principal balance is known as a "Partial Prepayment."

2.    Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any Prepayment charge. If within the first    THREE     (  3   ) year(s) I make a Full Prepayment or Partial Prepayment(s) of more than twenty percent (20%) of the original principal amount in any twelve (12) month period, I will pay a Prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid in excess of twenty percent (20%) of the original principal amount.

If I make a Partial Prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month. If I make a Partial Prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

3.    All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

Dated: _____

_____ (Seal)
CLARENCE E. BOSCHMA             -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
SHIRLEY C. BOSCHMA              -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

**SP/Hard Prepayment Addendum (1-3 yrs) - ARM**
**AZ, CA, CO, CT, DE, FL, HI, ID, IL, IN, MT, ND,**
**NE, NH, NV, OK, SD, TN, UT, WA, WY,**
**AR (loan amounts greater than $150,000)**
**NY (1 year only and if ARM, must have at least a 5-yr fixed rate period),**
**TX (interest rate cannot exceed 12%)**

**8480002** (0505)               VMP Mortgage Solutions, Inc. (800)521-7291

**SPD #002**
**(05/05)**

Spd002.mm

### ADJUSTABLE RATE MORTGAGE LOAN PROGRAM DISCLOSURE
### 12-MONTH AVERAGE OF MONTHLY 1-YR CONSTANT MATURITY INDEX
### PAYMENT-CAPPED NON-CONVERTIBLE ARM

Date: FEBRUARY 1, 2006                              Loan #: 2107576

This disclosure describes the features of an Adjustable Rate Mortgage (ARM) program you are considering, which is called the "12 MAT Payment-Capped Non-Convertible ARM." The interest rate and payment of this loan may each change during the term of this loan.   THIS LOAN ALLOWS FOR NEGATIVE AMORTIZATION. Information on other ARM programs available from the lender will be provided upon request.  This disclosure is not a commitment on the part of the lender to make a loan to you.

**HOW YOUR INTEREST RATE AND PAYMENT ARE DETERMINED**

- Your Interest Rate will be based on an Index Rate plus a Margin.  Please ask us for our current Interest Rate and Margin.

- Your initial Interest Rate will not be equal to an Index Rate plus a Margin. If the initial Interest Rate is below the then-current Index plus Margin (the "fully-indexed rate"), then the initial Interest Rate will be a "Discounted" Interest Rate. If the initial Interest Rate is above the then-current fully-indexed Interest Rate, then the initial Interest Rate will be a "Premium" Interest Rate. Please ask us about the current Discount or Premium.

- The Index Rate is based on the twelve-month average of monthly yields on actively traded United States Securities, adjusted to a constant maturity of one year.  The Index is calculated by adding together the monthly yields on Treasury securities of one-year constant maturity, as published in the Federal Reserve Board Statistical Release H.15, for the preceding 12 months available and dividing the result by twelve. If the index is no longer available, the lender will choose a new index based on comparable information. Since movement of the Index is usually related to market conditions that cannot be predicted, it is impossible to know in advance exactly how much interest you will have to pay over the life of the loan.  The index rate used below was in effect on October 1, 2005.

- When your Interest Rate changes, your new Interest Rate will equal the Index Rate plus our Margin unless your lifetime Interest Rate Cap limits the amount of change in the Interest Rate.

- Your initial payment will be based on the starting interest rate on the loan, the loan amount and the term of the loan. When your payment changes, your new payment will be based on the lesser of two calculations: the payment based on the Interest Rate (calculated by adding the Index plus Margin), loan balance, and remaining loan term or the previous payment amount plus or minus 7.5% of the previous payment amount.

**HOW YOUR INTEREST RATE CAN CHANGE**

Your Interest Rate will adjust monthly after the first payment date and will be equal to the sum of the Index value plus the Margin, subject to the following limits:

- Your Interest Rate may increase or decrease substantially over the life of the loan.

- If an Interest Rate change results in an increase in the Interest Rate, your monthly payment may not be sufficient to cover the interest due and may not fully amortize your loan.

- Your Interest Rate over the life of the loan cannot exceed an Interest Rate between 8.00 and 12.95%. Please ask us about our current maximum rate.  There is no life time interest rate floor.

- Approximately 15 days before each rate adjustment date, your new Interest Rate will be determined by adding the Margin to the then current Index.

**HOW YOUR PAYMENT CAN CHANGE**

- Your payment may increase or decrease substantially over the life of the loan.

- Your payment may change 12 months after your first payment date and annually thereafter.

- Your payment cannot be increased or decreased by more than 7.5% of the existing payment of principal and interest or an amount sufficient to pay the unpaid balance in full by the maturity date at the Interest Rate effective for that month, whichever is less, except if your outstanding balance reaches 110% of the original loan amount or at every 5th scheduled payment adjustment. This is called the Minimum Monthly Payment. If you make only the Minimum Monthly Payment, your payment may increase substantially at the 5th scheduled payment or you may reach the 110% maximum balance at which time your payment will increase substantially.

IndyMac 12 MAT ARM 1 Month Disclosure

8480196 (0510)

Page 1 of 3
VMP Mortgage Solutions, Inc. (800)521-7291

Prime #3007
(10/2005)

DX0071.1 kvm

- At every 5th scheduled payment adjustment, your payment calculation will only be based on the then current Interest Rate, remaining balance and remaining term of the loan. The 7.5% Payment Cap will not apply.
- The unpaid principal balance of your loan can never exceed 110% of the original amount borrowed. If that limit is reached, your monthly payment amount will be changed to an amount sufficient to pay off the unpaid principal balance over the remaining life of the loan at the Interest Rate then in effect.

**DEFERRED INTEREST**

Deferred interest (also known as Negative Amortization) may occur in two ways:

- Because the Interest Rate has the potential to increase each month but the payment changes are generally limited to once every twelve months, the monthly payment may be insufficient to pay the interest which is accruing; and/or
- When normal payment changes occur every twelve months, the payment is limited to an increase of 7.500% from the previous payment amount, which may be less than the interest that is accruing.

If the interest due on your loan for a month is more than the required monthly payment, the entire payment will be applied to interest and any unpaid interest will be added to the loan balance. The interest for the next month is then calculated on the new increased loan balance.

"Accelerated Amortization" may occur if the Interest Rate decreases in those months that the Interest Rate changes but the payment does not change or if the Interest Rate decreases more than the payment changes due to the 7.500% Payment Cap when the payment changes at each twelve-month interval. "Accelerated Amortization" means you may pay more per month than what is required to pay off the loan in the remaining term. Therefore, you may possibly pay the loan off earlier than the original maturity of the loan.

In addition to the Minimum Monthly Payment, you have two other options in making your payment. You may make a fully amortizing payment that is a payment that pays all the interest owed for the month plus principal or you may also choose to make a monthly "interest-only" payment. The fully amortizing payment and the interest-only payment is available only if the payment amount is greater than the Minimum Monthly Payment option. An interest-only payment amount will cover the full interest costs for that month; therefore, no additional (deferred) interest will be added to your loan balance. Your principal balance will not be increased or reduced. An interest-only payment is allowed until a fully amortizing payment is required as described above.

**FOR EXAMPLE:**

**First Example: Lifetime cap of 8.00%, 30 year term**

On a $10,000, 360-month loan with an initial Interest Rate of 1.000% in effect on October 1, 2005 the Interest Rate could rise to a maximum of 8.000%. The initial Interest Rate reflects a recent Discount of 4.563% and a Margin of 2.400% (your initial Interest Rate, Discount or Premium and Margin may be different). The following worse case example illustrates what would happen to your payments if the Interest Rate increased at the first adjustment to the maximum lifetime Interest Cap of 8.000% and remained there for the term of the loan. The example uses a $10,000 loan amount, an initial Interest Rate of 1.000%, a lifetime Interest Cap of 8.000%, a Discount of 4.563% and a Margin of 2.400%.

| Loan Term | Initial Payment | Maximum Payment | Month in which Maximum Payment is reached |
|---|---|---|---|
| 30 years | $32.16 | $82.28 | Payment 30 |

To see what your payments (excluding impounds or escrow payments for taxes, insurance and other purposes relating to the security property) would have been during that period, divide your mortgage amount by $10,000; then multiply the loan payment by the amount. For example, the initial monthly payment for a $100,000 loan would be:   $100,000 ÷ $10,000 = 10
10 x $32.16 = $321.60

**Second Example: Lifetime cap of 8.00%, 40 year term**

On a $10,000, 480-month loan with an initial Interest Rate of 1.250% in effect on October 1, 2005 the Interest Rate could rise to a maximum of 8.000%. The initial Interest Rate reflects a recent Discount of 4.663% and a Margin of 2.500% (your initial Interest Rate, Discount or Premium and Margin may be different). The following worse case example illustrates what would happen to your payments if the Interest Rate increased at the first adjustment to the maximum lifetime Interest Cap of 8.000% and remained there for the term of the loan. The example uses a $10,000 loan amount, an initial Interest Rate of 1.250%, a lifetime Interest Cap of 8.000%, a Discount of 4.663% and a Margin of 2.500%.

| Loan Term | Initial Payment | Maximum Payment | Month in which Maximum Payment is reached |
|---|---|---|---|
| 40 years | $26.49 | $77.04 | Payment 26 |

To see what your payments (excluding impounds or escrow payments for taxes, insurance and other purposes relating to the security property) would have been during that period, divide your mortgage amount by $10,000; then multiply the loan payment by the amount. For example, the initial monthly payment for a $100,000 loan would be:   $100,000 ÷ $10,000 = 10
10 x $26.49 = $264.90

**IndyMac 12 MAT ARM 1 Month Disclosure**

8480196 (0510)                                   Page 2 of 3                                   Prime #3007
(10/2005)

DX00712 \rrs

**Third Example: Lifetime cap of 12.95%, 30 year term**

On a $10,000, 360-month loan with an initial Interest Rate of 1.000% in effect on October 1, 2005, the Interest Rate could rise to a maximum of 12.950%. The initial Interest Rate reflects a recent Discount of 4.463% and a Margin of 2.300% (your initial Interest Rate, Discount or Premium and Margin may be different). The following worse case example illustrates what would happen to your payments if the Interest Rate increased at the first adjustment to the maximum lifetime Interest Cap of 12.950% and remained there for the term of the loan. The example uses a $10,000 loan amount, an initial Interest Rate of 1.000%, a lifetime Interest Cap of 12.950%, a Discount of 4.463% and a Margin of 2.300%.

| Loan Term | Initial Payment | Maximum Payment | Month in which Maximum Payment is reached |
|---|---|---|---|
| 30 years | $32.16 | $120.93 | Payment 14 |

To see what your payments (excluding impounds or escrow payments for taxes, insurance and other purposes relating to the security property) would have been during that period, divide your mortgage amount by $10,000; then multiply the loan payment by the amount. For example, the initial monthly payment for a $100,000 loan would be:  $100,000 ÷ $10,000 = 10
10 x $32.16 = $321.60

**Fourth Example: Lifetime cap of 12.95%, 40 year term**

On a $10,000, 480-month loan with an initial Interest Rate of 1.250% in effect on October 1, 2005, the Interest Rate could rise to a maximum of 12.950%. The initial Interest Rate reflects a recent Discount of 4.263% and a Margin of 2.350% (your initial Interest Rate, Discount or Premium and Margin may be different). The following worse case example illustrates what would happen to your payments if the Interest Rate increased at the first adjustment to the maximum lifetime Interest Cap of 12.950% and remained there for the term of the loan. The example uses a $10,000 loan amount, an initial Interest Rate of 1.250%, a lifetime Interest Cap of 12.950%, a Discount of 4.263% and a Margin of 2.350%.

| Loan Term | Initial Payment | Maximum Payment | Month in which Maximum Payment is reached |
|---|---|---|---|
| 40 years | $26.49 | $118.71 | Payment 13 |

To see what your payments (excluding impounds or escrow payments for taxes, insurance and other purposes relating to the security property) would have been during that period, divide your mortgage amount by $10,000; then multiply the loan payment by the amount. For example, the initial monthly payment for a $100,000 loan would be:  $100,000 ÷ $10,000 = 10
10 x $26.49 = $264.90

**NOTICE OF CHANGE**

You will be notified in writing at least 25, but no more than 120, days before the due date of the first payment that will be at the new level. This notice will contain information about the current and prior Index values on which your current and prior interest rates are based, your current and prior interest rates, new payment amount and loan balance.

**ASSUMPTION OF LOAN**

Although the loan contains a due-on-sale clause, the Lender will consent to a transfer of the property, provided the transferee meets Lender's current loan underwriting criteria. The transferee will be required to execute a written assumption agreement and pay Lender an assumption fee in an amount not to exceed the amount Lender requires for other similar transactions. All original terms will remain the same.

**PREPAYMENT FEE**

Depending upon the interest rate end terms of your loan, your loan may have a prepayment fee. A prepayment fee is a charge that may be incurred for paying off your loan during the first five years or less of your loan term. Please ask us if your loan has a prepayment fee.

I/We acknowledge receipt and have read the Adjustable Rate Mortgage Program Disclosure and the Consumer Handbook on Adjustable Rate Mortgages.

Borrower CLARENCE E. BOSCHMA    Date    Borrower SHIRLEY C. BOSCHMA    Date

Borrower    Date    Borrower    Date

Borrower    Date    Borrower    Date

IndyMac 12 MAT ARM 1 Month Disclosure

8480196 (0510)    Page 3 of 3    Prime #3007 (10/2005)

D300733.wm

# EXHIBIT NO. 2

**EXHIBIT 2**

# ADJUSTABLE RATE NOTE
## ( 12 MONTH MTA

**Payment and Rate Caps)**

MIN: 1001968-0002102158-4                Loan Number: 2102158

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.**

NOVEMBER 22, 2005                    IRVINE              ,    CALIFORNIA
[Date]                              [City]                        [State]

1000 NORTH CHINOWTH ROAD, VISALIA, CALIFORNIA 93291
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 150,000.00        (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is HOME LOAN CENTER, INC., dba LENDINGTREE LOANS, A CALIFORNIA CORPORATION

I will make all payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
### (A) Interest Rate
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of        1.250 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### (B) Interest Rate Change Dates
The interest rate I will pay may change on the first day of        JANUARY        , 2006    , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

### (C) Interest Rate Limit
My interest rate will never be greater than        9.950 %.

### (D) Index
Beginning with the first Interest Rate Change Date,my interest rate will be based on an index.The "Index" is the Twelve-Month Average, determined as set forth below, of the monthly yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rate (H.15)"("the Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.
The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is call the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE NOTE                                    Form 3003 4/2000

Page 1 of 4

8480185 (0010)                VMP MORTGAGE FORMS - (800)521-7291                Initials: _____

3003I.imm

**(E) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 250/1000                            percentage point(s) (        3.250 %) to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on JANUARY 1                            , 2006     . I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on DECEMBER 1, 2035         , I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 163 TECHNOLOGY DRIVE, IRVINE, CALIFORNIA 92618

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 499.88         . This amount may change.

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the        1st         day of JANUARY, 2007     , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater or less than the amount of my last monthly payment due before the Payment Change Date.

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to principal will be the rate required by Section 2 above.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to one hundred ONE HUNDRED TEN AND 000/1000    percent (        110.000 %) of the principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

8480185 (0010)                                        Page 2 of 4

**Form 3003 4/2000**

Initials: _____

3003Z.frm

**(G) Required Full Payment**

On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

## 4. NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY    ** See attached Prepayment Note Addendum.

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment before applying my prepayment to reduce the principal amount of this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to these changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of my monthly payment by the end of  15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8480185** (0010)                    Page 3 of 4                    **Form 3003 10/2000**
                                                                      Initials: _____

3003.mm

**8. GIVING OF NOTICES**

　　Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

　　Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

　　If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10. WAIVERS**

　　I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

　　This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

　　**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

　　To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

　　If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)　　　　_____ (Seal)
SHARON ROBISON　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　　　　-Borrower

_____ (Seal)　　　　_____ (Seal)
　　　　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　　　　-Borrower

[Sign Original Only]

Page 4 of 4

Form 3003 4/2000

## ADDENDUM TO ADJUSTABLE RATE NOTE
### (Prepayment)

Loan #: 2102158

THIS ADDENDUM is made this 22nd day of NOVEMBER 2005 , and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

1. My right to make a Prepayment under Section 5 is modified by this Addendum. A Prepayment of the entire unpaid principal balance is known as a "Full Prepayment." A Prepayment of only part of the unpaid principal balance is known as a "Partial Prepayment."

2. Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any Prepayment charge. If within the first THREE ( 3 ) year(s) I make a Full Prepayment or Partial Prepayment(s) of more than twenty percent (20%) of the original principal amount in any twelve (12) month period, I will pay a Prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid in excess of twenty percent (20%) of the original principal amount.

If I make a Partial Prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month. If I make a Partial Prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

3. All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

Dated: _____

_____ (Seal)         _____ (Seal)
SHARON ROBISON                    -Borrower                                        -Borrower

_____ (Seal)         _____ (Seal)
                                  -Borrower                                        -Borrower

_____ (Seal)         _____ (Seal)
                                  -Borrower                                        -Borrower

_____ (Seal)         _____ (Seal)
                                  -Borrower                                        -Borrower

SP/Hard Prepayment Addendum (1-3 yrs) - ARM
AZ, CA, CO, CT, DE, FL, HI, ID, IL, IN, MT, ND,
NE, NH, NV, OK, SD, TN, UT, WA, WY,
AR (loan amounts greater than $150,000)
NY (1 year only and if ARM, must have at least a 5-yr fixed rate period),
TX (interest rate cannot exceed 12%)

8480002 (0505)          VMP Mortgage Solutions, Inc. (800)521-7291          SPD #002
(05/05)

Spd002.imm

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Loan Number: 2102158
Date: NOVEMBER 22, 2005
Creditor: HOME LOAN CENTER, INC., dba LENDINGTREE LOANS
Address: 163 TECHNOLOGY DRIVE, IRVINE, CALIFORNIA 92618

Borrower(s):  SHARON ROBISON

Address:  1000 NORTH CHINOWTH ROAD, VISALIA, CALIFORNIA 93291

Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price The total cost of your purchase on credit including your down-payment of $ |
|---|---|---|---|---|
| 6.811 % | $ 225,980.88 | $ 145,284.38 | $ 371,265.26 | $ |

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning | | | Monthly Beginning | | | Monthly Beginning |
| 1 | 499.88 | 01/01/06 | | | | | | |
| 11 | 499.88 | 02/01/06 | | | | | | |
| 12 | 537.37 | 01/01/07 | | | | | | |
| 12 | 577.67 | 01/01/08 | | | | | | |
| 12 | 621.00 | 01/01/09 | | | | | | |
| 5 | 667.58 | 01/01/10 | | | | | | |
| 306 | 1,111.06 | 06/01/10 | | | | | | |
| 1 | 1,111.96 | 12/01/35 | | | | | | |

_____ **DEMAND FEATURE:** This obligation has a demand feature.

 X  **VARIABLE RATE FEATURE:** Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

**INSURANCE:** The following insurance is required to obtain credit:
_____ Credit life insurance and credit disability   X  Property Insurance   _____ Flood Insurance   _____ Private Mortgage Insurance
You may obtain property insurance from any insurer that is acceptable to the Lender.
**SECURITY:** You are giving a security interest in: 1000 NORTH CHINOWTH ROAD, VISALIA, CALIFORNIA 93291
_____ The goods or property being purchased   X  Real property you already own.
**FILING FEES:** $
**LATE CHARGE:** If payment is more than _____15_____ days late, you will be charged _____5.000_____ % of the payment.
                                                                                                                              * or $5.00 (whichever is greater)
**PREPAYMENT:** If you pay off early, you
 X  may   _____ will not   have to pay a penalty.
_____ may    X  will not   be entitled to a refund of part of the finance charge.
**ASSUMPTION:** Someone buying your property
_____ may    X  may, subject to conditions   _____ may not   assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
 X  "e" means an estimate   _____ all dates and numerical disclosures except the late payment disclosures are estimates.

Each of the undersigned acknowledge receipt of a complete copy of this disclosure. The disclosure does not constitute a contract or a commitment to lend.

| Applicant  SHARON ROBISON | Date | Applicant | Date |
|---|---|---|---|
| Applicant | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

** NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

Page54.br

DocMagic eFarms 800-649-1362
www.docmagic.com

## ADDENDUM TO ADJUSTABLE RATE NOTE
### (Prepayment)

Loan #: 2102158

THIS ADDENDUM is made this   22nd   day of NOVEMBER 2005   , and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

1.   My right to make a Prepayment under Section 5 is modified by this Addendum. A Prepayment of the entire unpaid principal balance is known as a "Full Prepayment." A Prepayment of only part of the unpaid principal balance is known as a "Partial Prepayment."

2.   Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any Prepayment charge. If within the first   THREE   (   3   ) year(s) I make a Full Prepayment or Partial Prepayment(s) of more than twenty percent (20%) of the original principal amount in any twelve (12) month period, I will pay a Prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid in excess of twenty percent (20%) of the original principal amount.

If I make a Partial Prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month. If I make a Partial Prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

3.   All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

Dated: _____

| | |
|---|---|
| _____  (Seal) | _____  (Seal) |
| SHARON ROBISON          -Borrower | -Borrower |
| _____  (Seal) | _____  (Seal) |
| -Borrower | -Borrower |
| _____  (Seal) | _____  (Seal) |
| -Borrower | -Borrower |
| _____  (Seal) | _____  (Seal) |
| -Borrower | -Borrower |

SP/Hard Prepayment Addendum (1-3 yrs) - ARM
AZ, CA, CO, CT, DE, FL, HI, ID, IL, IN, MT, ND,
NE, NH, NV, OK, SD, TN, UT, WA, WY,
AR (loan amounts greater than $150,000)
NY (1 year only and if ARM, must have at least a 5-yr fixed rate period),
TX (interest rate cannot exceed 12%)

8480002 (0505)             VMP Mortgage Solutions, Inc. (800)521-7291

SPD #002
(05/05)

Spd002.imm

## ADJUSTABLE RATE MORTGAGE LOAN PROGRAM DISCLOSURE
## 12-MONTH AVERAGE OF MONTHLY 1-YR CONSTANT MATURITY INDEX
## PAYMENT-CAPPED NON-CONVERTIBLE ARM

Date: NOVEMBER 22, 2005                    Loan #: 2102158

This disclosure describes the features of an Adjustable Rate Mortgage (ARM) program you are considering, which is called the "12 MAT Payment-Capped Non-Convertible ARM." The interest rate and payment of this loan may each change during the term of this loan. THIS LOAN ALLOWS FOR NEGATIVE AMORTIZATION. Information on other ARM programs available from the lender will be provided upon request. This disclosure is not a commitment on the part of the lender to make a loan to you.

**HOW YOUR INTEREST RATE AND PAYMENT ARE DETERMINED**

- Your Interest Rate will be based on an Index Rate plus a Margin. Please ask us for our current Interest Rate and Margin.

- Your initial Interest Rate will not be equal to an Index Rate plus a Margin. If the initial Interest Rate is below the then-current Index plus Margin (the "fully-indexed rate"), then the initial Interest Rate will be a "Discounted" Interest Rate. If the initial Interest Rate is above the then-current fully-indexed Interest Rate, then the initial Interest Rate will be a "Premium" Interest Rate. Please ask us about the current Discount or Premium.

- The Index Rate is based on the twelve-month average of monthly yields on actively traded United States Securities, adjusted to a constant maturity of one year. The Index is calculated by adding together the monthly yields on Treasury securities of one-year constant maturity, as published in the Federal Reserve Board Statistical Release H.15, for the preceding 12 months available and dividing the result by twelve. If the index is no longer available, the lender will choose a new index based on comparable information. Since movement of the Index is usually related to market conditions that cannot be predicted, it is impossible to know in advance exactly how much interest you will have to pay over the life of the loan. The index rate used below was in effect on December 1, 2004.

- When your Interest Rate changes, your new Interest Rate will equal the Index Rate plus our Margin unless your lifetime Interest Rate Cap limits the amount of change in the Interest Rate.

- Your initial payment will be based on the starting interest rate on the loan, the loan amount and the term of the loan. When your payment changes, your new payment will be based on the lesser of two calculations: the payment based on the Interest Rate (calculated by adding the Index plus Margin), loan balance, and remaining loan term or the previous payment amount plus or minus 7.5% of the previous payment amount.

**HOW YOUR INTEREST RATE CAN CHANGE**

Your Interest Rate will adjust monthly after the first payment date and will be equal to the sum of the Index value plus the Margin, subject to the following limits:

- Your Interest Rate may increase or decrease substantially over the life of the loan.

- If an Interest Rate change results in an increase in the Interest Rate, your monthly payment may not be sufficient to cover the interest due and may not fully amortize your loan.

- Your Interest Rate over the life of the loan cannot exceed an Interest Rate between 8.00 and 12.95%. Please ask us about our current maximum rate. There is no life time interest rate floor.

- Approximately 15 days before each rate adjustment date, your new Interest Rate will be determined by adding the Margin to the then current Index.

**HOW YOUR PAYMENT CAN CHANGE**

- Your payment may increase or decrease substantially over the life of the loan.

- Your payment may change 12 months after your first payment date and annually thereafter.

- Your payment cannot be increased or decreased by more than 7.5% of the existing payment of principal and interest or an amount sufficient to pay the unpaid balance in full by the maturity date at the Interest Rate effective for that month, whichever is less, except if your outstanding balance reaches 110% of the original loan amount or at every 5th scheduled payment adjustment. This is called the Minimum Monthly Payment.

- If the monthly payment is not sufficient to cover the interest due, the difference will be added to your loan amount and will accrue additional interest. This is called "Negative Amortization."

**IndyMac 12 MAT ARM 1 Month Disclosure**

8480196 (0412)

Page 1 of 3

VMP Mortgage Solutions, Inc. (800)521-7291

Prime #3007
(1/2005)

D30071.ism

51

- At every 5th scheduled payment adjustment, your payment calculation will only be based on the then current Interest Rate, remaining balance and remaining term of the loan. The 7.5% Payment Cap will not apply.

- The unpaid principal balance of your loan can never exceed 110% of the original amount borrowed. If that limit is reached, your monthly payment amount will be changed to an amount sufficient to pay off the unpaid principal balance over the remaining life of the loan at the Interest Rate then in effect.

**DEFERRED INTEREST**

Deferred interest (also known as Negative Amortization) may occur in two ways:

- Because the Interest Rate has the potential to increase each month but the payment changes are generally limited to once every twelve months, the monthly payment may be insufficient to pay the interest which is accruing; and/or

- When normal payment changes occur every twelve months, the payment is limited to an increase of 7.500% from the previous payment amount, which may be less than the interest that is accruing.

If the interest due on your loan for a month is more than the required monthly payment, the entire payment will be applied to interest and any unpaid interest will be added to the loan balance. The interest for the next month is then calculated on the new increased loan balance.

"Accelerated Amortization" may occur if the Interest Rate decreases in those months that the Interest Rate changes but the payment does not change or if the Interest Rate decreases more than the payment changes due to the 7.500% Payment Cap when the payment changes at each twelve-month interval. "Accelerated Amortization" means you may pay more per month than what is required to pay off the loan in the remaining term. Therefore, you may possibly pay the loan off earlier than the original maturity of the loan.

In addition to the Minimum Monthly Payment, you have two other options in making your payment. You may make a fully amortizing payment that is a payment that pays all the interest owed for the month plus principal or you may also choose to make a monthly "interest-only" payment. The fully amortizing payment and the interest-only payment is available only if the payment amount is greater than the Minimum Monthly Payment option. An interest-only payment amount will cover the full interest costs for that month; therefore, no additional (deferred) interest will be added to your loan balance. Your principal balance will not be increased or reduced. An interest-only payment is allowed until a fully amortizing payment is required as described above.

**FOR EXAMPLE:**

**First Example: Lifetime cap of 8.00%**

On a $10,000, 360-month loan with an initial Interest Rate of 1.000% in effect on December 1, 2004 the Interest Rate could rise to a maximum of 8.000%. The initial Interest Rate reflects a recent Discount of 3.1733% and a Margin of 2.400% (your initial Interest Rate, Discount or Premium and Margin may be different). The following worse case example illustrates what would happen to your payments if the Interest Rate increased at the first adjustment to the maximum lifetime Interest Cap of 8.000% and remained there for the term of the loan. The example uses a $10,000 loan amount, an initial Interest Rate of 1.000%, a lifetime Interest Cap of 8.000%, a Discount of 3.1733% and a Margin of 2.400%.

| Loan Term | Initial Payment | Maximum Payment | Month in which Maximum Payment is reached |
|-----------|-----------------|-----------------|-------------------------------------------|
| 30 years  | $32.16          | $82.28          | Payment 30                                |

To see what your payments (excluding impounds or escrow payments for taxes, insurance and other purposes relating to the security property) would have been during that period, divide your mortgage amount by $10,000; then multiply the loan payment by the amount. For example, the initial monthly payment for a $100,000 loan would be:  $100,000 ÷ $10,000 = 10
                                         10 x $32.16 = $321.60

**Second Example: Lifetime cap of 12.95%**

On a $10,000, 360-month loan with an initial Interest Rate of 1.000% in effect on December 1, 2004, the Interest Rate could rise to a maximum of 12.950%. The initial Interest Rate reflects a recent Discount of 2.7733% and a Margin of 2.000% (your initial Interest Rate, Discount or Premium and Margin may be different). The following worse case example illustrates what would happen to your payments if the Interest Rate increased at the first adjustment to the maximum lifetime Interest Cap of 12.950% and remained there for the term of the loan. The example uses a $10,000 loan amount, an initial Interest Rate of 1.000%, a lifetime Interest Cap of 12.950%, a Discount of 2.7733% and a Margin of 2.000%.

| Loan Term | Initial Payment | Maximum Payment | Month in which Maximum Payment is reached |
|-----------|-----------------|-----------------|-------------------------------------------|
| 30 years  | $32.16          | $120.96         | Payment 14                                |

IndyMac 12 MAT ARM 1 Month Disclosure

8480196 (0412)                                    Page 2 of 3                                    Prime #3007
                                                                                               (1/2005)

D30072.inm

To see what your payments (excluding impounds or escrow payments for taxes, insurance and other purposes relating to the security property) would have been during that period, divide your mortgage amount by $10,000; then multiply the loan payment by the amount. For example, the initial monthly payment for a $100,000 loan would be:  $100,000 ÷ $10,000 = 10

       10 x $32.16 = $321.60

## NOTICE OF CHANGE

You will be notified in writing at least 25, but no more than 120, days before the due date of the first payment that will be at the new level. This notice will contain information about the current and prior Index values on which your current and prior interest rates are based, your current and prior interest rates, new payment amount and loan balance.

## ASSUMPTION OF LOAN

Although the loan contains a due-on-sale clause, the Lender will consent to a transfer of the property, provided the transferee meets Lender's current loan underwriting criteria. The transferee will be required to execute a written assumption agreement and pay Lender an assumption fee in an amount not to exceed the amount Lender requires for other similar transactions. All original terms will remain the same.

## PREPAYMENT FEE

Depending upon the interest rate and terms of your loan, your loan may have a prepayment fee. A prepayment fee is a charge that may be incurred for paying off your loan during the first five years or less of your loan term. Please ask us if your loan has a prepayment fee.

I/We acknowledge receipt and have read the Adjustable Rate Mortgage Program Disclosure and the Consumer Handbook on Adjustable Rate Mortgages.

| Borrower SHARON ROBISON | Date | Borrower | Date |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

IndyMac 12 MAT ARM 1 Month Disclosure

8480196 (0412)        Page 3 of 3        Prime #3007 (1/2005)

I30073.irm

# EXHIBIT 2

CV 07-3775 AHS - 3/23/2009 - Item No. 1

1

1       **UNITED STATES DISTRICT COURT**

2       **CENTRAL DISTRICT OF CALIFORNIA**

3       **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                   - - - - - - -

5    DEAN CARROLL,                      )
                                        )
6            Plaintiffs,                )
                                        )
7        vs.                            ) No. CV 07-3775 AHS
                                        )     Item No. 1
8    HOMECOMINGS FINANCIAL LLC,         )
     etc., et al.,                      )
9                                       )
             Defendants.               )
10   _____)

11

12

13

14               REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                    Hearing on Motions

16                   Santa Ana, California

17                 Monday, March 23, 2009

18

19

20

21   Debbie Gale, CSR 9472, RPR
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 558-8141
24

25   07cv3775 Carroll 2009-03-23 Item 1

**DEBBIE GALE, U.S. COURT REPORTER**

PDF created with pdfFactory trial version www.pdffactory.com

CV 07-3775 AHS - 3/23/2009 - Item No. 1

22

| | | |
|---|---|---|
| 10:33 | 1 | THE COURT:  Last question in this case in |
| 10:33 | 2 | particular that we're talking about -- and I'm calling it |
| 10:33 | 3 | "Cochran" just because Carroll's out of the TILA claims -- |
| 10:33 | 4 | this case appears to be federal question-based only.  And so |
| 10:33 | 5 | I'm thinking out loud with you as to whether or not there's |
| 10:33 | 6 | a reason for the federal courts to go around declaring the |
| 10:33 | 7 | state law as to what should be the correct answer for the |
| 10:33 | 8 | unfair competition; maybe not this case, but other cases |
| 10:33 | 9 | have false advertising; or whether there's reason for the |
| 10:33 | 10 | federal courts to bow out and just deal with the federal |
| 10:33 | 11 | question; and if that's not successful, to not deal with the |
| 10:34 | 12 | state law claims. |
| 10:34 | 13 | What's your thinking? |
| 10:34 | 14 | MR. ARBOGAST:  Well, it's certainly -- the Court |
| 10:34 | 15 | could -- if it was inclined, which I hope it is not, of |
| 10:34 | 16 | dismissing all of the federal causes of action -- it could |
| 10:34 | 17 | remand it back to State court. |
| 10:34 | 18 | THE COURT:  I don't think it was removed.  It |
| 10:34 | 19 | wasn't removed. |
| 10:34 | 20 | MR. ARBOGAST:  And -- and -- right.  But -- I |
| 10:34 | 21 | apologize -- but under the pendent jurisdiction, the Court |
| 10:34 | 22 | in the Ninth Circuit has ruled on many of the issues with |
| 10:34 | 23 | regards to the State law causes of action.  So -- |
| 10:34 | 24 | THE COURT:  Oh, I -- believe me, I know. |
| 10:34 | 25 | MR. ARBOGAST:  Yeah. |

**DEBBIE GALE, U.S. COURT REPORTER**

PDF created with pdfFactory trial version www.pdffactory.com

CV 07-3775 AHS - 3/23/2009 - Item No. 1

23

| | | |
|---|---|---|
| 10:34 | 1 | THE COURT:  The Sullivan v. Oracle case that the |
| 10:34 | 2 | Ninth Circuit has asked the California Supreme Court to look |
| 10:34 | 3 | at in terms of answering under related questions comes from |
| 10:34 | 4 | the Central District, so -- |
| 10:34 | 5 | MR. ARBOGAST:  Right. |
| 10:34 | 6 | THE COURT:  -- I'm aware of that tendency.  And I |
| 10:34 | 7 | take it, but I'm not sure you're expressly saying this, that |
| 10:35 | 8 | the plaintiffs think the Court should proceed to exercise |
| 10:35 | 9 | supplemental jurisdiction? |
| 10:35 | 10 | MR. ARBOGAST:  Yes. |
| 10:35 | 11 | THE COURT:  Okay.  Thank you. |
| 10:35 | 12 | Let's give defense counsel a chance to weigh in |
| 10:35 | 13 | now. |
| 10:35 | 14 | Mr. Goodin. |
| 10:35 | 15 | MR. GOODIN:  Thank you, Your Honor.  Just a couple |
| 10:35 | 16 | of brief comments. |
| 10:35 | 17 | We obviously agree with the Court's analysis on |
| 10:35 | 18 | the TILA issues.  We agree that the conclusions were |
| 10:35 | 19 | properly reached.  I think there are a couple of issues of |
| 10:35 | 20 | confusion in many of the other cases, and I've been involved |
| 10:35 | 21 | in many of the cases and have seen many of the decisions and |
| 10:35 | 22 | analyzed them in the context of this case, and I think it's |
| 10:35 | 23 | important to realize -- |
| 10:35 | 24 | THE COURT:  Would you like to slow down just a |
| 10:35 | 25 | bit? |

**DEBBIE GALE, U.S. COURT REPORTER**

PDF created with pdfFactory trial version www.pdffactory.com

# EXHIBIT 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL


Case No.: **CV 07-3775-AHS(FMOx)**                    Date: **March 23, 2009**

Case Title: **DEAN CARROLL, etc., et al. v. HOMECOMINGS FINANCIAL LLC, et al.**

========================================================================
PRESENT:   **THE HONORABLE ALICEMARIE H. STOTLER, U.S. DISTRICT JUDGE**


          **Ellen Matheson**              **Debbie Gale**
          **Deputy Clerk**               Court Reporter

ATTORNEY(S) PRESENT FOR PLAINTIFF(S):    ATTORNEY(S) PRESENT FOR DEFENDANT(S):
David M. Arbogast                        J. Matthew Goodin

PROCEEDINGS:   **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
               COMPLAINT; REQUEST FOR JUDICIAL NOTICE**


      Cause called.  Tentative Ruling provided to counsel prior to hearing,
a copy of which shall be attached to the Clerk's minutes on these
proceedings.  Hearing held.  Counsel argue.  Defendants' Request for
Judicial Notice is denied in part as moot, and plaintiff's objections as to
Exhibit A are overruled, granting the Request in part.  Defendants' Motion
to Dismiss is granted without prejudice to amendment.  No later than April
13, 2009, plaintiff may file a Third Amended Complaint.  If an amended
complaint is not timely filed, Court will dismiss the action in accordance
with the Tentative Ruling.


                                              00   :  40
                        Initials of Deputy Clerk:   enm

_____
CV-90 (06/04)                  CIVIL MINUTES-GENERAL              Page 1 of 1

<u>**Dean Carroll, et al. v. Homecomings Financial LLC, et al.**</u>
**CV 07-3775**
**Tentative Ruling**

| Claims in the Second Amended Complaint | Arguments in Motion | Court's Findings | Ruling: Defendants' Motion is: |
|---|---|---|---|
| **(1) TILA (Not Carroll)** | Rescission is not available as a remedy because there are no defects in Material Disclosure: APR, finance charge, amount financed, total payments, payment schedule, TILDs disclosures. | Because the Court dismisses all of the TILA claims, it does not address this issue. | Granted |
| (A) Payment Schedule provided was not based on interest rate provided in Note or listed on the TILDS violated 226.17(a)(1) | TILD complies b/c it provides initial payment amount applicable for first 12 months, until Payment Change Date. | The Program Disclosures ("PD") explain how the interest rate in the Payment Schedule was calculated and the Schedule itself demonstrates that the interest rate used is a composite of the Initial Interest Rate and the APR, as TILA requires. | Granted |
| (B) Failure to clearly disclose that the Payment Schedule was not based on the interest rate provided in the Note and that Negative Amortization would occur based on that schedule violated 226.17(c) and 226.19 to make disclosures concerning the interest rate | APR is required, 226,17, 226.18(f)(2) – "actual interest rate" does not exist – TILDs included required statements. | The Payment Schedule itself demonstrates that negative amortization will occur, it was clear and conspicuous. | Granted |

| | | | |
|---|---|---|---|
| (C) Failure to clearly disclose that negative amortization was certainty based on 226.19 | 226.19 applies to PD, and both the Note and PD highlight that negative amortization is possibility. <u>See</u> 226.19(b)(2)(vii). | It is technically accurate because plaintiffs could have elected a different payment option which would eliminate negative amortization. | Granted |
| (D) Failure to clearly disclose that initial interest rate is discounted based on 226.19(b)(2)(v) | 226.19 applies to PD, and PD here has clear statement about discounted rate. | Adopt Defendants' argument. | Granted |
| (E) Failure to clearly disclose the Composite Interest Rate based on official commentary to 226 C.F.R. 17(C)(8) | TILA does not control Note content, only disclosures – TILDs has APR listed as required. 226.19(b)(2). | Adopt Defendants' argument. | Granted |
| (F) Failure to clearly disclose the Legal Obligation based on 12 C.F.R. § 226.17(c) | Legal obligation requires disclosures to reflect the credit terms.  226 Sup. 1. Cmt. 17(c)1.  The credit terms are in the notes. | Adopt Defendants' argument. | Granted |
| (G) Failure to clearly disclose the Effect of the Payment Cap | It is included in PD, "b/c payment caps limit only the amt of pymt increases . . ." and also in Note. | Adopt Defendants' argument. | Granted |
| **(2) 17200 "unlawful" based on TILA violations (Not Carroll)** | B/c no TILA claim, no 17200. | Adopt Defendants' argument. | Granted |

| | | | |
|---|---|---|---|
| **(3) 17200 - unfair and fraudulent business practices: misrepresentation of marketing and promotion of loans** | Def complied with TILA, no other disclosures required. <u>Linear Tech., Stetler, Evans</u>. UCL cannot be used to challenge fairness of loans, which is improper. <u>South Bay</u>. No alleged specificity. | Adopt Defendants' argument as to specificity. | Granted |
| **(4) Fraudulent Omissions: duty to disclose actual interest rate, negative amortization, discounted initial rate** | <u>See</u> entry to No. 3. | Plaintiffs' fraudulent omissions claim is predicated wholly on its TILA claim.  Because defendants made all required TILA disclosures, this claim fails. | Granted |
| **(5) Breach of Contract: apply payments to interest and principal** | Reading K in entirety, it is ok.  <u>Skookum</u>. | Adopt Defendants' argument. | Granted |
| **(6) Br. GFFD: by not applying payments to principal it misleads pls** | GFFD cannot prohibit what K permits.  <u>Late Fee</u>. Pl allege only pre-formation claims, not proper.  <u>Berger</u>. | Adopt Defendants' argument. | Granted |

3