1

**SPIRO MOSS LLP**
J. Mark Moore (SBN 180473)

2  mark@spiromoss.com
Ira Spiro (SBN 67641)

3  ira@spiromoss.com
11377 W. Olympic Boulevard, Fifth Floor

4  Los Angeles, CA 90064-1683
Phone:  (310) 235-2468

5  Fax:     (310) 235-2456

6  **ARBOGAST & BERNS LLP**
David M. Arbogast (SBN 167571)

7  darbogast@law111.com
Jeffrey K. Berns, Esq. (SBN 131351)

8  jberns@law111.com
6303 Owensmouth Ave., 10th Floor

9  Woodland Hills, CA 91367-2263
Phone: (818) 961-2000

10  Fax:     (818) 936-0232

11  Attorneys for Plaintiffs and all others Similarly Situated

12

13  **UNITED STATES DISTRICT COURT**

   **CENTRAL DISTRICT OF CALIFORNIA**

14

15

16  CLARENCE E. BOSCHMA, SHIRLEY
   C. BOSCHMA, and SHARON

17  ROBISON, individually, and on behalf
   of all others similarly situated,

18                    Plaintiffs,

19            v.

20

21  HOME LOAN CENTER, INC. d/b/a
   LENDINGTREE LOANS, a California

22  Corporation; and DOES 1 through 100
   inclusive,

23                    Defendants.

24

25

26

27

28

**CASE NO.  8:09-cv-00914-AHS-RNB**

**CLASS ACTION**

**MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Hearing Date:  September 28, 2009
Time:             10:00 a.m.
Place:            Courtroom 10-A
Judge:           Hon. Alicemarie H. Stotler

Complaint filed:   June 19, 2009
Removal filed:     August 7, 2009

Opposition to Motion to Dismiss - 8:09-cv-00914-AHS-RNB

# TABLE OF CONTENTS

Page

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.   The Legal Standard on a Motion to Dismiss . . . . . . . . . . . . . . . . . . . . 3

      B.   TILA Does Not Preempt Plaintiffs' State Law Claims . . . . . . . . . . . . . . 5

           1.   TILA Statutory Text, History, and Purpose . . . . . . . . . . . . . . . . . . 5

           2.   TILA By Its Own Terms Only Preempts State Laws That Require
                Inconsistent Disclosure Statements and/or Forms . . . . . . . . . . . . . . 6

      C.   Field Preemption Under HOLA is Completely Inapplicable Here
           Because Defendant is not a Federal Savings and Loan Association . . . . . 11

           1.   HOLA History and Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

           2.   HOLA Only Applies to Federal Savings and Loan Associations,
                and Defendant Is Not a Federal S&L Association . . . . . . . . . . . . . . 12

      D.   Plaintiffs Have Adequately Alleged Their UCL Claims . . . . . . . . . . . . . 14

      E.   Plaintiffs Have Adequately Stated a Claim for Fraudulent Omissions . . . 15

           1.   Defendant's Duty to Disclose Material Facts . . . . . . . . . . . . . 16

           2.   Materiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

           3.   Defendant's Knowledge of the Fraudulent Omissions and
                Fraudulent Intent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

           4.   Actual Reliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

           5.   Justifiable Reliance - Presumed . . . . . . . . . . . . . . . . . . . . . . . 19

      F.   Plaintiffs Have Properly Pled a Valid Breach of Contract Claim . . . . . . . 22

      G.   Plaintiffs Have Properly Pled a Valid Claim for Tortious Breach
           of the Implied Covenant of Good Faith And Fair Dealing . . . . . . . . . . . 24

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## FEDERAL CASES                                                    Page

*Amparan v. Plaza Home Mortgage, Inc.,*
   No. 07-4498 JF, 2008 WL 5245497 (N.D. Cal. Dec. 17, 2008) . . . . . . . . . 7, 9, 10

*Bank of Am. v. City & County of S.F.,*
   309 F.3d 551 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Bedrosian v. Tenet Healthcare Corp.,*
   208 F.3d 220 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544, 127 S.Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Binder v. Gillespie,*
   184 F.3d 1059 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Conference of Federal Sav. and Loan Associations v. Stein,*
   604 F.2d 1256 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Consul Ltd. v. Solide Enters., Inc.,*
   802 F.2d 1143 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Falk v. General Motors Corp.,*
   496 F.Supp.2d 1008 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Fardella v Downey Savings & Loan Association,*
   No. 00-4393, 2001 WL 492442 (N.D. Cal May 8, 2001) . . . . . . . . . . . . . . . . . 7

*Fidelity Federal Sav. & Loan Assn. v. De La Cuesta,*
   458 U.S. 141 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gilligan v. Jamco Dev. Corp.,*
   108 F.3d 246 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Glendale Fed. Sav. & Loan Ass'n v. Fox,*
   459 F.Supp. 903 (C.D.Cal.1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Grimes v. New Century Mortgage Corp.,*
   340 F.3d 1007 (9th Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hauk v. JP Morgan Chase Bank USA,*
   552 F.3d 1114 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Heastie v. Community Bank of Greater Peoria,*
   690 F. Supp. 716 (N.D. Ill. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Daou Systems, Inc.,*
   411 F.3d 1006 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Ferrell,*
   358 B.R. 777 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re First Alliance Mortgage Co.*,
    280 B.R. 246 (C.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9

*In re Vylene Enters., Inc.*,
    90 F.3d 1472 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Jordan v. Paul Financial, LLC, et al.*,
    2009 WL 1941561 (N.D. Cal. July 1, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*King v. California*,
    784 F.2d 910 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Knapp v Americredit Financial Services*,
    245 F. Supp. 2d 841 (S.D. W.VA 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Magee v. Exxon Corp.*,
    135 F.3d 599 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Mandrigues v. World Savings, Inc.*,
    No. C 07-04497, 2008 WL 1701948 (N.D. Cal. Apr. 9, 2008) . . . . . . . . . . 15, 24

*Monaco v. Bear Stearns Residential Mortg. Corp.*,
    554 F.Supp.2d 1034 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Nava v. Virtual Bank*,
    No. 08-00069-FCD, 2008 WL 2873406 (E.D. Cal. July 16, 2008) . . . . . . . . . . 13

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Plascencia v. Lending 1st Mortg.*,
    583 F.Supp.2d 1090 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 9

*Plascencia v. Lending 1st Mortgage, et. al.*,
    --- F.R.D. ----, 2009 WL 2569732 (N.D.Cal. Aug. 21, 2009) . . . . . . . . . . 1, 20, 21

*Poulos v. Caesars World, Inc.*,
    379 F.3d 654 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Quesada v. Loan Center of California*,
    No. 8-177 WBS, 2008 WL 5100241 (E.D. Cal. Nov. 26, 2008) . . . . . . . 6, 7, 9, 14

*Security Savings and Loan v. Director, OTS*,
    960 F.2d 1318 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Silvas v. E\*Trade Mortgage Corp.*,
    514 F.3d 1001 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Swedish Civ. Aviation Admin. v. Project Mgmt. Enters. Inc.*,
    190 F.Supp.2d 785 (D.Md. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Syverson v. IBM Corp.*,
  472 F.3d 1072 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Washington v. Baezinger*,
  673 F.Supp. 1478 (N.D.Cal.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Wells Fargo Bank West, National Ass'n v. Burns*,
  100 Fed.Appx. 599 (8th Cir. 2004) (unpublished) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Williams ex rel. Tabiu v. Gerber Prods Co.*,
  523 F.3d 934 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Williams v. First Gov't Mortgage & Investors Corp.*,
  176 F.3d 497 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9

*Williams v. Public Finance Corp.*,
  598 F.2d 349 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Yokoyama v. Midland Nat. Life Ins. Co.*,
  --- F.3d ----, 2009 WL 2634770 (9th Cir. Aug. 28, 2009) . . . . . . . . . . . . . . . . 1, 20

**<u>STATE CASES</u>**

*Alliance Mortgage Co. v. Rothwell*,
  10 Cal.4th 1226 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bank of the West v. Superior Court*,
  2 Cal.4th 1254 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*,
  5 Cal.4th 854 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Black v. Fin. Freedom Senior Funding Corp.*,
  92 Cal.App.4th 917 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Engalla v. Permanente Med. Group*,
  15 Cal.4th 951 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Freeman & Mills, Inc. v. Belcher Oil Co.*,
  11 Cal.4th 85 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Grimaldi v. Webb*,
  668 N.E.2d 39 (Ill. App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Guz v. Bechtel Nat'l Inc.*,
  24 Cal.4th 317 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Tobacco II Cases*,
  46 Cal.4th 298 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 22

*Lazar v. Superior Court*,
    12 Cal.4th 631 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*LiMandri v. Judkins*,
    52 Cal.App.4th 326 (Ct. App. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lingsh v. Savage*,
    213 Cal.App.2d 729 (Ct. App. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mirkin v. Wasserman*,
    5 Cal.4th 1082 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Muzzi v. Bel Air Mart*,
    171 Cal.App.4th 456 (Cal.App. 3 Dist., 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Lovejoy v. AT&T Corp.*,
    119 Cal.App.4th 151 (Ct. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pastoria v. Nationwide Ins.*,
    112 Cal. App. 4th 1490 (Ct. App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Small v. Fritz Co.*,
    30 Cal.4th 167 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Vasquez v. Superior Court*,
    4 Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964 (1974) . . . . . . . . . . . . . . . . . . . . . 20

*Wilhelm v. Pray, Price, Williams & Russell*,
    186 Cal.App.3d 1324 (Ct. App. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## **STATUTES**

12 U.S.C.
    § 1463(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15 U.S.C.
    § 1601(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    § 1610(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    § 1601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    § 1604(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Business & Professions Code
    § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

## **RULES**

Federal Rules of Civil Procedure
    Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Rule 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15
    Rule 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Opposition to Motion to Dismiss - 8:09-cv-00914-AHS-RNB

## **REGULATIONS**

12 C.F.R
     § 560.2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     § 226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     § 560.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12
     § 560.2(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## **OTHER AUTHORITIES**

5 Witkin, Summary of California Law (10th ed. 2005) Torts
     § 800, P. 1157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Opposition to Motion to Dismiss - 8:09-cv-00914-AHS-RNB

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.     INTRODUCTION**

3      This consumer fraud class action is brought against HOME LOAN CENTER, INC.

4  d/b/a LENDINGTREE LOANS, a California Corporation ("Defendant") for its deceptive

5  and unfair business practices in connection with the sale and servicing of its Option

6  Adjustable Rate Mortgage loans ("Option ARM loans").  In particular, Plaintiffs' claims -

7  all of which are brought under state law - seek redress for Defendant's failure to disclose

8  important material facts concerning the Option ARM loans it sold to Plaintiffs and other

9  consumers.  As such, this action is primarily based on Defendant's omissions.  *See, e.g.,*

10  *Plascencia v. Lending 1st,* --- F.R.D. ----, 2009 WL 2569732 at *9 (N.D.Cal. Aug. 21, 2009)

11  ["*Plascencia II*"] (citing *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-

12  54 (1972) and *Vasquez v. Superior Court*, 4 Cal.3d 800, 814 (1974)); *see also Yokoyama v.*

13  *Midland Nat. Life Ins. Co.* --- F.3d ----, 2009 WL 2634770, **5-6 (9th Cir. Aug. 28, 2009)

14  ["*Yokoyama*"] (reversing denial of class certification in case based on defendant's alleged

15  material omissions in form documents).

16      Defendant's argument that the Truth-in-Lending Act ("TILA") preempts Plaintiffs'

17  state and common law claims is incorrect.   In fact, TILA only preempts state laws that

18  require *inconsistent* disclosures or forms.  Similarly, Defendant's argument that it complied

19  with TILA is entirely without merit.  As demonstrated below, Defendant's incomplete and

20  conflicting disclosures do not comply with TILA in spirit or in fact.  Instead, Defendant's

21  documents omit material information on which any reasonable person would necessarily rely

22  when deciding whether to purchase a mortgage loan.  Defendant's claims that its disclosures

23  complied as a matter of law, and that Plaintiffs cannot show reliance as a matter of law, are

24  refuted by the loan documents as well as by Plaintiffs' factual allegations, which must be

25  accepted as true.  There was reliance in fact in this case, and, moreover, reliance on material

26  omissions can be presumed under California law.

27      Plaintiffs have adequately alleged their fraud claims, including Defendant's common

28  law duty to disclose.  In challenging Plaintiffs' pleading, Defendant overlooks that a fraud

1

by omission claim, as alleged here, does not need to meet the strict requirements of Rule 9(b). In *Washington v. Baezinger*, 673 F.Supp. 1478, 1482 (N.D.Cal.1987), the court noted that in fraud by omission cases, "a plaintiff cannot plead either the specific time of the omission or the place, as he is not alleging an act, but a failure to act." *See also Swedish Civ. Aviation Admin. v. Project Mgmt. Enters. Inc.*, 190 F.Supp.2d 785, 799 (D.Md. 2002). Nevertheless, even if the Court was to apply Rule 9,

> "Plaintiffs have alleged specific non-disclosures concerning the interest on their loan, the insufficiency of their month payments to cover the accrued interest and the consequent negative amortization that was certain to occur if they made only the minimum monthly payments....The allegations in the complaint are sufficiently specific to enable [defendant] to articulate a defense, and thus the requirements of Rule 9(b) are satisfied."

*See Plascencia v. Lending 1st Mortg.*, 583 F.Supp.2d 1090, 1100 (N.D. Cal. 2008) ["*Plascencia I*"].

In addition, Plaintiffs have clearly articulated the actionable breach of contract predicated on the Loan Documents. Defendant failed to apply Plaintiffs' loan payments in the manner described in its own ambiguous contractual documents. Finally, Plaintiffs do state a claim for tortious breach of the implied covenant of good faith and fair dealing.

Accordingly, Plaintiffs respectfully request that the Court deny Defendant's motion and order it to answer the complaint.

## II.    STATEMENT OF FACTS

Plaintiffs are consumers who applied for a primary residence mortgage through Defendant. Cmplt., ¶ 2-4. Defendant sold Plaintiffs a type of loan called an Option ARM loan. *Id.* at ¶ 5. When selling these loans, Defendant, through its loan documents, failed to disclose to Plaintiffs and Class Members, before they entered into the loans, (i) that the payment schedule for the first two to five years was not based upon the APR listcd on the TILDS; (ii) that negative amortization <u>will</u> occur and that the "principal balance will increase"; (iii) that the initial interest rate on the Note was discounted; and (iv) the applicable annual percentage rate ("APR"). *Id.* at ¶¶ 55. In fact, Defendant failed to disclose that the interest rate applicable to Plaintiffs' Option ARM loan would increase after just *thirty days*.

1    *Id.* at ¶ 52.

2    The loan documents Defendant provided to Plaintiffs also failed to disclose that

3    Plaintiffs' monthly payments would not be applied to both principal and interest, even

4    though the loan contract stated "I will pay principal and interest by making payments every

5    month." *Id.* at Ex. 1, ¶ 3(A). However, Defendant failed to disclose that the monthly

6    payment amounts Defendant provided to Plaintiff and Class Members before they entered

7    into these loans were insufficient to cover both principal and interest. *Id.* at ¶ 39-43.

8    Accordingly, Defendant never applied any of Plaintiffs' payments to principal. *Id.*

9    Defendant's loan documents also failed to disclose to Plaintiffs and the Class Members that

10   if they made payments based on the low interest rate – i.e., if they paid the amounts stated

11   in the Truth-in-Lending Disclosure Statement ("TILDS") – that negative amortization was

12   absolutely certain to occur. *Id.* at ¶ 15. However, Defendant failed to disclose that the

13   subject Option ARM loans were designed to result in negative amortization, and in fact

14   guaranteed that negative amortization would occur. *Id.* Finally, Plaintiffs could not

15   extricate themselves from their loans because Defendant included a stiff and onerous

16   prepayment penalty provision in the loans. *Id.* at at ¶ 21. Accordingly, Plaintiffs seek

17   compensatory, consequential and punitive damages, and legal and equitable restitution.

18   **III.   ARGUMENT**

19          **A.    The Legal Standard on a Motion to Dismiss**

20          Fed. R. Civ. P. 12(b)(6) permits dismissal only if a challenged pleading fails to "state

21   a claim upon which relief can be granted." The minimum pleading requirement set by Fed.

22   R. Civ. P. 8(a) requires a complaint to include "a short and plain statement of the claim

23   showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

24   what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema*

25   *N.A.*, 534 U.S. 506, 512 (2002). To satisfy this liberal pleading standard, a complaint "does

26   not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127

27   S.Ct. 1955, 1964-65 (2007). Rather, the complaint's allegations need only "be enough to

28   raise a right to relief above the speculative level." *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

When considering a Rule 12(b)(6) motion to dismiss, the complaint is liberally construed and all well-pleaded facts are taken as true. *Syverson v. IBM Corp.*, 472 F.3d 1072, 1075 (9th Cir. 2007). Motions to dismiss are generally viewed with disfavor and are rarely granted. *See, e.g., Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). If dismissal of the complaint is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. *See, e.g., In re Daou Systems, Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005).

Plaintiffs have more than adequately stated claims against Defendant for: 1) fraudulently omitting material facts from its loan documents, 2) violations of California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.*, "Unlawful," "Unfair" and "Fraudulent" Business Acts or Practices, 3) breach of contract, and 4) tortious breach of the implied covenant of good faith and fair dealing. To the extent these state and common law allegations are premised in part on TILA violations, Plaintiffs have detailed Defendant's failures to clearly and conspicuously disclose (a) the true interest rate that would apply to the loans; (b) that negative amortization was absolutely certain to occur if Plaintiffs followed the only payment schedule that Defendant gave them; (c) that the initial interest rate was discounted; and (d) the annual interest rate.

Simply put, Defendant's motion fails to even attempt to address the adequacy of Plaintiffs' allegations for each of these claims, let alone to mandate dismissal of these claims. As shown below, numerous recent decisions from other courts in this Circuit, involving similar Option ARM-based claims, confirm that Plaintiffs' present claims are viable and adequately pleaded.

Nevertheless, Defendant seems to think that simply by pointing to this Court's prior ruling regarding other claims in another case involving some of the same plaintiffs, it can obtain dismissal of this case. Plaintiffs are confident that the Court's analysis of the parties' arguments will be more reasoned than that.

/ / /

/ / /

**B.    TILA Does Not Preempt Plaintiffs' State Law Claims**

**1.    TILA Statutory Text, History, and Purpose**

Plaintiffs allege that Defendant violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL" or "17200") by failing to disclose material and critical facts regarding the certainty of negative amortization occurring under the payment schedules for their Option ARM loans after making misleading statements suggesting to borrowers that this would not occur.  Plaintiffs allege that Defendant's deception in omitting this critical information about their mortgage loans violates the UCL's prohibitions against "fraudulent," "unfair," and "unlawful" business practices.  As to the "unlawful" prong of the UCL, Plaintiffs allege that Defendant's material omission is unlawful because it involves information required to be disclosed by the federal Truth In Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA").  Defendants counter that TILA "preempts" these claims under the UCL because the UCL contains a longer, four-year, statute of limitations and provides for greater damages.  But this preemption argument fails based on TILA's plain language, legislative history, and underlying statutory purposes.

TILA's stated purpose is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a).  "To effectuate TILA's purpose, a court must construe the Act's provisions liberally in favor of the consumer and require absolute compliance by creditors." *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1118 (9th Cir. 2009) (internal quotation omitted).

Congress delegated the responsibility of "prescrib[ing] regulations to carry out the purposes of" TILA to the Federal Reserve Board ("the Board"). 15 U.S.C. § 1604(a).  In response to this mandate, the Board promulgated "Regulation Z," 12 C.F.R. § 226; it also published its interpretation of Regulation Z in the "Official Staff Interpretation," 12 C.F.R. pt. 226 Supp. I ("the Commentary").  Courts must defer to the Board's interpretation of TILA unless that interpretation is obviously contrary to the statute. *Hauk*, 552 F.3d at 1118.

With regard to preemption, "TILA neither expressly nor impliedly occupies the whole field of regulation." *In re First Alliance Mortgage Co.*, 280 B.R. 246, 251 (C.D. Cal. 2002) (citing *Williams v. First Gov't Mortgage & Investors Corp.*, 176 F.3d 497, 500 (D.C. Cir. 1999) ("*First Gov't Mortgage*")); *Black v. Fin. Freedom Senior Funding Corp.*, 92 Cal.App.4th 917 (2001) (*cert denied sub nom.*). Instead, TILA specifically allows for state law to supplement its enforcement scheme. *See* 15 U.S.C. § 1610(b); *see also In re First Alliance,* 280 B.R. at 250-51; *First Gov't Mortgage*, 176 F.3d at 500 ("Nothing in TILA or its legislative history suggests that Congress intended the Act's disclosure regime to provide the maximum protection to which borrowers are entitled nationwide; states remain free to impose greater protections for borrowers."); *Quesada v. Loan Center of California*, No. 8-177 WBS, 2008 WL 5100241, at *4 (E.D. Cal. Nov. 26, 2008).

## 2. TILA By Its Own Terms Only Preempts State Laws That Require Inconsistent Disclosure Statements and/or Forms

TILA's express preemption provision states in full as follows:

> Except as provided in subsection (e) of this section, this part and parts B and C of this subchapter do not annul, alter, or affect the laws of any State ***relating to the disclosure of information in connection with credit transactions*, *except to the extent that those laws are inconsistent with the provisions of this subchapter*** and then only to the extent of the inconsistency. Upon its own motion or upon the request of any creditor, State or other interested party which is submitted in accordance with procedures prescribed in regulations of the Board, the Board shall determine whether ***any such inconsistency*** exists. If the Board determines that a ***State-required disclosure is inconsistent, creditors located in that State may not make disclosures using the inconsistent term or form***, and shall incur no liability under the law of that State for ***failure to use such term or form***, notwithstanding that such determination is subsequently amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

15 U.S.C. § 1610(a)(emphasis added).

Thus, the statute itself makes it clear that it only preempts state laws requiring disclosure statements or forms that are found to be inconsistent with those required by TILA itself. By discussing preemption only of inconsistent state laws that "relat[e] to the disclosure of information in connection with credit transactions," and by providing for Federal Reserve Board authority to determine "any such inconsistency" based on the

6

presence of an "inconsistent term or form," TILA limits the scope of its own preemptive effect to only state laws that impose such inconsistent disclosure requirements. Accordingly, Defendant's argument that TILA preempts Plaintiffs' UCL claim based on the UCL's longer statute of limitations is legally baseless.

This was precisely the court's holding in rejecting an identical TILA preemption argument applied to identical UCL claims in *Plascencia I*. In *Plascencia I*, the court held that this preemption  argument "finds no support in the text of TILA's 'preemption provision'" because "[t]hat provision applies only to laws 'relating to the disclosure of information in connection with credit transactions,' and preempts those laws only to the extent that the 'terms and forms' mandated by the state are 'inconsistent' with those required by TILA," so that the "preemption provision thus applies only to inconsistencies in the substance of state disclosure requirements." *Id*. at 1099.  With regard to the UCL, *Plascencia I* found that it does not on its face relate to the disclosure of information in connection with credit transactions, does not impose any disclosure requirements different from or inconsistent with TILA, and falls within TILA's savings provision for other types of requirements other than disclosure terms and forms that go beyond TILA's requirements. *Id*.

Finally, with regard to the longer statute of limitations and greater remedies, *Plascencia I* found that the UCL "simply provides an additional level of protection for consumers." *Id*.; *see also Quesada*, 2008 WL 5100241 at *4 (citations); *Amparan v. Plaza Home Mortgage, Inc.*, No. 07-4498 JF, 2008 WL 5245497, at *11-12 (N.D. Cal. Dec. 17, 2008) (holding that only state law claims that are found to be lawful under TILA are preempted) (emphasis added).[1]

---

[1]  *See also Aielo v First Alliance Mortgage Co.,* 280 B.R. 246 (Bankr. C.D. Cal 2002) (holding TILA does not preempt state Unfair Competition Law unless it directly conflicts with TILA); *Fardella v Downey Savings & Loan Association*, No. 00-4393, 2001 WL 492442 (N.D. Cal May 8, 2001); *Knapp v Americredit Financial Services*, 245 F. Supp. 2d 841 (S.D. W.VA 2003); *Heastie v. Community Bank of Greater Peoria,* 690 F. Supp. 716 (N.D. Ill. 1988) (holding TILA does not preempt state UDAP statute unless state provisions are inconsistent with TILA); *Black*, 92 Cal.App.4th 917, *supra*.

In addition to these strong district court decisions, a number of circuits have found that TILA does not preempt state consumer protection statutes. *See First Gov't Mortgage* 176 F.3d at 500 ("Nothing in TILA or its legislative history suggests that Congress intended the Act's disclosure regime to provide the maximum protection to which borrowers are entitled nationwide; states remain free to impose greater protections for borrowers. First Government has identified no way in which the CPPA would defeat TILA's purposes, nor has it suggested how joint applicability of the two statutes would subject it to conflicting obligations."); *see also Magee v. Exxon Corp.*, 135 F.3d 599, 602 (8th Cir. 1998) ("We need go no further than the statutory text to conclude the TILA lacks that extraordinary preemptive power necessary to convert a state-law complaint "into one stating a federal claim for purposes of the well-pleaded complaint rule." [Citation.] On the contrary, the plain terms of the Act show ***Congress intended generally to disclaim preemption***...." (Emphasis added.)); *In re Ferrell*, 358 B.R. 777, 792 (9th Cir. 2006) (reading 15 U.S.C. § 1610 to provide "that TILA does not preempt consistent state consumer protection laws regarding closed-end loan disclosures"); *Wells Fargo Bank West, National Ass'n v. Burns*, 100 Fed.Appx. 599 (8th Cir. 2004) (unpublished) ("...the complete-preemption doctrine does not apply to claims under the TILA"); and *Williams v. Public Finance Corp.*, 598 F.2d 349, 359 (5th Cir. 1979) ("Instead, we think the instant cases involve only parallel federal and state remedies for unrelated violations of federal and state loan laws by clear instances of the extension and transaction of credit. Dual remedies are certainly not alien to our federalism, especially where, as here, the two sovereigns have compatible goals.").

In fact, the Ninth Circuit has recognized that "TILA focuses on disclosure and does not serve as an umbrella statute for consumer protection in real estate transactions." *Grimes v. New Century Mortgage Corp.*, 340 F.3d 1007, 1011 (9th Cir.2003) (McKeown, J., dissenting). This suggests recognition of parallel consumer protections rather than preemption. In fact, "states remain free to impose greater protections for borrowers." *First Gov't Mortgage*, 176 F.3d at 500.

/ / /

Opposition to Motion to Dismiss - 8:09-cv-00914-AHS-RNB

Official Staff Commentary from the Federal Reserve Board also makes clear that TILA does not preempt Plaintiffs' state law claims:

> Comment §226.28(a):
> 1.  General.  There are 3 sets of preemption criteria:
>     1.      applies to the general disclosure and advertising rules of the regulation, and
>     2.      apply to the credit billing provisions. Section 226.28 also provides for Board determinations of preemption.
> 2.  Rules for chapters 1, 2, and 3. The standard for judging whether state laws that cover the types of requirements in chapters 1 (General provisions), 2 (Credit transactions), and 3 (Credit advertising) of the act are inconsistent and therefore preempted, is <u>contradiction of the federal law</u>. Examples of laws that would be preempted include: a.  A state law that requires use of the term "finance charge," but defines the term to include fees that the federal law excludes, or to exclude fees the federal law includes. B. A state law that requires a label such as "nominal annual interest rate" to be used for what the federal law calls the "annual percentage rate."
> 3.      Laws not contradictory to chapters 1, 2, and 3. **Generally, state law requirements that call for the disclosure of items of information not covered by the federal law, <u>or that require more detailed disclosures</u>, do not contradict the federal requirements**. Examples of laws that are not preempted include:  a.  A state law that requires disclosure of the minimum periodic payment for open-end credit, even though not required by § 226.7. B. A state law that requires contracts to contain warnings such as: "Read this contract before you sign. Do not sign if any spaces are left blank. You are entitled to a copy of this contract."

Here, as in *Quesada*, *Plascencia I*, and *Amparan*, Plaintiffs' state law claims do not require Defendant to "'make disclosures' or use 'term[s] or form[s]' that would contradict TILA's requirments." *Quesada*, 2008 WL 5100241 at *5.  And, while Plaintiffs' state law claims provide a longer statute of limitation and offer additional remedies, "these factors alone do not render Plaintiffs' state law claims in consistent with TILA." *Id.* at *5, citing *In re First Alliance*, 280 B.R. at 251 ("A Section 17200 claim merely advances the TILA purpose of meaningful disclosure of credit terms by providing increased penalties for non-disclosure."); *Plascencia I*, 583 F.Supp.2d at 1099 ("[T]he fact that the UCL allows a claim to be brought within four years ... simply provides an additional level of protection for consumers."); *see also Amparan*, 2008 WL 5245497, at *11.

Indeed, TILA "specifically allows for state law to supplement its enforcement scheme." *Quesada*, 2008 WL 5100241 at *5, citing *In re First Alliance*, 280 B.R. at 250-51, and *First Gov't Mortgage*, 176 F.3d at 500 ("Nothing in TILA or its legislative history

suggests that Congress intended the Act's disclosure regime to provide the maximum protection to which borrowers are entitled nationwide; states remain free to impose greater protections for borrowers.")

Here, Plaintiffs' state law claims are merely supplementary to and supportive of - and do not in any way *conflict* with - TILA's purpose "to protect consumers' choice through full disclosure and to guard against the divergent and at times fraudulent practices stemming from the uniformed use of credit." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).

Indeed, even compliance with TILA does not necessarily bar an action for violation of Section 17200 or common law fraud. In *Grimaldi v. Webb*, 668 N.E.2d 39 (Ill. App. 1996), the court found that the fact that the dealer may have complied with TILA did not bar the plaintiff's Consumer Fraud Act claim that the defendants engaged in unfair and deceptive practices. It found that compliance with both TILA and the Consumer Fraud Act was not a physical impossibility and compliance with TILA did not mean there could not be a violation of the Consumer Fraud Act. As observed by the court in *Amparan*, only if a challenged activity is specifically found to be lawful under TILA will conflict preemption apply. *Amparan*, 2008 WL 5245497, at *11-12. That is not the case here.[2]

Thus, the fact that Plaintiffs' state law claims can exist on independent state law grounds does not lead to the conclusion that the claims are inconsistent with TILA. Accordingly, Plaintiffs' state law claims are not in conflict with TILA and therefore TILA does not preempt, or in any way limit, Plaintiffs' state law claims.

/ / /

/ / /

/ / /

/ / /

---

[2]  Defendant argues that *Jordan v. Paul Financial, LLC, et al.*, 2009 WL 1941561 (N.D. Cal. July 1, 2009) stands for the proposition that TILA preempts UCL claims that are time-barred under TILA. Respectfully, that aspect of the *Jordan* opinion is simply wrong, as shown by the authorities discussed above, since the UCL's provision of a longer statute of limitations than TILA does not impose inconsistent disclosure requirements.

1

2

### C.    Field Preemption Under HOLA is Completely Inapplicable Here Because Defendant Is Not a Federal Savings and Loan Association

3

#### 1.    HOLA's History and Purpose

4    The Home Owners' Loan Act of 1933 ("HOLA") was enacted to restore the public's

5    confidence in savings and loan associations at a time when 40 percent of home loans were

6    in default. *See Bank of Am. v. City & County of S.F.* 309 F.3d 551, 559 (9th Cir. 2002) citing

7    *Conference of Federal Sav. and Loan Associations v. Stein*, 604 F.2d 1256, 1257; S.Rep. No.

8    91, 73d Cong., 1st Sess., 2 (1933); H.R.Rep. No. 55, 73 Cong., 1st Sess., 2 (1933)("*Stein*").

9    Congress enacted HOLA in 1933 to regulate the lending practices of federal savings and loan

10    associations. *Fidelity Federal Sav. & Loan Assn. v. De La Cuesta*, 458 U.S. 141, 159, 161

11    (1982). It created the Federal Home Loan Bank Board (Bank Board) to administer HOLA,

12    (*id.* at 144), and it gave the Bank Board broad authority to regulate federal savings and loan

13    associations. *Stein*, 604 F.2d at 1257-1258; *Glendale Fed. Sav. & Loan Ass'n v. Fox* 459

14    F.Supp. 903, 910 (C.D.Cal.1978). In 1989, Congress enacted the Financial Institutions

15    Reform, Recovery and Enforcement Act, which abolished the Bank Board and replaced it

16    with the Office of Thrift Supervision (OTS). *Security Savings and Loan v. Director, OTS*,

17    960 F.2d 1318, 1320-1321 (5th Cir. 1992).

18    OTS issued a regulation addressing preemption of state laws by HOLA and stating

19    that HOLA occupied "the entire field of lending regulation for *federal savings associations*."

20    (Emphasis added.) *See generally* 12 C.F.R. § 560.2. However, OTS also clearly articulated

21    that state laws  "are not preempted to the extent that they only incidentally affect the lending

22    operations of Federal savings associations or are otherwise consistent with the purposes of

23    paragraph (a) of this section."[3] These include contract, commercial, real property, tort and

24

25    _____

26    [3]  Under 12 C.F.R. § 560.2, the OTS clarifies its desire to occupy the field of lending operations as it relates to ***Federal Savings and Loan Associations***. The intent of the OTS is to preempt only those state laws that impose certain requirements onto the Savings and Loans. Section

27    560.2(B) specifically says it only applies to "***state laws purporting to impose requirements***."
Additionally, section (B)(9) relating to Disclosures and Advertising also includes ***state "laws***

28    ***requiring specific statements, information, or other content***." The state laws at issue here do

criminal law.  *See* 12 C.F.R. § 560.2(c).

**2.    HOLA Only Applies to Federal Savings and Loan Associations, and Defendant Is Not a Federal S&L Association**

Further, 12 C.F.R § 560.2(a) makes clear that HOLA only applies to federal savings and loan associations.  "Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. 1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of *federal savings associations*." (Emphasis added.)

As previously conceded, Defendant here is not a federal savings and loan association and thus *Silvas*, *Reyes* and *Nava* are factually distinguishable because the defendants in those cases were federal savings and loan associations.

In particular, in *Silvas v. E\*Trade Mortgage Corp.*, the Ninth Circuit stated:

> Appellants' arguments against preemption are premised on their assertion that conflict preemption analysis applies to the case at bar. We agree, however, with the district court, and hold that *field preemption applies because Appellants' state law claims provide state remedies for violations of federal law in a field preempted entirely by federal law.* The general presumption against preemption is not applicable here, and the relevant regulation is clear – the field of lending regulation of federal savings associations is preempted. *See* 12 C.F.R. § 560.2. Appellants were too late to sue under TILA.  Their end run will not do.

514 F.3d 1001, 1004 (9th Cir. 2008).

Thus, it is clear that the Ninth Circuit's "end run" analysis applies only in the context of field preemption.  The ultimate determinative issue of fact in *Silvas* – was the defendant bank a federal savings association? – was answered in the affirmative in *Silvas* but here the answer is uncontestedly "no."  Therefore, because Defendant is *not* a federal savings and loan association,[4] there can be no HOLA preemption of Plaintiffs' state law claims, including

---

not require any language to be used by Defendant, rather they require that where any business speaks, it must speak the whole truth.

[4] *See, e.g.*, http://www.ots.treas.gov/?p=InstitutionSearch (OTS website demonstrating that Defendant is not identified by the OTS as a registered federal savings association); http://www.homeloancenter.com/AboutUs/StateLicensing.aspx (Defendant itself stating that it is "a direct lender approved by the Department of Housing & Urban Development (FHA), and The Department of Veterans Affairs (VA)" authorized to originate home loans in specified states).

1    Plaintiffs' fraudulent omission claim.

2         *Silvas* did *not* provide a conflict analysis to determine whether a plaintiff's state law

3    claims were preempted under *TILA*. And, in fact, a conflict analysis would favor Plaintiffs

4    because "compliance with both federal and state regulations" is not "a physical

5    impossibility." *See Bank of Am. v. City & County of S.F.*, 309 F.3d at 558. Instead, *Silvas*

6    addressed only HOLA *field* preemption of TILA-related claims made against a *federal*

7    *savings and loan.* The *Silvas* case did not address whether *TILA* (and not HOLA) allegedly

8    preempted the plaintiffs' state law claims.

9         Nevertheless, Defendant urges reliance on *Nava v. Virtual Bank*, No. 08-00069-FCD,

10   2008 WL 2873406, at *7 (E.D. Cal. July 16, 2008). However, a review of that case reveals

11   that the *Nava* court mistakenly relied on *Silvas* to apply field preemption to TILA, when, as

12   discussed above, the *Silvas* Court applied field preemption only to HOLA:

13        Moreover, plaintiff's UCL claim based on violation of TILA is also preempted
          by federal law since its application would supplement TILA by changing
14        TILA's framework. "When federal law preempts a field, it leaves 'no room for
          the States to supplement it.'" *Silvas*, 514 F.3d at 1007 n. 3 (citing *Rice v. Santa
15        Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).
          "When an entire field is preempted, a state may not add a damages remedy
16        unavailable under the federal law." *Id.* (citing *Pub. Util. Dist. No. 1 of Grays
          Harbor County Washington v. IDA-CORP, Inc.*, 379 F.2d 641, 648-49 (9th
17        Cir.2004)). Furthermore, "[a]n attempt by Appellants to go outside the
          congressionally enacted limitation period of TILA is an attempt to enforce a
18        state regulation in an area expressly preempted by federal law." *Id.* FN9

19        FN9. While the *Silvas* court's discussion of the issue is dicta, the court,
          nevertheless, finds it persuasive.
20

21   Thus, *Nava* simply erred in purporting to rely on *Silva*. *Silva* did not address TILA's very

22   limited preemptive scope (discussed in Section III.B above), but rather the scope of HOLA

23   field preemption. The latter plainly is not at issue here, as Defendant is not a federal S&L

24   Association.

25   / / /

26   / / /

27

28

**D.    Plaintiffs Have Adequately Alleged Their UCL Claims**

The UCL defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice." *Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Id.*    In addition, because the statute is written in the disjunctive, a practice is prohibited as "unfair" or "deceptive" even if not "unlawful." *Id.* Notably, the operative legal standard for whether a business practice is unfair or deceptive is "likelihood of deception." *See Williams ex rel. Tabiu v. Gerber Prods Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (California's consumer protection laws "prohibit not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.") (citation omitted).    Plaintiffs have adequately alleged that Defendant violated all three prongs of the UCL, based on its unlawful, unfair and fraudulent business practices in connection with the Option ARM loans it sold to Plaintiffs and other consumers.

A duty to disclose may be imposed by statute. *See, e.g., Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1499 (Ct. App. 2003) (Cal. Ins. Code § 330 imposed duty to disclose); *Lovejoy v. AT&T Corp.*, 119 Cal.App.4th 151, 158-59 (Ct. App. 2004) (Cal. Pub. Util. Code § 2889.5 imposed duty to disclose).    As "the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL," the purchase of a deceptive mortgage that violates TILA is actionable conduct and can give rise to a UCL claim. *Quezada*, 2008 WL 5100241, at *5 (citation omitted).    As Plaintiffs have adequately alleged Defendant's violations of TILA, the UCL claim should not be dismissed.

Setting aside the question of "unlawful" TILA violations, Plaintiffs' Complaint also alleges numerous unfair and deceptive business practices by Defendant, including that Defendant failed to disclose the interest rate actually applicable to Plaintiffs' loans. Cmplt., ¶¶ 15-16.    The Complaint further alleges that Defendant represented that if Plaintiffs made payments based on the payment schedule provided by Defendant, the loan would not be

14

subject to negative amortization, when the Option ARM loan Defendant sold to Plaintiffs was designed to, and did cause, negative amortization to occur.  Cmplt., ¶¶ 15-18. Numerous courts have concluded that plaintiffs challenging Option ARM lenders' practices under the UCL's "unfair" and "fraudulent" prongs have stated claims under the UCL despite defense arguments to the contrary.  *See, e.g., Mandrigues*, 2008 WL 1701948, at *3.  The result should be the same here.

### E.    Plaintiffs Have Adequately Stated a Claim for Fraudulent Omissions

Under California law, the elements of a fraudulent omissions claim are: (1) an omission of material fact, (2) knowledge of falsity (scienter), (3) intent to defraud, (4) justifiable reliance, and (5) resulting damages. *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996). *See also Small v. Fritz Co.*, 30 Cal.4th 167, 173 (2003).  While certain fraud claims are subject to Fed. R. Civ. P. 9(b), Plaintiffs need only plead their claim pursuant to Fed. R. Civ. P. 8(a).  A fraud by omission claim does not need to meet the requirements of Rule 9(b) because it is based on the *absence* of representations, rather than on representations that were made and can be detailed in a pleading.  *See, e.g., Falk v. GMC*, 496 F.Supp.2d 1008, 1098-99 (N.D. Cal. 2007) ("plaintiff in a fraud by omission suit will not be able to specify the time, place and specific content of an omission as precisely as would a plaintiff in a false representation claim. . . . [A] fraud by omission claim can succeed without the same level of specificity required by a normal fraud claim.").

Regardless, Plaintiffs have pled their fraudulent omissions claim with sufficient particularity.  Plaintiffs allege that Defendant failed to disclose and omitted material facts regarding their Option ARM loans, including, (1) that the low 1.000 - 3.000% teaser rate was not the actual interest rate that applied to Plaintiffs' loans, (2) that the initial interest rate was discounted, (3) that the payment rate provided to Plaintiffs and Class members on the TILDS was insufficient to pay both principal and interest, (4) that negative amortization was absolutely certain to occur if Plaintiffs and Class members made payments according to the payment schedule provided by Defendant, and (5) that loss of equity and/or loss of Plaintiffs' and Class  members' residences was substantially certain to occur if Plaintiffs and Class

15

members made payments according to the sole payment schedule provided by Defendant. Cmplt.,  ¶ 14 - 27.  These omissions occurred at or before the time Plaintiffs entered into their loans, and, despite its demand for details, Defendant obviously is aware of the identity of the persons responsible for deciding on which facts to disclose and which to omit in connection the standardized loan transactions at issue here.

### 1.    Defendant's Duty to Disclose Material Facts

To establish fraud based on the nondisclosure of facts, a plaintiff must allege that defendant "was under a legal obligation to disclose [the facts]."  *Lingsh v. Savage*, 213 Cal.App.2d 729, 753 (Ct. App. 1963).  Generally, nondisclosure can constitute actionable fraud when one of four circumstances exist:  (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; and/or (4) the defendant makes partial representations but also suppresses some material facts. *LiMandri v. Judkins* ("Judkins"), 52 Cal.App.4th 326, 336 (Ct. App. 1997).  Moreover, even when there is no fiduciary relationship, a duty to disclose can be grounded on the existence of some other relationship that arises from a transaction between the parties. *Id*. at 337 ("duty to disclose may arise from the relationship between seller and buyer . . . or parties entering into any kind of contractual agreement.").  Accordingly, the Option ARM loan transaction between Plaintiffs and Defendant gave rise to a relationship that created a duty to disclose material facts to Plaintiffs regarding their Option ARM loan.

The Complaint adequately alleges three of the *Judkin* factors, i.e., (1) that Defendant had exclusive knowledge of material facts not known to Plaintiffs, (2) that Defendant actively concealed these material facts, and (3) that Defendant made  partial representations while suppressing some material facts. *See, e.g.*,Cmplt., ¶ 40 - 56.

Based on any of these three grounds for imposition of a duty of disclosure, as alleged, Defendant violated its duty to disclose material facts including but not limited to: (i) the disclosed interest was not the actual interest rate charged on the Note(s), (ii) negative amortization was certain to occur if the sole payment schedule proffered by Defendant was

---

16

followed, and (iii) the initial rate was discounted.  As alleged, Defendant concealed and omitted information which it knew but which was not known to Plaintiffs and the Class members.  Defendant also failed to disclose and/or actively concealed information by making partial, misleading representations to Plaintiffs and the Class members.

In addition, the Complaint specifically alleges that Defendant failed to disclose that the monthly payment amounts listed in the TILDS, which were based on the low 1.000 % - 3.000 % teaser rate listed in the Note (a rate which Defendant did not disclose applied for only thirty days) were insufficient to pay the monthly principal and interest.  Cmplt., ¶ 15. Defendant also failed to disclose that after thirty days, the monthly payment amounts were guaranteed to be insufficient to pay both principal and interest and that, therefore, payments made according to the payment schedule would result in negative amortization. *Id*., ¶¶ 16-18. Instead, Defendant's partial and misleading representations led Plaintiffs to believe that negative amortization was only a possibility, not a certainty.  For example, Plaintiffs' Note states, at ¶ 3(E), "[m]y monthly payment **could be less** than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal". *Id*. (Emphasis added.)    Such conditional, ambiguous statements are not what TILA or Defendant's duty of disclosure required, when Defendant knew that, in fact, adhering to its own listed schedule of payments would *necessarily* result in negative amortization and Plaintiffs and other borrowers, as alleged, had no such knowledge.

Defendant also failed to clearly, conspicuously and truthfully disclose the actual interest rate that would apply to Plaintiffs' loans.  Instead, Defendant provided Plaintiffs and Class Members with Notes that state: "I will pay interest at a yearly rate of [1.000% - 3.000%]." *See* Exhibits 1-2, ¶ 2(A).  However, in the TILDS, the box entitled "ANNUAL PERCENTAGE RATE" describes the APR as "[t]he cost of your credit as a yearly rate" and then lists a much higher APR than the rate listed in the Notes.  Therefore, the listed APR in the Notes were actually in conflict with the APR stated in the TILDS. Cmplt., ¶ 50.

Accordingly, Plaintiffs have adequately alleged that Defendant had a duty to disclose material facts regarding their Option ARM loan, grounded on the Option ARM loan

transaction between the parties, and that Defendant violated that duty.

### 2. Materiality

Materiality means that "had the omitted information been disclosed, [plaintiff] would have been aware of it and behaved differently." *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1093 (1993). The Complaint alleges that had Plaintiffs known the true facts about their Option ARM loan, they would not have purchased it. Cmplt., ¶¶ 18-19, 22, 24, 39, 43. Accordingly, Plaintiffs have sufficiently alleged materiality.

### 3. Defendant's Knowledge of the Fraudulent Omissions and Fraudulent Intent.

"Knowledge of falsity" or scienter is an element of a fraud claim. 5 Witkin, *Summary of Cal. Law* (10th ed. 2005) *Torts*, § 800, p. 1157. *See also Lazar*, 12 Cal.4th at 638. "[T]he state of mind-or scienter-of the Defendants may be alleged generally." *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007).

Here, Plaintiffs alleged that Defendant engaged in a purposeful and fraudulent scheme and that Defendant had "a duty to disclose to Plaintiffs, and each Class Member that: (i) the promised low teaser interest rate was only available for thirty days if at all; (ii) the payment amount for the first two to five years provided to Plaintiffs and Class Members on the TILDS was insufficient to pay both principal and interest; (iii) negative amortization was absolutely certain to occur if Plaintiffs and Class Members made payments according to the payment schedule provided by Defendants; and that (iv) loss of equity and/or loss of Plaintiffs' and Class Members' residence was certain to occur if Plaintiffs and Class Members made payments according to the payment schedule provided by Defendants"; that "Defendants actively concealed these material facts from Plaintiffs and Class Members" and that "Defendants had superior, if not exclusive, knowledge of the concealed facts." Cmplt., ¶ 39. Accordingly, Plaintiffs have adequately alleged Defendant's knowledge of the fraudulent omissions and its intent to deceive Plaintiffs and the other Class members.

/ / /

/ / /

### 4.    Actual Reliance

A plaintiff asserting a fraudulent omissions claim must plead and prove actual reliance to "establish a complete causal relationship between the alleged [fraudulent omission] and the harm claimed to have resulted therefrom." *Mirkin*, 5 Cal.4th at 1092-93 (citation omitted).  However, "[i]t is not . . . necessary that [plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct. . . . It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision." *Engalla v. Permanente Med. Group*, 15 Cal.4th 951, 976-77 (1997).  In addition, for fraudulent omissions claims, a plaintiff may establish this element by showing that "had the omitted information been disclosed, [he or she] would have been aware of it and behaved differently." *Mirkin*, 5 Cal.4th at 1093.

The Complaint alleges that the "omitted information [] was material to Plaintiffs and each Class member in that had the information [been] disclosed, Plaintiff and each Class member would not have entered into the loans. Cmplt., ¶¶ 18-19, 22, 24, 39, 43.  Actual reliance is alleged.

### 5.    Justifiable Reliance - Presumed

In addition to actual reliance, a plaintiff must also show justifiable reliance, *i.e.*, that the "circumstances were such to make it reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332 (Ct. App. 1986).  However, "[e]xcept in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." *Alliance Mortgage Co. v. Rothwell*, 10 Cal.4th 1226, 1239 (1995) (citations omitted).  Moreover, particularly relevant for this case, justifiable reliance may be presumed when "the case can be characterized as one that primarily alleges omissions." *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 667 (9th Cir. 1999).

To determine whether the presumption applies, the court must "analytically

19

characterize [the] action as either primarily a nondisclosure case, or a positive misrepresentation case." *Binder v. Gillespie*,184 F.3d 1059, 1064 (9th Cir. 1999) (citation omitted).  As discussed above, this case primarily involves Defendant's failure to disclose material facts, including, (1) that the low [1-3%] teaser rate was not the actual interest rate that applied to Plaintiffs' loans, (2) that the initial interest rate was discounted, (3) that the payment rate provided to Plaintiffs and Class members on the TILDS was insufficient to pay both principal and interest, (4) that negative amortization was absolutely certain to occur if borrowers made payments according to the payment schedule provided by Defendant, and (5) that loss of equity and/or loss of Plaintiffs' and Class members' residences was substantially certain to occur if they made payments according to the payment schedule provided by Defendant.  SAC, ¶ 124-24.  Thus, reliance may be presumed.

Defendant's Motion ignores a  recent decision that certified a class based on similar fraudulent omissions and UCL allegations.  *See Plascencia II*, **8-11.  The *Plascencia II* decision was the first to decide class certification of these allegations under the California Supreme Court's May 18, 2009 decision, *In re Tobacco II Cases*, 46 Cal.4th 298 (2009).

Plaintiffs can readily show reliance under the *Plascencia II* analysis, which confirms that reliance can be presumed where there are material fraudulent omissions:

> However, courts have recognized that this element, which is often phrased in terms of reliance or causation, may be presumed in the case of a material fraudulent omission. As the Supreme Court has held, in cases "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery." *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Rather, "[a]ll that is necessary is that the facts withheld be material," in the sense that a reasonable person "might have considered them important" in making his or her decision. *Id.* at 153-54. Similarly, the California Supreme Court has held that class certification is appropriate even where there may be individual issues of reliance because "it is not necessary to show reliance upon false representations by direct evidence." *Vasquez v. Superior Court*, 4 Cal.3d 800, 814, 94 Cal.Rptr. 796, 484 P.2d 964 (1974). Rather, "reliance upon alleged false representations may be inferred from the circumstances attending the transaction which oftentimes afford much stronger and more satisfactory evidence of the inducement which prompted the party defrauded to enter into the contract than his direct testimony to the same effect." *Id.* (internal quotation marks omitted).

*Plascencia II*, at * 9.  *See also Yokoyama,* 2009 WL 2634770, at *5 (reversing denial of class certification, the Ninth Circuit stating: "These plaintiffs base their lawsuit only on what

Midland did not disclose to them in its forms. The jury will not have to determine whether each plaintiff subjectively relied on the omissions, but will instead have to determine only whether those omissions were likely to deceive a reasonable person. This does not involve an individualized inquiry.")

Unquestionably, the actual interest rate, the actual APR, the fact that the teaser rate lasted for only a month, and the fact that negative amortization was certain to occur if the borrower followed Defendant's proffered payment schedule would be material facts to any borrower considering a loan transaction, and the omission of such facts could very well deceive a reasonable person, as allegedly occurred here. *Plascencia II* at *9. ("Here, a jury may find that the initial interest rate and negative amortization features of the loans were material in the sense that a reasonable person would have wanted to know about them. ***The jury thus may presume that class members would not have agreed to purchase their loans if Defendants had clearly disclosed that the initial one percent rate was ephemeral and that negative amortization was certain to occur if only the minimum payments were made.***") (Emphasis added.)

The *Plascencia II* court also found that certification was proper for plaintiff's UCL claims under the "liberal approach to the reliance inquiry" set out in *In re Tobacco II Cases*, 46 Cal.4th 298, 326-27 (2009). Quoting from *In re Tobacco II Cases*, the court stated:

> "While a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was the only cause. It is not necessary that the plaintiff's reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor influencing his conduct. It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision. Moreover, a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material. *A misrepresentation is judged to be "material" if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question*, and as such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it."

*Plascencia II*, at * 10 (emphasis added).

Just as with the fraud analysis, the actual interest rate, the actual APR, and the facts

that the teaser rate lasted for only a month and that negative amortization was certain to occur are material, and the omission of such material facts, as alleged, could be found to be "fraudulent" and "deceptive" under the UCL.  Certainly, a "reasonable man would attach importance to its existence or nonexistence in determining" whether to enter into a mortgage loan. *Id.*  Plaintiffs intend to show with "generalized evidence" that Defendant's non-disclosure of such information was "conduct [that] was 'likely to deceive' members of the public."  *Id.*  That is all Plaintiffs need show to establish liability under the "fraudulent" prong of the UCL.

In sum, Plaintiffs have sufficiently alleged both actual and presumed reliance, to the extent required by their claims.[5]  Defendants' contrary arguments should be rejected.

### F.    Plaintiffs Have Properly Pled a Breach of Contract Claim

"Resolution of contractual terms on a motion to dismiss is proper if the terms of the contract are unambiguous." *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000).  Contract provisions are ambiguous when they are capable of two or more reasonable interpretations. *Muzzi v. Bel Air Mart*, 171 Cal.App.4th 456, 463 (Cal.App. 3 Dist., 2009); *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal.4th 854,  867 (1993).  In addition, language in a contract must be interpreted as a whole and in the specific circumstances of the case. *Bank of the West v. Superior Court*,  2 Cal.4th 1254, 1265 (1992).  If the contract language "leaves doubt as to the parties' intent," the motion to dismiss must be denied.  *Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986).

Here, Plaintiffs have adequately alleged their breach of contract claim against Defendant because (1) the Note's provisions regarding the interest rate are ambiguous, and (2) the Note's provisions regarding how payments are to be applied are ambiguous.

In a case involving similar allegations and loan documents, the Hon. S. James Otero refused to dismiss the plaintiffs' breach of contract claim, finding that the Note's provisions

---

[5]  Violations of TILA or any other state law requiring Defendant to disclose the facts which were not disclosed is all that Plaintiffs must demonstrate under the  UCL's "unlawful" prong. Issues relating to deception are irrelevant.

1   regarding the interest rate and how payments were to be applied were ambiguous. *See, e.g.,*

2   *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F.Supp.2d 1034, 1041-42 (C.D. Cal.

3   2008). The court found that Section 2 of the Note at issue stated that plaintiffs would pay

4   interest at a yearly rate of 1% but that this rate "may" change pursuant to Section 4, which

5   stated that the interest rate would change on the first payment due date and that it would

6   never be lower than 3.500%. Accordingly, Section 4 was inconsistent with Section 2

7   because one stated that a change in the interest rate was a mere possibility while the other

8   stated that it was an absolute certainty. *Id*. "Because the Court is to strive to 'give effect to

9   every provision' of a contract . . . the Court concludes that the Note is reasonably susceptible

10  to the interpretation that Section 4 applies and to the interpretation that Section 4 may not

11  apply." *Id*. at 1040-41.

12       Similarly, here, Plaintiffs' Note states, at 2(A), "I will pay interest at a yearly rate of

13  [1-3%]. The interest rate I will pay may change." SAC, Ex. 1 at 1. The Note then states,

14  at 2(B), "The interest rate I will pay may change on the 1st day of April 1, 2006, and on that

15  day every month thereafter. Each date on which my interest rate could change is called an

16  Interest Rate Change Date." *Id*. Then, at 2(D), the Note states, "Beginning with the first

17  Interest Rate Change Date, my adjustable interest rate will be based on an Index." *Id*. And,

18  at 2(D), the Note states, "Before each Interest Rate Change Date, the Note Holder will

19  calculate my new interest rate by adding . . . 3.500% ("Margin") to the Current Index." *Id*.

20  Thus, the Note's interest rate provisions are ambiguous because 2(A) and (B) state that the

21  interest rate "may" change while 2(C) and (D) indicate that the rate will definitely change.

22       Also, Plaintiffs' Note states, at 3(A), "I will make these payments every month until

23  I have paid all the Principal and Interest." SAC, Ex. 1 at 2. However, the Note states, at

24  3(D), that the Payment Cap "applies only to the Principal and Interest payment." *Id*. And,

25  at 7(A), entitled "BORROWER'S FAILURE TO PAY AS REQUIRED," states "[t]he

26  amount of the charge will be 5.000% of my overdue payment of Principal and Interest." *Id*.

27  Accordingly, as in *Monaco*, a borrower here could reasonably have concluded that his or her

28  monthly payments would be applied to both principal and interest. Therefore, because

Defendant drafted a Note that creates uncertainty about its provisions, thereby precluding the Court from ascertaining the intent of the parties solely on the basis of the written instrument, Defendant's motion to dismiss this claim should be denied.    *Monaco*, 554 F.Supp.2d at 1042 n. 11.  *See also Mandrigues*, 2008 WL 1701948, at *3 (sustaining plaintiffs' breach of contract claim).

**G.    Plaintiffs Have Properly Pled a Valid Claim for Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing.**

"[U]nder California law, all contracts have an implied covenant of good faith and fair dealing." *In re Vylene Enters., Inc.*, 90 F.3d 1472, 1477 (9th Cir. 1996) (citation omitted). The covenant "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat'l Inc.*, 24 Cal.4th 317, 349 (2000).  Tort recovery for breach of contract is permissible where there is a violation of "an independent duty arising from principles of tort law." *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.4th 85, 102 (1995) (citation omitted).  In cases involving similar allegations and loan documents, numerous other courts have denied defendants' motions to dismiss this claim. *See, e.g., Mandrigues v. World Savings, Inc.*, No. C 07-04497, 2008 WL 1701948 (N.D. Cal. Apr. 9, 2008), 2008 WL 1701948, at *3; *Monaco*, 554 F.Supp. 2d at 1040-42.

Here, Plaintiffs have adequately alleged that Defendant breached an independent legal duty arising from principles of tort law – the legal duty owed to Plaintiffs to disclose important material facts relating to their Option ARM loan, *e.g*., the fraudulent omissions discussed above.  Accordingly, Plaintiffs' claim should be sustained.

/ / /

/ / /

/ / /

/ / /

IV.    **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.

DATED: September 14, 2009                    **SPIRO MOSS LLP**
                                             **ARBOGAST & BERNS LLP**


                                 By:    */s/ J. Mark Moore*
                                        J. Mark Moore
                                        Ira Spiro
                                        of SPIRO MOSS LLP

                                        David M. Arbogast
                                        Jeffrey K. Berns
                                        of ARBOGAST & BERNS LLP

                                        Attorneys for Plaintiffs and all others
                                        Similarly Situated