1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2  Including Professional Corporations
   ROBERT S. BEALL, Cal. Bar No. 132016
3  rbeall@sheppardmullin.com
   JONATHAN P. HERSEY, Cal. Bar No. 189240
4  jhersey@sheppardmullin.com
   ISAIAH Z. WEEDN, Cal. Bar No. 229111
5  iweedn@sheppardmullin.com
   MICHAEL A. WALLIN, Cal. Bar No. 240344
6  mwallin@sheppardmullin.com
   650 Town Center Drive, 4th Floor
7  Costa Mesa, California  92626-1993
   Telephone:  714-513-5100
8  Facsimile:   714-513-5130

9  Attorneys for Defendants
   HOME LOAN CENTER, INC., d/b/a
10 LENDINGTREE LOANS, a California
   Corporation

11

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14

15 CLARENCE E. BOSCHMA,            Case No. SA CV09-00914 AHS (RNBx)
   SHIRLEY C. BOSCHMA, and
16 SHARON ROBISON on behalf of
   themselves and others similarly    **REPLY IN SUPPORT OF**
17 situated,                          **DEFENDANT'S MOTION TO**
                                      **DISMISS PLAINTIFFS'**
18              Plaintiffs,           **COMPLAINT PURSUANT TO FED.**
                                      **R. CIV. P. 12(b)(6)**
19      v.

20 HOME LOAN CENTER, INC., d/b/a
   LENDINGTREE LOANS, a             Date:       September 28, 2009
21 California Corporation; and DOES 1   Time:       10:00 a.m.
   through 200, inclusive,           Judge:      Hon. Alicemarie H. Stotler
22              Defendants.          Courtroom:  10A

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................1

II.     HLC'S COMPLIANCE WITH TILA DEFEATS PLAINTIFFS' UCL
        AND FRAUDULENT OMISSIONS CLAIMS ................................................2

III.    THE UCL AND FRAUDULENT OMISSIONS CLAIMS ARE
        PREEMPTED BECAUSE THEY ARE INCONSISTENT WITH TILA ........6

        A.     Plaintiffs Would Require Lenders To Make Disclosures
               Inconsistent With TILA ..........................................................................6

        B.     The Artificially Expanded Scope of Liability and Remedies That
               Plaintiff Seek Under The UCL And Common Law Conflict With
               TILA ........................................................................................................7

IV.     PLAINTIFFS HAVE NOT ALLEGED, AND CANNOT ALLEGE, A
        COMMON LAW DUTY TO DISCLOSE OR JUSTIFIABLE
        RELIANCE ......................................................................................................11

        A.     Plaintiffs Cannot Allege Any Common Law Duty Requiring
               HLC To Have Made Any More Disclosures Than Those
               Required By TILA ................................................................................11

        B.     No Reliance. ..........................................................................................12

V.      THE CONTRACT AND IMPLIED COVENANT CLAIMS ARE
        DEFECTIVE AS A MATTER OF LAW ......................................................13

VI.     CONCLUSION ...............................................................................................16

<u>TABLE OF AUTHORITIES</u>

<u>Pages</u>

<u>Cases</u>

<u>Bigverdi, et al. v. Countrywide Bank FSB, et al.,</u>
    Case No. CV 07-3454 (C.D. Cal.)................................................................8, 9

<u>Byars v. SCME Mortgage Bankers, Inc.,</u>
    109 Cal. App. 4th 1134 (2003)........................................................................13

<u>Careau & Co. v. Security Pac. Bus. Credit, Inc.,</u>
    222 Cal. App. 3d 1371 (1990)........................................................................16

<u>Carma Dev. (Cal.), Inc. v. Marathon Dev. Cal., Inc.,</u>
    2 Cal. 4th 342 (1992)......................................................................................15

<u>Carroll v. Homecomings Financial, LLC,</u>
    Case No. CV 07-3775-AHS (FMOx)............................................................3, 5

<u>Caterpillar v. Williams,</u>
    482 U.S. 386 (1987) .........................................................................................9

<u>Doe v. Texaco, Inc.,</u>
    2006 WL 2053504 (N.D. Cal. 2006)..............................................................12

<u>Evans v. Chase Manhattan Bank USA, N.A.,</u>
    2006 WL 213740 (N.D. Cal., Jan. 27, 2006) .................................................13

<u>Fox v. Pollack,</u>
    181 Cal. App. 3d 954 (1986)..........................................................................12

<u>Gaming Corp. of America v. Dorsey & Whitney,</u>
    88 F.3d 536 (8th Cir. 1996)..............................................................................9

<u>Grimaldi v. Webb,</u>
    668 N.E.2d 39 (Ill. App. 1996) .........................................................................5

<u>Hauk v. JP Morgan Chase Bank USA,</u>
    552 F.3d 1114 (9th Cir. Jan. 23, 2009) .........................................................3, 5

<u>Hurt v. Dow Chemical Co.,</u>
    963 F.2d 1142 (8th Cir. 1992)..........................................................................9

In re First Alliance Mortgage Co.,
    280 B.R. 246 (C.D. Cal. 2002)..........................................................................9

Jordan v. Paul Financial, LLC. et al.,
    2009 WL 1941561 (N.D. Cal. July 1, 2009)..................................................10

Laster v. T-Mobile USA Inc.,
    407 F. Supp. 2d 1181 (S.D. Cal. 2005) .................................................12, 13

LiMandri v. Judkins,
    52 Cal. App. 4th 326 (1997).........................................................................11

Lippman v. Sears, Roebuck & Co.,
    44 Cal. 2d 136 (1955).................................................................................16

Magee v. Exxon Corp.,
    135 F.3d 599 (8th Cir. 1998)........................................................................9

Michelson v. Camp,
    72 Cal. App. 4th 955 (1999).........................................................................12

Monaco v. Bear Stearns Residential Mortg. Corp.,
    554 F. Supp. 2d 1034 (C.D. Cal., Jan. 2008) .................................................9

Nava v. VirtualBank,
    2008 WL 2873406 (E.D. Cal. Jul. 16, 2008) ..............................................8, 9

Oaks Mgm't Corp. v. Superior Court,
    145 Cal. App. 4th 453 (2006).......................................................................11

Plascencia v. Lending 1st Mortgage,
    583 F. Supp. 2d 1090 (N.D. Cal. 2008) .........................................................7

Quezada v. Loan Center of Ca., Inc.,
    2008 WL 5100241 (E.D. Cal. Nov. 26, 2008) ................................................7

Reyes v. Downey Savings and Loan Ass'n, F.A.,
    541 F. Supp. 2d 1108 (C.D. Cal. Mar. 29, 2008)...........................................7

Silvas v. E*Trade Mortgage Corp.,
    421 F. Supp. 2d 1315 (S.D. Cal. 2006),
    aff''d, 514 F.3d 1001 (9th Cir. 2008)......................................................10, 11

Smith v. Jackson,
    84 F.3d 1213 (9th Cir. 1996)...........................................................................14

Sprewell v. Golden State Warriors,
    266 F.3d 979 (9th Cir. 2001)...........................................................................13

Stewart Title Co. v. Herbert,
    96 Cal. Rptr. 631 (1970)..................................................................................14

Statutes

15 U.S.C. §§ 1601 et seq. ...................................................................................1

15 U.S.C. §§ 1603 - 1640 ...................................................................................7

Home Owners' Loan Act of 1933 ("HOLA")..............................................10, 11

Regulations

12 C.F.R. § 226.18(g) ..........................................................................................4

12 C.F.R. § 226.19(b)(2) ......................................................................................3

# I.

## INTRODUCTION

The Court's prior ruling could not have been clearer: "No TILA, no 17200." Yet despite that ruling, Plaintiffs' *sixth* complaint tries to assert claims for fraudulent omissions in violation of California's Unfair Competition Law ("UCL") and common law, while purposefully attempting to avoid alleging a claim for violations of TILA that give rise to federal subject matter jurisdiction. That pleading tactic fails on all accounts.

To begin, and despite what Plaintiffs argue in their pending Motion to Remand, their claims are based on TILA. Plaintiffs admit as much in the Opposition to the Motion to Dismiss when they state that, "Defendant's material omission is unlawful ***because it involves information required to be disclosed by the federal Truth In Lending Act***, 15 U.S.C. §§ 1601 et seq." Opp., at 5:9-12 (emphasis added). Indeed, TILA is the ***only*** law Plaintiffs cite in support of their UCL claim, which Plaintiffs concede cannot survive without proof of violation of some other "borrowed" law. See Opp., at 14:16-23. Plaintiffs' dependence on TILA demonstrates that their claims "arise under" federal law, and that the Court therefore has proper jurisdiction to resolve this dispute.

Plaintiffs' attempt to plead fraudulent omission solely in violation of state law is merely a sham to avoid federal jurisdiction. It could lead to the absurd result where a defendant, such as HLC, fully complies with all federally-mandated disclosure requirements but is nonetheless found liable for failing to make some unspecified additional disclosures that contradict TILA. That is precisely the reason why TILA preempts Plaintiffs' state law claims.

Of course, Plaintiffs' fraudulent omission and unfair competition claims are based on purported violations of TILA that are not violations at all. The loan documents complied in all respects with TILA. Plaintiffs were expressly informed about the actual APR and interest rate, that their initial rate is discounted

but will adjust after a certain period of time, and that if they elect the "option" of making a monthly payment that does not cover the full amount of interest due, the difference "will" be added to the loan principal balance. There are no other alleged failures to disclose, and the loan documents flatly disprove each of the supposed omissions asserted in the complaint.

The breach of contract and breach of the implied covenant of good faith and fair dealing claims fail for similar reasons. The loan documents expressly disclosed, and permitted, all interest rate adjustments and negative amortization about which Plaintiffs complain. These were arms-length transactions and the relationship between HLC and the Plaintiffs is defined solely by the terms of the contracts. HLC owes no fiduciary duty to Plaintiffs, and quite simply, there has been no breach of any express or implied terms of any of the loan agreements.

No amount of additional amendments could cure the defects with Plaintiffs' causes of action. The Court has proper jurisdiction and should dismiss the complaint in its entirety with prejudice.

## II.

## HLC'S COMPLIANCE WITH TILA DEFEATS PLAINTIFFS' UCL AND FRAUDULENT OMISSIONS CLAIMS

Plaintiffs devote a single page (page 14) in their Opposition to explaining why the Complaint supposedly alleges a UCL claim. Their cursory attention to that claim not only misses the mark, it also demonstrates the appropriateness of the Court's subject matter jurisdiction.

Plaintiffs begin by arguing, correctly, that section 17200 "borrows" violations of other laws and treats them as independently actionable unlawful practices. Opp., at 14:4-6. But despite contending in their Motion to Remand that they are *not* alleging a TILA violation, the *only* law that Plaintiffs claim that HLC violated is TILA. Opp., at 14:19-24 (arguing that the UCL claim should not be dismissed because "plaintiffs have alleged Defendants' violations of TILA….").

The fact that the UCL claim is expressly hinged on the alleged violation of TILA certainly defeats the Motion to Remand.  It does not, however, save the defective UCL claim.

HLC dedicated a significant portion of its Motion to Dismiss to showing why the Notes, TILDS and other loan documents comply in all respects with TILA, and how such compliance affords a "safe-harbor" from Plaintiffs' UCL and fraud claims.  See Motion, at 6-15.  This line of argument is supported by, among other cases, the Ninth Circuit's decision in Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114 (9th Cir. Jan. 23, 2009), and this Court's decision in Carroll v. Homecomings Financial, LLC, Case No. CV 07-3775-AHS (FMOx).  Plaintiffs simply ignore these arguments and this authority.

In the "Introduction" to their Opposition, Plaintiffs state that: "Defendant's argument that it complied with TILA is entirely without merit.  As demonstrated below, Defendant's incomplete and conflicting disclosures do not comply with TILA in spirit or in fact."  Opp., at 1:18-20.  But there is nothing "below" in the Opposition to support that claim.  Plaintiffs ignore the express terms of the loan documents identified by HLC (see Motion, at 9-13) and reiterate their baseless conclusion that HLC supposedly failed to disclose the "actual interest rate" applicable to the loans, that the initial interest rate was discounted, and that negative amortization would occur.  Opp., at 14:24-15:2, and 15:20-16:2.  The loan documents prove otherwise.

First, the loan documents disclose the proper APR and interest rate. The rate reflected in the TILDS is the *APR*, which HLC is required to label as such and disclose in a manner that is "more conspicuous than any other disclosure, except the creditor's identity."  See 12 C.F.R. § 226.19(b)(2) ("the disclosed annual percentage rate should be a composite rate based on the rate in effect during the initial period and the rate that is the basis of the variable-rate feature for the remainder of the term").  HLC is not permitted to identify any rate other than the

1    APR in the TILDS.  The TILDS attached to the Complaint contain both of these

2    statements and therefore satisfy the TILA's interest-rate disclosure requirements.

3    Comp., Exs. 1 and 2.  HLC's disclosure of the payment schedules in the TILDS was

4    fully compliant with the TILA.  Reg. Z section 226.18(g) explains that a creditor

5    must disclose the "number, amounts, and timing of payments scheduled to repay the

6    obligation."  12 C.F.R. § 226.18(g).  The TILDS in this case do just that.  Each

7    indicates an initial payment amount applicable for the first twelve months (until the

8    first "Payment Change Date"), followed by twelve months of payments that are 7.5

9    percent higher than the preceding twelve months (reflecting the cap on payment

10   increases provided in the Notes), and so forth.  Comp., Exs. 1 & 2.

11              <u>Second, the loan documents disclose the occurrence of negative</u>

12   <u>amortization if Plaintiffs chose not to pay the full interest</u>.  For example, the opening

13   paragraph of the Program Disclosure states, in all caps, "THIS LOAN ALLOWS

14   FOR NEGATIVE AMORTIZATION."  Comp., Exs. 1 and 2 at p. 8.  Under the

15   section labeled "Deferred Interest" – which the Program Disclosures specifically

16   note is "also known as Negative Amortization" – the Program Disclosures explain

17   the circumstances under which negative amortization might occur.  <u>Id</u>. at p. 9.  The

18   section also contains the following express statement:

19              If the interest due on your loan for a month is more than
              the required monthly payment, the entire payment will be
20              applied to interest and any unpaid interest will be added to
              the loan balance.  The interest for the next month is then
21              calculated on the new increased loan balance.

22   <u>Id</u>.

23              The Notes, though not required to, contain even more disclosures

24   concerning negative amortization.  The Notes provide:

25              (E) Additions to My Unpaid Principal
              My monthly payment could be less than the amount of the
26              interest portion of the monthly payment that would be
              sufficient to repay the unpaid principal I owe at the
27              monthly payment date in full on the Maturity Date in
              substantially equal payments. If so, each month that my
28              monthly payment is less than the interest portion, the Note

> Holder **will** subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also **will** add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to principal will be the rate required by Section 2 above.

Notes, at § 3(E) ((attached as Exs. 1 & 2 to Compl.) (emphasis added)).

<u>Third, the loan documents disclose the initial, discounted interest rate</u>. In the section labeled "How Your Interest Rate And Payment Are Determined," the Program Disclosures contain the following clear statement regarding the discounted rate:

> Your initial Interest Rate will not be equal to an Index Rate plus a Margin.  If the initial Interest Rate is below the then-current Index plus Margin (the 'fully-indexed rate'), then the initial Interest Rate will be a 'Discounted' Interest Rate.

Compl., Exs. 1 and 2, at p. 8.

Instead of addressing these disclosures, Plaintiffs just ignore them and, in passing, cite to the Appellate Court of Illinois's decision in <u>Grimaldi v. Webb</u>, 668 N.E.2d 39 (Ill. App. 1996) for the proposition that "compliance with TILA does not necessarily bar an action for violation of Section 17200 or common law fraud." Opp., at 10:8-14.  With all due respect to the Appellate Court of Illinois, the Ninth Circuit's decision in <u>Hauk</u> and this Court's decision in <u>Carroll</u> are clearly controlling precedent in this case.  Yet the Opposition does not mention <u>Carroll</u> at all and only mentions <u>Hauk</u> once – for the proposition that courts must construe TILA "liberally in favor of the consumer and require absolute compliance by creditors."  <u>See</u> Opp., at 5:19-22.

Plaintiffs' silence speaks volumes.  The UCL and fraud claims are dead letters as a result of HLC's indisputable TILA compliance and because all disclosures were made.  The first and second causes of action, even if they were not preempted by TILA as discussed below, should be dismissed with prejudice based

-5-

1   on the plain and express terms of the loan documents that Plaintiffs received and

2   cannot ignore.

### III.

### THE UCL AND FRAUDULENT OMISSIONS CLAIMS ARE PREEMPTED

### BECAUSE THEY ARE INCONSISTENT WITH TILA

6          Plaintiffs grant that any state law inconsistent with TILA is preempted,

7   and argue instead that their UCL and fraud claims are not impermissibly

8   inconsistent.  Opp., at 6-7:24-4.  Their argument is incorrect.

9   **A.**     **Plaintiffs Would Require Lenders To Make Disclosures Inconsistent**

10          **With TILA**

11         The Complaint and Plaintiffs' Opposition reveal that the UCL and

12  fraudulent omission causes of action are inconsistent with TILA.  For example,

13  Plaintiffs complain that Defendant's disclosures somehow contain fraudulent

14  omissions because the TILA disclosures did not state that "negative amortization

15  was absolutely certain to occur."  Opp., at 15:25-26.  But negative amortization was

16  not absolutely certain to occur.  It would only occur, as Plaintiffs were informed, if

17  they exercised the "option" of not paying the full amount of interest due.  As

18  described above, the loan documents expressly state that payments will be applied to

19  interest first, then to principal.  Motion, at 11-12.  And if the payments do not cover

20  the interest, the balance "will" be applied to the principal.  In this case, the precise

21  information that Plaintiffs claim was not disclosed, actually was disclosed.  To

22  require the loan documents to state that negative amortization will occur even if

23  Plaintiffs paid the full amount of the interest would be incorrect.

24         Similarly, Plaintiffs allege HLC failed to adequately disclose "that the

25  initial interest rate was discounted.  Opp., at 15:23-24.  Once again, the Motion

26  provides details concerning TILA's disclosure requirements regarding discounted

27  initial interest rates as well as HLC's compliance with the requirements.  Motion, at

28  12-13.  Finally, Plaintiffs allege that HLC failed to disclose the "actual interest rate

REPLY IN SUPPORT OF
MOTION TO DISMISS

that applied to Plaintiffs' loans."  Opp., at 15:22-23.  However, as noted in the

Motion, TILA has very specific requirements concerning the interest rate that must

be disclosed in the TILDS – a composite interest rate – and HLC followed those

rules to a tee.  Motion, at 13.

        If Plaintiffs prevailed on their claims, the practical effect would be to

require lenders to make untruthful disclosures, or disclosures that do not comply

HLC to provide different or additional disclosures inconsistent with TILA's closely-

written disclosure scheme is inconsistent with TILA and is therefore preempted.

See Reyes v. Downey Savings and Loan Ass'n, F.A., 541 F. Supp. 2d 1108 (C.D.

Cal. Mar. 29, 2008) (UCL claim predicated on violations of TILA preempted by

federal law).

**B.**    **The Artificially Expanded Scope of Liability and Remedies That Plaintiff Seek Under The UCL And Common Law Conflict With TILA**

        Another separate reason for preemption of Plaintiffs' UCL and fraud

claims is the fact that Plaintiffs are, through these claims, seeking to add to TILA's

remedies, extend the limited statute of limitations period, and circumvent the

$500,000 cap on statutory damages for class actions.  See 15 U.S.C. § 1610(a).

Private lawsuits that attempt to recover for alleged TILA violations occurring more

than one year prior to filing, and to obtain class relief for those violations in an

amount more than $500,000, are flatly inconsistent with TILA.  See 15 U.S.C.

§§ 1603, 1604(b), (f) & (g) , 1605(f), 1606(c) & (e), 1631(d), 1633, 1635, and 1640.

        The centerpieces of Plaintiffs' argument that their end-run around

TILA's statute of limitations does not conflict with TILA are Plascencia v. Lending

1st Mortgage, 583 F. Supp. 2d 1090, 1097 (N.D. Cal. 2008) and Quezada v. Loan

Center of Ca., Inc., 2008 WL 5100241 (E.D. Cal. Nov. 26, 2008).  The courts in

those cases declined to find TILA preemption based upon the expanded limitations

period and additional remedies available under the UCL.  Quezada, 2008 WL

5100241, at *5; Plascencia, 585 F. Supp. 2d at 1099.  However, this Court has

1   already considered and correctly rejected the reasoning underlying those rulings.  In

2   <u>Bigverdi, et al. v. Countrywide Bank FSB, et al.</u>, Case No. CV 07-3454, the

3   defendants argued that the plaintiffs' UCL claim was preempted by the detailed,

4   statutory disclosure regime and remedies of TILA:

> TILA provides significant federal regulation in the area of
> consumer credit disclosures.  Among TILA's provisions
> are ones that provide for remedies that carefully balance
> the rights and interests of consumers and creditors –
> chiefly, actual damages and statutory damages for certain
> types of violations, a class action cap of $500,000, loan
> rescission on an individual basis for a more limited range
> of disclosure violations, and a complex web of safe
> harbors and exceptions.  15 U.S.C. §§ 1603, 1604(b), (f),
> & (g), 1605(f), 1606(c) & (e),, 1631(d), 1633, 1635, and
> 1640.  It is well constructed as an integral part of the entire
> statutory scheme.  *Bowen v. First Financial Services, Inc.*,
> 2333 F.3d 1331, 1337 (11th Cir. 2003).
> . . . .
>
> Plaintiffs' attempt to bootstrap a UCL claim on top of
> TILA, in order to greatly expand and distort the federal
> statute's closely-drawn remedial scheme, is inconsistent
> with TILA.

15  <u>Bigverdi</u> Defs.' Partial Mtn. to Dismiss First Amend. Compl., at 11:11-25.  The

16  Court agreed, and dismissed the <u>Bigverdi</u> plaintiffs' claim for alleged violation of

17  the UCL "[f]or the reasons urged by defendants."  <u>See</u> Jan. 8, 2008 Order Granting

18  Defs.' Mtn. to Dismiss, at 2.

19          This Court's decision in <u>Bigverdi</u> was mirrored in <u>Nava v. VirtualBank</u>,

20  2008 WL 2873406 (E.D. Cal. Jul. 16, 2008), where the district court dismissed a

21  fraudulent omissions claim like Plaintiffs' here as preempted by TILA.  As in

22  <u>Bigverdi</u> and the instant case, the fraudulent omissions claim in <u>Nava</u> was

23  predicated on the theory that the defendant-lender had a duty to disclose certain loan

24  terms under TILA.  <u>Id</u>. at *8.  And, as in <u>Bigverdi</u> and this case, the borrowers in

25  <u>Nava</u> argued that preemption did not apply because "fraudulent omissions is a state

26  law of general applicability" not inconsistent with TILA.  <u>Id</u>.  The <u>Nava</u> court

27  rejected that argument, concluding preemption applied because "plaintiff was

28

1    attempting to alter both the damages available under TILA and the statute of

2    limitations period for civil damages under TILA." Id.

3           The same reasoning and rulings in Bigverdi and Nava should apply

4    here.  Plaintiffs cannot expand the scope of potential liability under TILA, or its

5    well-defined remedies, by simply alleging that the UCL requires some undefined

6    disclosures in addition to those carefully specified by TILA.  Neither of the other

7    main cases upon which Plaintiffs rely – In re First Alliance Mortgage Co., 280 B.R.

8    246 (C.D. Cal. 2002) and Monaco v. Bear Stearns Residential Mortg. Corp., 554 F.

9    Supp. 2d 1034 (C.D. Cal., Jan. 2008) – compel a different conclusion.  Neither case

10   addresses Plaintiffs' attempt to expand the TILA limitations period or their

11   inconsistent attempt to remove TILA's statutory cap on class action damages.

12   Furthermore, neither case gives due regard to the comprehensive federal regulatory

13   scheme governed by TILA.

14          Moreover, Magee v. Exxon Corp., 135 F.3d 599 (8th Cir. 1998) which

15   Plaintiffs cite for the proposition that TILA does not preempt state law (see Opp., at

16   13: 18-22), deals not with the typical preemption defense addressed in this case, but

17   with the extraordinary doctrine of complete preemption wherein a preempted state

18   law claim may automatically be removed to federal court because it "is considered,

19   from its inception, a federal claim, and therefore arises under federal law." Id. at

20   601 (quoting Caterpillar v. Williams, 482 U.S. 386, 393 (1987)); see also Hurt v.

21   Dow Chemical Co., 963 F.2d 1142, 1144 (8th Cir. 1992) ("It is not just that a

22   preemption defense is present: the [pleaded state-law] claim is completely federal

23   from the beginning.").  Unlike the typical preemption defense implicated in this

24   case, "[t]he complete preemption doctrine applies only when a federal statute

25   possesses '"extraordinary pre-emptive power," a conclusion courts reach

26   reluctantly.' Id. (quoting Gaming Corp. of America v. Dorsey & Whitney, 88 F.3d

27   536, 543 (8th Cir. 1996)).  That is not the case here, where the action is already

28   properly before this Court.

REPLY IN SUPPORT OF
MOTION TO DISMISS

1    Silvas v. E*Trade Mortgage Corp. is more directly on point with the

2    facts and theories of liability in this case.  421 F. Supp. 2d 1315, 1320 (S.D. Cal.

3    2006), aff''d, 514 F.3d 1001 (9th Cir. 2008).  In Silvas, the federal district court

4    specifically rejected the plaintiffs' proposed use of the UCL to expand TILA's one-

5    year statue of limitations.  There court stated that the plaintiffs' complaint was an

6    impermissible "attempt to use California's UCL to regulate the defendants' lending

7    activities, to secure damages under state law for alleged TILA violations where a

8    federal cause of action was no longer available.  The application of the UCL to

9    Defendant . . .  is therefore . . . preempted by section 560.2."  Id.

10    Finally, Plaintiffs spend three pages of their Opposition detailing the

11    history of the Home Owners' Loan Act of 1933 ("HOLA") and arguing that HOLA

12    does not preempt their UCL and fraud claims.  See Opp., pp. 11-13.  They could

13    have saved the ink.  HLC is not a federal savings and loan association and does not

14    base its preemption argument on HOLA.  But the fact that HLC is not a S&L

15    association does not provide good grounds to distinguish Silvas.  Though the

16    defendant in Silvas was a federal savings and loan association subject to HOLA, the

17    court's TILA preemption analysis in that case was entirely independent of HOLA.

18    Indeed, a recent decision in the Northern District of California applied Silvas'

19    reasoning and concluded that the plaintiffs' state law claims were preempted by

20    TILA despite the fact that the defendants were not federal savings and loan

21    associations.  See Jordan v. Paul Financial, LLC. et al., 2009 WL 1941561 (N.D.

22    Cal. July 1, 2009), at *1-4.  On a motion for summary judgment, the court, citing

23    Silvas, recognized the inherent conflict between the UCL's four year statute of

24    limitations and TILA's one year statute of limitations for damages.  Id. at *13.

25    Accordingly, the court ruled that the plaintiff's UCL claim was preempted to the

26    extent the TILA claims were already barred by the statute of limitations.  Id.

27    Preemption is not only appropriate in the current case because Plaintiffs

28    are attempting to use the UCL to expand TILA's statute of limitation and limited

1  remedies, but also (as discussed above) because of Plaintiffs' attempt to use the

2  UCL and fraud claims to alter TILA's disclosure requirements.  Plaintiffs' belabored

3  discussion of HOLA is just an attempt to distract the Court from the real issues.

4  This Court should adhere to <u>Silvas</u>' well-reasoned precedent and dismiss the UCL

5  and fraudulent omission claims as preempted by the TILA.

**IV.**

**PLAINTIFFS HAVE NOT ALLEGED, AND CANNOT ALLEGE, A**
**COMMON LAW DUTY TO DISCLOSE OR JUSTIFIABLE RELIANCE**

**A.**    **Plaintiffs Cannot Allege Any Common Law Duty Requiring HLC To**
**Have Made Any More Disclosures Than Those Required By TILA**

11       Plaintiffs concede that HLC had no fiduciary duty to make any

12  disclosures to them.  <u>See</u> Opp., at 16:7-24.  That concession is entirely consistent

13  with well-established California law that "a loan transaction is at arms-length and

14  there is no fiduciary relationship between the borrower and lender."  <u>Oaks Mgm't</u>

15  <u>Corp. v. Superior Court</u>, 145 Cal. App. 4th 453, 466 (2006).

16       Instead, relying entirely on <u>LiMandri v. Judkins</u>, 52 Cal. App. 4th 326,

17  336 (1997), Plaintiffs argue that HLC had a common law duty to make additional

18  disclosures because HLC supposedly "had exclusive knowledge of material facts not

19  known to Plaintiffs, …actively concealed these material facts, and … made partial

20  representations while suppressing some material facts."  Opp., at 16:21-24.  That

21  assertion fails both on the facts and the law.

22       As discussed above and in detail in the Motion to Dismiss, HLC made

23  full and complete disclosures concerning each of the topics upon which Plaintiffs

24  claim to have been kept in the dark (*i.e.*, the "actual interest rate" charged on the

25  Notes, the possibility of negative amortization, and the initial discounting of the

26  interest rate).  All of the terms of the loan were explicitly set forth in the loan

27  documents.  The complaint is devoid of any allegations of "undisclosed facts" that

28  were exclusively within HLC's knowledge, or how any such facts were either

actively concealed or partially suppressed.  Accordingly, Plaintiffs simply cannot claim that HLC had "exclusive knowledge" of, "concealed", or "partially disclosed" these facts.

**B.**    **No Reliance.**

Plaintiffs do not dispute that UCL claims may only be brought by a person who has "***relied*** upon the defendant's acts of unfair competition and, ***as a result***, suffered injury in fact" and that justifiable reliance is a basic element of the common law fraud claim Plaintiffs allege as their second cause of action.  See Motion, at 18:24-26 (quoting Doe v. Texaco, Inc., 2006 WL 2053504, at *8 (N.D. Cal. 2006) and citing Michelson v. Camp, 72 Cal. App. 4th 955, 967 (1999) and Fox v. Pollack, 181 Cal. App. 3d 954, 962 (1986)).

Plaintiffs contend that they satisfy the reliance requirement by alleging in conclusory fashion that if Defendant had properly disclosed the "material terms" of its loan product, Plaintiffs would not have entered into the loan agreements.  Opp., at 19:13-16 (citing Compl. ¶¶ 18-19, 22, 24, 39, 43).  That is not sufficient.  Nowhere do Plaintiffs specify what disclosures they actually read and relied upon, and what specific disclosures were missing that would have caused them not to accept their loans.  Indeed, Plaintiffs never once state that they actually read ***any*** of HLC's disclosures.  Accordingly, Plaintiffs have not supplied the necessary factual allegations between HLC's purported omissions and the harm Plaintiffs supposedly suffered.

This case is on all fours with Laster v. T-Mobile USA Inc., 407 F. Supp. 2d 1181 (S.D. Cal. 2005), a case that Plaintiffs ignore.  In T-Mobile, the plaintiffs alleged that the defendant's advertising, which offered free or deeply discounted phones, was a bait and switch tactic.  Yet, "none of the named plaintiffs alleged that they saw, read, or in any way relied on the advertisements, nor do they allege that they entered into the transaction ***as a result*** of those advertisements."  407 F. Supp. 2d at 1194 (emphasis in original).  The court concluded that "because

1  plaintiffs fail to allege they actually relied on false or misleading advertisements,

2  they fail to adequately allege causation as required by Proposition 64." Id.  Here, as

3  in T-Mobile, Plaintiffs describe a litany of supposed omissions, but do not once

4  allege that they (or any class member) read and relied upon any of the allegedly

5  misleading statements concerning the interest rate or other terms of their loans.

6        Plaintiffs cannot allege "justifiable reliance" on disclosures supposedly

7  not included in the loan documents not only because there were no material

8  omissions, but also because they have no reasonable basis to rely on any statements

9  outside the loan documents.  See Byars v. SCME Mortgage Bankers, Inc., 109 Cal.

10 App. 4th 1134, 1148 (2003) (holding that a mortgage broker's undisputed disclosure

11 of a yield spread premium on a HUD-1 settlement form defeated plaintiffs' claim

12 that they were misled into accepting the loan without knowledge of a secret charge);

13 Evans v. Chase Manhattan Bank USA, N.A., No. C-05-3968 SC, 2006 WL 213740,

14 at *6 (N.D. Cal., Jan. 27, 2006) (concluding that where defendant was "acting under

15 the fully-disclosed terms of the contract, its actions cannot plausibly be labeled a

16 deception").

17 **V.**

18 **THE CONTRACT AND IMPLIED COVENANT CLAIMS ARE DEFECTIVE**

19 **AS A MATTER OF LAW**

20       In support of their causes of action for breach of contract and breach of

21 the implied covenant of good faith and fair dealing, Plaintiffs selectively quote from

22 the Note and, based on these tailored quotations, declare the Note to be ambiguous.

23 The Note, however, is not ambiguous and the Court is not bound to accept

24 Plaintiffs' intentional and strained misinterpretation of its terms.[1]  Even so, the

25 

---

26 [1]  "The court need not . . . accept as true allegations that contradict matters
properly subject to judicial notice or by exhibit."  Sprewell v. Golden State

27 Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  "Nor is the court required to
accept as true allegations that are merely conclusory, unwarranted deductions

28 of fact, or unreasonable inferences."  Id.  Such unwarranted inferences and

1   ambiguities that Plaintiffs concoct for the Opposition cannot save these defective

2   claims.

3          Plaintiffs' claims for breach of contract and breach of the implied

4   covenant of good faith and fair dealing fail because Plaintiffs do not actually allege

5   that HLC failed to perform under the parties' agreement.  Rather, as HLC

6   demonstrated in its Motion, Plaintiffs complain about conduct that is expressly

7   permitted by the terms of the Note.  <u>See</u> Motion, at 20-22.

8          When assessing a breach of contract claim, a court must examine the

9   entire contract and is not bound by the snippets quoted by the plaintiff.  <u>See</u> <u>Stewart</u>

10  <u>Title Co. v. Herbert</u>, 96 Cal. Rptr. 631 (1970) ("Paramount consideration in

11  interpretation of contracts is intention of contracting parties, to be ascertained from

12  consideration of entire contract, not some isolated portion.")  Here, Plaintiffs'

13  suggestion that HLC breached Section 3 of the Notes is flatly contradicted by the

14  express language of the Notes.  HLC did not promise that *all* monthly payments

15  would be applied to the principal.  Indeed, Section 3 states the opposite:  Section

16  3(E) clearly provides that the monthly payment ***could be less*** than the amount of

17  interest, in which case the payment will be applied to partially cover the interest and

18  the remaining unpaid interest will be added to the principal.  Compl., Ex. 1, at 3,

19  § 3(E).  In that section, Plaintiffs agreed that:

20          "***My monthly payment could be less than the amount of***
            ***the interest portion of the monthly payment that would be***
21          ***sufficient to repay the unpaid principal*** I owe at the
            monthly payment date in full on the Maturity Date in
22          substantially equal payments.  ***If so, each month that my***
            ***monthly payment is less than the interest portion, the***
23          ***Note Holder <u>will</u> subtract the amount of my monthly***
24          ***payment from the amount of the interest portion and <u>will</u>***

25

26

27          deductions need not be accepted as true and are insufficient to defeat a motion
            to dismiss.  <u>Smith v. Jackson</u>, 84 F.3d 1213, 1217 (9th Cir. 1996).
28

1    ***add the difference to my unpaid principal***."  (Emphasis

2    added.)

3        There is nothing ambiguous about this section; nor can Plaintiffs allege

4    that HLC somehow breached the loan documents by applying the loan payments in

5    exactly the way that the agreement says ***will*** happen.  Plaintiffs' attempt to ignore

6    this section does not make the contracts ambiguous, and certainly does not support

7    an allegation that HLC breached the agreements.

8        Indeed, numerous other specific provisions of the Note clearly explain

9    how the Plaintiffs' monthly payments were to be calculated and applied.  Section

10   3(A) of the Note states that "each monthly payment ***will*** be applied ... to interest

11   before principal." Compl., Ex. 1, at 3, § 3(A) (emphasis added).  Section 2(B) states

12   that the borrower's interest rate "may change on the first day of APRIL 1 [sic],

13   2006, and on that day every month thereafter."[2]  Id., at 2, § 2(B).  Section 2 goes on

14   to explain how the new interest rate is calculated (i.e., by adding 3.5% to the

15   "Current Index").  Id. § 2; see also id. §§ 3(E), 3(D) (explaining how the Current

16   Index is determined).  Contrary to Plaintiffs' assertion, the Notes plainly informed

17   the Plaintiffs that their interest rates were subject to change starting on the date that

18   Plaintiffs' ***first*** monthly payment was due.  Likewise, Section 3(C) of the Note states

19   that the Plaintiffs' "monthly payment may change ... beginning on the 1st day of

20   APRIL, 2007 and on that day every 12th month thereafter."

21       Finally, as set forth in the Motion, the implied covenant cannot prohibit

22   a party from doing that which is expressly permitted by an agreement.  Carma Dev.

23   (Cal.), Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 374 (1992) (holding that

24   "implied terms should never be read to vary express terms," so a party does not

25

26

27   [2]    Section 3(A) states that the borrower will "make monthly payments on the
     first day of each month beginning on APRIL 1, 2006."

28

1  unfairly frustrate the other party's right to receive the benefit of the contract by

2  acting precisely as the contract says they can or will).

3          It is well-settled that no implied covenant claim exists where the

4  subject is completely covered by the contract.  <u>Lippman v. Sears, Roebuck & Co.</u>,

5  44 Cal. 2d 136, 142 (1955).  For that reason, implied covenant claims that simply

6  rehash an existing breach of contract claim must be dismissed as duplicative and

7  superfluous.  <u>See</u> <u>Careau & Co. v. Security Pac. Bus. Credit, Inc.</u>, 222 Cal. App. 3d

8  1371, 1395 (1990) ("If the allegations do not go beyond the statement of a mere

9  contract breach and, relying on the same alleged acts, simply seek the same damages

10 or other relief already claimed in a companion contract cause of action, they may be

11 disregarded as superfluous as no additional claim is actually stated.  Thus, absent

12 those limited cases where a breach of a consensual contract term is not claimed or

13 alleged, the only justification for asserting a separate cause of action for breach of

14 the implied covenant is to obtain a tort recovery.").

15         Here, there is no basis for a separate tort recovery for alleged breach of

16 the implied covenant of good faith and fair dealing.  Plaintiffs do not even attempt to

17 explain how their breach of implied covenant claim is different from their breach of

18 contract claim.  <u>See</u> Opp., at 24.  But even if Plaintiffs could articulate some

19 difference, the loan documents control every detail of the parties' arm-length

20 agreements.  Plaintiffs' admit they had no fiduciary relationship with HLC, nor can

21 they allege any facts supporting a claim for breach of the loan documents.  Like the

22 breach of contract claim, the breach of implied covenant claim should be dismissed

23 with prejudice.

## VI.

## <u>CONCLUSION</u>

26         Contrary to Plaintiffs' claims, there were no omissions or "concealed

27 terms" from the loan documents.  HLC fully complied with TILA, and as a matter of

28 law, Plaintiffs cannot exaggerate the scope of California's unfair competition law or

1   general common law to impose additional disclosure requirements.  The loans that

2   Plaintiffs accepted from HLC were arms-length transactions, and the undisputed

3   truth (as evidenced by the plain language of the loan documents) is that Plaintiffs

4   were fully informed of their APRs, their introductory interest rates, and the fact that

5   negative amortization would occur if Plaintiffs opted – as their choice – to pay less

6   interest than was due.  Despite *six* attempts to do so, Plaintiffs cannot state a claim

7   against HLC.  Accordingly, the Complaint should be dismissed with prejudice.

8

9   September 21, 2009            SHEPPARD MULLIN RICHTER & HAMPTON LLP

10

11                              By _____
                                        */s/  Jonathan P. Hersey*
12                                      JONATHAN P. HERSEY
                                        Attorneys for Defendant
13                              HOME LOAN CENTER, INC., d/b/a
                                LENDINGTREE LOANS, a California Corporation
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-17-